Drew R. Hansen, Esq. (State Bar No. 218382)
dhansen@tocounsel.com
Suzanne Cate Jones, Esq. (State Bar No. 157496)
sjones@tocounsel.com
Kenneth E. Johnson, Esq. (State Bar No. 115814)
kjohnson@tocounsel.com
THEODORA ORINGHER PC
535 Anton Boulevard, Ninth Floor
Costa Mesa, California 92626-7109
Telephone: (714) 549-6200
Facsimile: (714) 549-6201

Attorneys for Defendants
CENTRAL REFRIGERATED SERVICE,
INC., CENTRAL LEASING, INC., JON
ISAACSON, and JERRY MOYES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| GABRIEL CILLUFFO, KEVIN SHIRE, and BRYAN RATTERREE individually and behalf of all other similarly situated persons,<br><br>    Plaintiffs,<br><br>    vs.<br><br>CENTRAL REFRIGERATED SERVICES, INC., CENTRAL LEASING, INC., JON ISAACSON, and JERRY MOYES,<br><br>    Defendants. | Case No. ED CV 12-00886 VAP (OPx)<br><br>Honorable Virginia A. Phillips<br><br>**NOTICE OF MOTION AND MOTION TO CERTIFY INTERLOCUTORY APPEAL**<br><br>[Filed concurrently with Declaration of Drew R. Hansen; and [Proposed] Order]<br><br>Date:   February 4, 2013<br>Time:   2:00 p.m.<br>Crtrm:  2<br><br>Date Action Filed:   June 1, 2012 |

THEODORA ORINGHER
COUNSELORS AT LAW

1    **TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

2          **PLEASE TAKE NOTICE** that on February 4, 2013, at 2:00 p.m., or as soon

3    thereafter as the matter may be heard in Courtroom 2 of the above-entitled Court

4    located at 3470 Twelfth Street, Riverside, California, 92501, defendants Central

5    Refrigerated Service, Inc., Central Leasing, Inc., Jon Isaacson, and Jerry Moyes

6    (collectively "Defendants"), will move, and hereby do move, that the Court amend its

7    Orders of November 8, 2012 (Minute Order re Clarification of Order Compelling

8    Arbitration) and December 13, 2012 (Minute Order Denying Defendants' Motion for

9    Reconsideration), to certify an immediate appeal of the Court's decision that

10   "collective" arbitration is authorized by the arbitration agreements at issue. *See* Fed. R.

11   App. P. 5(a)(3). Defendants further move that the Court amend its Order of September

12   24, 2012 to certify an immediate appeal of its ruling concerning the applicability of the

13   Section 1 exemption under the Federal Arbitration Act or in the alternative stay this

14   matter until the issue is definitively resolved by the Ninth Circuit.

15         Defendants move for certification on the ground that certification of an

16   immediate appeal is authorized by 28 U.S.C. § 1292(b), in that the questions of whether

17   the Court or an arbitrator should resolve the applicability of an FAA exemption as well

18   as whether the arbitration agreements at issue authorize "collective" arbitration both

19   involve controlling questions of law, as to which there is substantial ground for

20   difference of opinion, and that an immediate appeal from the orders may materially

21   advance the ultimate termination of the litigation. Defendants respectfully request that

22   the Court amend its Orders by adding the following language to each: "The Court is of

23   the opinion that this order involves a controlling question of law as to which there is

24   substantial ground for difference of opinion and that an immediate appeal from the

25   order may materially advance the ultimate termination of the litigation."

26         This Motion is based upon this Notice of Motion and Motion, the attached

27   Memorandum of Points and Authorities, the concurrently-filed Declaration of Drew R.

28   Hansen, all other papers, pleadings and records on file herein, and on such other matters

*NOTICE OF MOTION AND MOTION TO CERTIFY INTERLOCUTORY APPEAL*

THEODORA ORINGHER
COUNSELORS AT LAW

1   as may properly come before the Court at oral argument or otherwise.

2       This Motion is made following the conference of counsel pursuant to L.R. 7-3

3   which took place on December 13 and 14, 2012.

4

5   DATED: January 3, 2013       THEODORA ORINGHER PC

6

7                      By: /s/ Drew. R. Hansen

8                        Drew R. Hansen

9                        Suzanne Cate Jones

                        Kenneth E. Johnson

10                       Attorneys for Defendants

11                       CENTRAL REFRIGERATED SERVICE, INC.,

                        CENTRAL LEASING, INC., JON ISAACSON,

12                       and JERRY MOYES

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THEODORA ☐ ORINGHER
COUNSELORS AT LAW

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.    INTRODUCTION ................................................................ 1

II.   ORDERS AS TO WHICH CERTIFICATION IS SOUGHT UNDER 28 U.S.C. § 1292(b) ......................................................... 6

III.  PROCEDURAL HISTORY AND RELEVANT FACTS ................................. 8

IV.  ARGUMENT .................................................................. 10

    A.   This Court Should Certify The Orders For Immediate Appeal Pursuant To 28 U.S.C. § 1292(b) ........................................ 10

    B.   The Court's Rulings Requiring Collective Arbitration Are Appropriate For Appeal Under The Three Factors Identified In Section 1292(b) ................................................... 11

        1.   *The Court's Interpretation Of The Parties' Arbitration Agreement Involves A Controlling Question Of Law* ................. 11

        2.   *There Is Substantial Ground For Difference Of Opinion Regarding The Issue Of Interpretation Presented Here* ............. 17

        3.   *Resolving Whether Litigation Must Proceed On Two Tracks Will Materially Advance The Litigation And Avoid Substantial Inefficiency, Delay and Expense* ........................ 19

    C.   The Court's Decision To Adjudicate The Applicability Of The FAA Exemption Is Also Appropriate For Interlocutory Review Under Section 1292(b) .............................................. 21

V.   CONCLUSION ............................................................. 22

*NOTICE OF MOTION AND MOTION TO CERTIFY INTERLOCUTORY APPEAL*

THEODORA ORINGHER
COUNSELORS AT LAW

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ahrenholz v. Board of Trustees of University of Illinois,*
219 F.3d 674 (7th Cir. 2000) ................................................................. 11

*AT&T Mobility v. Concepcion,*
__ U.S. __, 131 S.Ct. 1740 (2011) .................................................. 3, 4, 5, 14

*Central Florida Investments, Inc. v. Parkwest Associates,*
40 P.3d 599 (Utah 2002) ..................................................................... 15

*Chapman v. Lehman Bros.,*
279 F. Supp. 2d 1286 (S.D. Fla. 2003) ................................................. 18

*Couch v. Telescope, Inc.,*
611 F.3d 6293 (9th Cir. 2010) ............................................................. 10

*D'Antuono v. Service Road Corp.,*
2011 WL 2222313 (D. Conn. June 7, 2011) ........................................ 11

*DeLock v. Securitas Security Services USA, Inc.,*
2012 WL 3150391 (E.D. Ark. 2012) ............................................... 11, 20

*Espenscheid v. Direct Sat USA, LLC,*
688 F. 3d 872 (7th Cir. 2012) .......................................................... 18, 19

*Ferrell v. ConocoPhillips Pipe Line Co.,*
2010 WL 1946896 (C.D. Cal. 2010) ..................................................... 19

*Green v. Supershuttle,*
653 F.3d 766 (8th Cir. 2011) ...................................................... 6, 7, 8, 21

*Hoffman v. Citibank (South Dakota), N.A.,*
546 F.3d 1078 (9th Cir. 2008) ............................................................. 10

*In re Cement Antitrust Litig.,*
673 F.2d 1020 (9th Cir. 1982) ............................................................. 10

*In re Van Dusen,*
654 F.3d 838 (9th Cir. 2011) ........................................................ 5, 6, 7, 21

*Miller v. Corinthian Colleges, Inc.,*
769 F. Supp. 2d 1336 (D. Utah 2011) ................................................ 4, 16

*Morvant v. P.F. Chang's Bistro, Inc.,*
2012 WL 1604851 (N.D. Cal. 2012) ...................................................... 4

*Porter v. MC Equities, LLC,*
2012 WL 3778973 (N.D. Ohio Aug. 30, 2012) .................................... 17

*Reed v. Florida Metropolitan University, Inc.,*
    681 F.3d 630 (5th Cir. 2012).............................................18, 19, 20

*Reese v. BP Exploration (Alaska) Inc.,*
    643 F.3d 681 (9th Cir. 2011).......................................................10, 17

*Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.,*
    __U.S. __, 130 S.Ct. 1758 (2010) ...........................................passim

*Sutter v. Oxford Health Plans LLC,*
    675 F.3d 215 (3d Cir. 2012), *cert. granted* 2012 WL 3096766
    (December 7, 2012) ......................................................................13

*U.S. Rubber Co. v. Wright,*
    359 F.2d 784 (9th Cir. 1966) ..........................................................10

*Van Dusen v. Swift Transp. Co.,*
    2011 WL 3924831 (D. Ariz. Sept. 7, 2011) ...............................5, 6, 11

*Velez v. Perrin Holden & Davenport Capital Corp.,*
    769 F. Supp. 2d 445 (S.D.N.Y. 2011) ..........................................18

*Wilkie v. Gentiva Health Services, Inc.,*
    2010 WL 3703060 (E.D. Cal. Sept. 16, 2010) ...............................19

**STATUTES**

28 U.S.C. § 1292(b) ..........................................................................passim

**OTHER AUTHORITIES**

Utah Code Ann. § 78B-11-111(3) ...........................................................16

*NOTICE OF MOTION AND MOTION TO CERTIFY INTERLOCUTORY APPEAL*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The purpose of our judicial system is to dispense justice in an efficient and orderly way. Nowhere is that goal more important than in this case, where *at least 75 individual claimants* (with the number increasing almost daily)[1] are asserting multiple claims against Defendants in arbitration based on a variety of different legal theories. Pursuant to a series of Orders recently issued by this Court, each of those plaintiffs are now illogically required to pursue their claims in *two separate arbitration proceedings*. Specifically, each independent contractor driver is required to pursue his or her FLSA claim in a collective arbitration while simultaneously maintaining an individual arbitration to resolve all remaining claims. Such parallel arbitration will inevitably render resolution of the dispute more expensive, time-consuming and cumbersome for all of the litigants, thereby inflicting unnecessary cost and delay. The parallel arbitrations ordered by this Court could also easily result in conflicting rulings, since both the arbitrator in the collective action and the arbitrators in the individual actions will have to decide, *inter alia*, whether Plaintiffs are independent contractors or employees to resolve the FLSA and forced labor claims asserted by Plaintiffs.

Defendants do not believe that this result is what the Court intended or consistent with the parties' arbitration agreements. Regardless, Defendants respectfully submit that the result should be reviewed by the Court of Appeals before the parties invest substantial time and money to conduct multiple arbitrations that are beyond the jurisdiction of the arbitrators to conduct. Nowhere in the parties' arbitration agreements is there any indication that they intended to require

---

[1] Although the total number of plaintiffs who may pursue claims is unknown at this point, the number of potential plaintiffs proceeding in arbitration against Defendants could possibly reach several hundred or more.

1   each plaintiff's claims to be divided between two separate arbitration proceedings.

2   Nor have the parties ever once asserted such an intention at any time during the

3   course of this litigation.  Plaintiffs never once advocated for such a bifurcated and

4   inefficient process in opposing Defendants' motion to compel arbitration, and it

5   would make no economic sense for Defendants to consent to a dispute resolution

6   scheme that requires them to separately litigate each plaintiff's complaint in two

7   independent proceedings that are taking place at the same time.

8        Yet, in its November 8, 2012 Order directing that this action be arbitrated

9   under the Utah Arbitration Act (and again in its December 13, 2012 ruling), this

10   Court concluded that the parties intended to set up a procedure whereby each

11   plaintiff would arbitrate part of his or her Complaint on an individual basis and part

12   on a collective basis.  The Court mistakenly inferred this intention from the fact that

13   the agreements at issue prohibit "consolidated" and "class action" arbitration, but

14   not a "collective" action.  If Utah law recognized such a distinction between these

15   terms, then there might be some basis to infer the parties meant to invoke that

16   distinction in their agreements.  However, this is not the case; no Utah court or

17   statute has ever made a distinction between "collective" arbitration and

18   "consolidated" arbitration, and this Court did not cite any Utah law to the contrary

19   in its December 13, 2012 Order.  Further, even if such a distinction were recognized

20   in Utah law, the parties would have had no reason to invoke it, since collective

21   actions only apply where there is an employer-employee relationship and the

22   contracts at issue presumed (on their face) that each of the Plaintiffs were

23   independent contractors.  Because no employer-employee relationship existed under

24   the plain language of the agreements at issue, there was simply no reason for

25   Defendants to exclude "collective actions" as part of their agreements with

26   Plaintiffs.  Such language was inconsistent with the parties' agreed upon contractual

27

28

*NOTICE OF MOTION AND MOTION TO CERTIFY INTERLOCUTORY APPEAL*

1  relationship and completely unnecessary.[2]

2      Defendants respectfully submit that the construction adopted by the Court in

3  its November 8 and December 13, 2012 Orders is inconsistent with Utah law and

4  with the objective indicia of the parties' intentions as contained in the language of

5  the agreements at issue.  At the very least, there is substantial ground for difference

6  of opinion as to whether the construction adopted by the Court in its November 8

7  and December 13 Orders comports with Utah law and the parties' expressed

8  intentions.  The practical effect of the Court's rulings is to require the parties to

9  litigate part of Plaintiffs' Complaint in a "collective" arbitration before one

10  arbitrator and the rest of the Complaint in individual arbitrations before other

11  arbitrators, with parallel sets of discovery, trials and (potentially inconsistent)

12  rulings.  Such a dispute resolution process imposes an unheard of burden on the

13  parties which they never bargained for and which is not supported by Utah law.

14      Further, interpreting the parties' agreements to impose a two-track litigation

15  process is contrary to fundamental principles of federal law, as most recently

16  articulated in the Supreme Court's decision in *AT&T Mobility v. Concepcion*, _ U.S.

17  __, 131 S.Ct. 1740 (2011).  In its September 24, 2012 Order originally compelling

18  _____

19  [2]  Furthermore, the language that was included in the parties' contracts clearly

20  demonstrates that bilateral arbitrations are required.  Indeed, the agreements ban all

21  "consolidated" and "class actions," and these terms are sufficiently broad to exclude all

    representative actions, including any "collective" arbitration.  The arbitration clause

22  further contains a self-destruct provision in the event any court decides a representative

    claim of any type is permitted.  In addition to the explicit waiver prohibiting any type of

23  non-bilateral proceedings (i.e., the statement that "Notwithstanding anything to the

24  contrary contained or referred to herein, no consolidated or class arbitrations will be

    conducted"), the arbitration provision specifically used the words "both parties," plainly

25  indicating that the arbitration clause applies to disputes between two people (the

26  independent contractor/lessee and the defendant corporation).  The arbitration clause

    does not ever refer to "all parties" or use any other collective or group wording that

27  could suggest that a collective action claim was ever authorized.

28

THEODORA ORINGHER
COUNSELORS AT LAW

1   arbitration (which all of the parties, including Plaintiffs' counsel, understood
2   ordered individual arbitrations),[3] this Court cited *Concepcion*, *Miller v. Corinthian*
3   *Colleges, Inc.*, 769 F. Supp. 2d 1336 (D. Utah 2011), *Morvant v. P.F. Chang's*
4   *Bistro, Inc.*, 2012 WL 1604851 (N.D. Cal. 2012) and other federal cases decided
5   under the Federal Arbitration Act ("FAA").  (See pp. 12-13 of September 24, 2012
6   Order).  Significantly, the Court relied on these cases even *after* having already
7   determined that the FAA did not apply to this dispute, (*id.*, pp. 6-9), thereby
8   acknowledging that it is bound to follow the basic principles of contract
9   interpretation set forth in those cases, regardless of whether the FAA allows
10  enforcement of the arbitration clause.
11       Under that body of law (as well as state law), a federal court must perform the
12  threshold task of determining what disputes the parties agreed to arbitrate and in
13  what manner.  In performing that task, *Stolt-Nielsen, S.A. v. AnimalFeeds Int'l*
14  *Corp.*, __U.S. __, 130 S.Ct. 1758 (2010), *Concepcion*, and other Supreme Court
15  cases hold that the court must effectuate the intention of the parties.  Parties cannot
16  be presumed to have agreed to arbitrate cases on a collective basis, let alone a dual
17  track dispute resolution process, just because their agreement is silent on that issue.
18       Having repeatedly acknowledged the application of *federal law* in its
19  September 24, 2012 Order notwithstanding its holding that the FAA did not apply,
20  Defendants respectfully submit that the Court incorrectly declined to apply the same
21  body of law in its subsequent Orders of November 8 and December 13, 2012.
22  Specifically, when faced with the issue of whether the parties had agreed to

23  _____

24  [3] That Plaintiffs understood the Court ordered individual arbitrations as part of its
25  September 24, 2012 Order is indisputable, given that Plaintiffs' counsel posted a
    statement on the Internet on October 10, 2012 that declared, among other things, that
26  "[i]t appears that the effect of the ruling may mean that drivers claims must be handled
    in arbitration *individually*."  (Declaration of Drew R. Hansen ("Hansen Decl."), ¶ 2; Ex.
27  A at p. 6 (emphasis added)).

28

THEODORA ORINGHER
COUNSELORS AT LAW

1   collective arbitration despite having prohibited consolidated arbitrations, the Court

2   departed from its previous ruling and incorrectly concluded that *Stolt-Nielsen* and

3   other federal cases involving the FAA did not apply because "the FAA is not at

4   issue." (December 13, 2012 Order, p. 5). By failing to follow *Stolt-Nielsen* and

5   other Supreme Court authority (e.g., *Concepcion*), this Court did not commit a

6   merely abstract or academic error, but instead imposed an immediate, tangible

7   consequence on the parties by requiring them to submit to a dual-track dispute

8   resolution process that is *nowhere mentioned in the parties' agreements*.

9   Defendants respectfully submit that at a minimum there is substantial ground for

10   difference of opinion as to whether this Court's decision to decline to follow *Stolt-*

11   *Nielsen* and other Supreme Court authority was proper. To prevent the parties from

12   proceeding down a two-track path that was never intended and is unsupported by

13   federal and Utah law, Defendants respectfully seek certification of both the

14   November 8, 2012 and December 13, 2012 Orders issued by this Court.

15        Defendants also request an opportunity for immediate appellate review of the

16   related issue, addressed in the Court's Order of September 24, 2012, as to whether

17   the exemption contained in Section 1 of the FAA applies here. In its ruling, this

18   Court chose to decide the applicability of the Section 1 exemption itself, rather than

19   submit the issue to the arbitrator. In doing so, the Court relied on dicta from the

20   Ninth Circuit decision in *In re Van Dusen*, 654 F.3d 838 (9th Cir. 2011), which

21   denied the plaintiff's petition for writ of mandate but suggested that the district court

22   may have erred. The district court in *Van Dusen* subsequently certified its decision

23   for interlocutory appeal because it believed its ruling was still correct, and that

24   appeal remains pending before the Ninth Circuit.[4] Immediate review of this Court's

25

26   [4] *See Van Dusen v. Swift Transp. Co.*, 2011 WL 3924831, *1-*3 (D. Ariz. Sept. 7,

27   2011) (certifying interlocutory appeal from order compelling arbitration under FAA,
     where plaintiffs argued that "transportation worker" exemption applies).

28

*NOTICE OF MOTION AND MOTION TO CERTIFY INTERLOCUTORY APPEAL*

THEODORA ORINGHER
COUNSELORS AT LAW

decision is thus appropriate, not only because the Ninth Circuit recognized in its dicta in *Van Dusen* that the issue presents a "relatively close" question of law (*see Van Dusen*, 654 F.3d at 846) and that same issue ***was subsequently certified by the district court for appeal*** (*see Van Dusen*, 2011 WL 3924831 at *3), but also because the Eighth Circuit later rejected the *Van Dusen* panel's dictum, *see Green v. Supershuttle*, 653 F.3d 766, 769 (8th Cir. 2011), which this Court adopted in its September 24, 2012 Order.  By this Motion, Defendants ask the Court to certify its ruling concerning the applicability of the Section 1 exemption or alternatively stay this matter until the issue is resolved by the Ninth Circuit.

## II.   ORDERS AS TO WHICH CERTIFICATION IS SOUGHT UNDER 28 U.S.C. § 1292(b)

This Motion addresses the following three Orders from this Court:

- On September 24, 2012, this Court ruled, based on the allegations in Plaintiffs' Complaint alone, that Plaintiffs are transportation employees within the meaning of Section 1 of the FAA and therefore exempt from having to submit their disputes to arbitration.  (Docket No. 54)

- On November 8, 2012, this Court issued a Minute Order re Clarification of Order Compelling Arbitration, in which the Court ruled that "collective" arbitration was authorized by the arbitration agreements at issue, notwithstanding the express prohibition against "consolidated or class arbitrations."  (Docket No. 61).

- In response to this Court's November 8, 2012 Order, Defendants moved for reconsideration, which was denied without a hearing by Minute Order dated December 13, 2012.  (Docket No. 77).

Defendants respectfully request that the Court amend all three orders to certify an immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Rule 5(a) of the Federal Rules of Appellate Procedure permits this Court to authorize an interlocutory appeal by amending its orders to include a statement

1  indicating that the "order involves a controlling question of law as to which there is
2  substantial ground for difference of opinion and that an immediate appeal from the
3  order may materially advance the ultimate termination of the litigation." If this
4  Court grants the Motion, Defendants will apply to the Court of Appeal for leave to
5  hear the appeal, within 10 days as required by 28 U.S.C. § 1292(b).

6       Certification of the Court's September 24, November 8, and December 13,
7  2012 Orders is proper because the rulings present two controlling questions of law:
8  First, the proper interpretation of the arbitration clause under applicable federal and
9  Utah law governing the interpretation of arbitration agreements, and whether such
10 law allows "collective arbitration" notwithstanding the express prohibition against
11 "consolidated or class arbitrations;" and second, the proper role of the courts as
12 opposed to the arbitrator in determining whether an exemption to the FAA applies.

13      There is substantial ground for difference of opinion on these issues. Other
14 courts have concluded that individual arbitration is required where an agreement is
15 silent as to the arbitrability of collective claims. While this Court came to a
16 different conclusion in its November 8, 2012 Order and again in its December 13,
17 2012 ruling, Defendants respectfully submit that this question should be resolved in
18 their favor when the rules of interpretation applicable to arbitration agreements
19 under both Utah law and federal law, as adopted by the Supreme Court in cases such
20 as *Stolt-Nielsen*, are applied.

21      Likewise, with respect to the second issue identified above, the Court's
22 September 24, 2012 ruling relied on dicta in the *In Re Van Dusen* case that is
23 contrary to the conclusion reached only one month later by the Eighth Circuit in
24 *Green v. SuperShuttle,* 653 F.3d at 769. Furthermore, the Ninth Circuit
25 acknowledged in *Van Dusen* "that the law's repeated admonishments that district
26 courts refrain from addressing the merits of an underlying dispute can be read to
27 favor the District Court's decision. This factor, along with the lack of controlling
28 precedent, render the question relatively close." *Van Dusen*, 654 F.3d at 846. The

THEODORA ORINGHER
COUNSELORS AT LAW

1  existence of the same, "relatively close" question of law in this case combined with
2  the subsequent decision by the district court in *Van Dusen* to certify the question for
3  appeal (see *Van Dusen,* 2011 WL 3924831 at *1-*3), and the Eighth Circuit's
4  decision in *Green*, provide even stronger grounds for finding substantial grounds for
5  difference of opinion in this case.

6      Immediate appeal would materially advance the litigation because, without
7  immediate review, the parties will be required to commence arbitrating this dispute
8  in two sets of piecemeal proceedings, one of which (the collective action) may be
9  subsequently rendered invalid upon final appeal after the parties have already
10 expended considerable time and resources.

11     The Ninth Circuit has allowed interlocutory appeals, under Section 1292(b),
12 in cases raising the issue of whether arbitration should be compelled on a class-wide
13 as opposed to individual basis.  The same considerations favor an immediate appeal
14 in this case, before the parties are required to incur the substantial time and expense
15 of conducting an arbitration, that is beyond the scope of the proceeding
16 contemplated in the arbitration clause and which might (in Defendants' view)
17 require the ensuing arbitration award to be vacated.  The Court should, therefore,
18 grant this Motion, and amend its September 24, November 8, and December 13,
19 2012 Orders to certify an immediate appeal of (1) whether arbitration of Plaintiffs'
20 FLSA claim must proceed on an individual basis, as opposed to the "collective"
21 format contemplated by the November 8, and December 13, 2012 Orders, and (2)
22 whether the Section 1 exemption of the FAA should have been decided in the first
23 instance by the Court or the arbitrator.

24 **III.   PROCEDURAL HISTORY AND RELEVANT FACTS**

25     This Court granted Defendants' motion to compel arbitration on September
26 24, 2012.  The Court then issued its Minute Order re Clarification on November 8,
27 2012, which for the first time mandated "collective" arbitration of Plaintiffs' FLSA
28 claims.  Defendants promptly filed a motion for reconsideration, which was denied

1  without hearing on December 13, 2012.[5]

2      On November 26, 2012, Plaintiffs' counsel filed what they styled a

3  "collective" arbitration with the American Arbitration Association ("AAA"),

4  asserting claims under the Fair Labor Standards Act ("FLSA") on behalf of the 3

5  named plaintiffs plus those individuals who filed a notice of consent to sue in this

6  action.[6]  (Hansen Decl., ¶ 3 and Ex. B.)  In Defendants' view, this is nothing more

7  than a consolidated arbitration, consisting of what is now nearly 100 individual

8  claims bundled together, even though this is expressly prohibited by the contractual

9  arbitration clause.  (*Id.*, at ¶¶ 3-4).  Calling it a "collective," rather than *consolidated*

10 proceeding does not cure that fundamental defect.

11     Plaintiffs' counsel thereafter filed a total of at least 75 other individual

12 arbitration proceedings against Defendants.  (*Id.*, ¶ 5 and Ex. C).  These individual

13 arbitration proceedings have been filed separately on behalf of the 3 named

14 plaintiffs, plus 72 other individuals who also filed notices of consent to sue in this

15 action.  (*Id.*).  Each of these individual cases asserts claims against Defendants under

16 the "forced labor" statute referenced in Plaintiffs' Complaint, as well as a host of

17 additional legal theories under both state and federal law, with the exception of any

18 claim under the FLSA.  (*Id.*, ¶ 5).

19

---

20 [5]  Defendants also applied *ex parte* to hear the motion on shortened time, so that
21 Defendants would not waive any right of appeal they might have with respect to the
22 November 8, 2012 Order.  This Court denied the *ex parte* application on December 4,
   2012, finding that there was no appeal as a matter of right from the November 8 Order.
23 In view of that finding, Defendants did not attempt to file an appeal as a matter of right,
24 but instead seek leave for an interlocutory appeal through this Motion.

   [6]  As of January 3, 2013, a total of 99 individuals have filed notices of consent to sue in
25 this case and are apparently part of the purported collective arbitration.  (Hansen Decl.,
26 ¶¶ 3-4)  Most, but not all, of these same individuals (i.e., 75 out of the 99 people) have
   also filed separate individual arbitration cases against Defendants, with the number of
27 individual proceedings increasing almost daily.  (*Id.* at ¶ 5 and Ex. C).

28

THEODORA ORINGHER
COUNSELORS AT LAW

IV.   **ARGUMENT**

A.   **This Court Should Certify The Orders For Immediate Appeal Pursuant To 28 U.S.C. § 1292(b)**

Section 1292(b) provides, in pertinent part, that a district judge may certify an order for immediate interlocutory appeal if the judge is of the opinion that (1) the order involves a "controlling question of law"; (2) there is "substantial ground for difference of opinion" as to the resolution of that question; and (3) an "immediate appeal from the order may materially advance the ultimate termination of the litigation." *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966).

An issue involves a "controlling question of law" if the "resolution of the issue on appeal could materially affect the outcome of the litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982).

Determining whether a "substantial ground for difference of opinion" exists requires the court to "examine to what extent the controlling law is unclear." *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). A controlling law is unclear, and thus suitable for certification, where the question "involves an issue over which reasonable judges might differ," and where uncertainty over the certified matters "provides a credible basis for a difference of opinion." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).

To find that the issue would "materially advance the litigation," the court need not find "that the interlocutory appeal [would] have a final, dispositive effect on the litigation." *Reese, supra*. Instead, courts consider the facts and equities and may take a "flexible approach . . . towards interlocutory appeals." *Id.*

The Ninth Circuit recognizes that the issue of whether arbitration is properly compelled on an individual basis, where the contract contains a class arbitration waiver, is an issue properly certified for immediate appeal under Section 1292(b). *Hoffman v. Citibank (South Dakota), N.A.*, 546 F.3d 1078 (9th Cir. 2008) (district court certified interlocutory appeal from order compelling arbitration on an

1  individual, non-class basis, where plaintiff raised issue of whether class arbitration

2  waiver was enforceable).  District courts similarly recognize that legal issues

3  concerning the enforcement of an arbitration clause are properly certified for

4  immediate appeal, so that they can be resolved before incurring the cost of

5  arbitrating the dispute. *E.g., Van Dusen,* 2011 WL 3924831 at *3 (certifying

6  interlocutory appeal from order compelling arbitration under FAA, where plaintiffs

7  argued that "transportation worker" exemption applies); *D'Antuono v. Service Road*

8  *Corp.,* 2011 WL 2222313, *1-*3 (D. Conn. June 7, 2011) (certifying interlocutory

9  appeal from order compelling arbitration of FLSA claims, on an individual basis,

10  where the arbitration agreement prohibited consolidated or class claims); *DeLock v.*

11  *Securitas Security Services USA, Inc.,* 2012 WL 3150391, *8 (E.D. Ark. Aug. 1,

12  2012) (certifying interlocutory appeal from order compelling arbitration of FLSA

13  claims, on an individual basis, because "an interlocutory appeal holds promise for

14  speeding up this litigation").

15      The same factors apply here, and strongly weigh in favor of allowing an

16  immediate interlocutory appeal, as discussed more fully below.

17  **B.**   **The Court's Rulings Requiring Collective Arbitration Are**

18       **Appropriate For Appeal Under The Three Factors Identified In**

19       **Section 1292(b)**

20       **1.**   ***The Court's Interpretation Of The Parties' Arbitration Agreement***

21            ***Involves A Controlling Question Of Law***

22      Interlocutory appeals are particularly appropriate when the controlling

23  question is a "'pure' question of law," since that is "something the court of appeals

24  could decide quickly and cleanly without having to study the record, . . . without

25  having to wait until the end of the case." *Ahrenholz v. Board of Trustees of*

26  *University of Illinois,* 219 F.3d 674, 676-77 (7th Cir. 2000).

27      The question of whether the parties intended to permit collective arbitration

28  while prohibiting "consolidated or class arbitrations" is a pure question of law.  That

1  legal question turns upon the proper application of Federal and Utah law governing

2  the interpretation of arbitration agreements.

3      Under both of these bodies of law, interpretation and application of written

4  arbitration agreements must effectuate the intention of the parties.  In *Stolt-Nielsen,*

5  *S.A. v. AnimalFeeds Int'l Corp.*, __U.S. __, 130 S.Ct. 1758 (2010), the Supreme

6  Court explained the basic principles to be applied by federal courts construing

7  arbitration provisions:

8      Whether enforcing an agreement to arbitrate or construing an

9      arbitration clause, courts and arbitrators must 'give effect to the

10     contractual rights and expectations of the parties.'  In this endeavor, 'as

11     with any other contract, *the parties' intentions control.*'

12  *Id.* at 1774 (citations omitted).

13     The Supreme Court further emphasized that courts may not compel parties to

14  arbitrate in a manner to which they did not consent:

15     Underscoring the consensual nature of private dispute resolution, we

16     have held that parties are 'generally free to structure their arbitration

17     agreements as they see fit.' [citations omitted].  For example, we have

18     held that parties may agree to limit the issues they choose to arbitrate,

19     [citation omitted], and may agree on rules under which any arbitration

20     will proceed, [citation omitted]. ... '[A]rbitration is simply a matter of

21     contract *between the parties*; it is a way to resolve those disputes—but

22     only those disputes—that the *parties* have agreed to submit to

23     arbitration.'  It falls to courts and arbitrators to give effect to these

24     contractual limitations, and when doing so, courts and arbitrators must

25     not lose sight of the purpose of the exercise: to give effect to the intent

26     of the parties.

27  *Id.* (emphasis in original, citations omitted).

28     Applying these principles, the Supreme Court in *Stolt-Nielsen* ruled that

THEODORA ORINGHER
COUNSELORS AT LAW

1  parties to an arbitration may not be deemed to have consented to group-wide

2  arbitration simply because, as in the present case, they have not expressly *precluded*

3  group-wide arbitration in their agreement.  In a holding directly applicable here,

4  *Stolt-Nielsen* held that consent to class arbitration could not be implied from the

5  parties' silence, because the changes in the parties' expectations brought about by

6  the shift from bilateral arbitration to class-action arbitration are "fundamental."[7]  *Id.*

7  at 1773-76.

8      *Stolt-Nielsen* is part of a settled body of law developed to further the strong

9  federal policy in favor of enforcing arbitration agreements.  Regardless of whether

10 the agreements in this case are subject to the FAA or the Utah Arbitration Act,

11 courts must apply these basic rules of contractual interpretation – a fact this Court

12 recognized in its September 24, 2012 Order.  There, the Court opened its discussion

13 of the grounds for its decision by concluding, based on the allegations in Plaintiffs'

14 Complaint, that the Section 1 exemption to the FAA applies here.  (September 24,

15 2012 Order at pp. 6-9).  After setting forth the reasons for this conclusion, the Court

16 stated "[T]he Court finds that the Section 1 exemption applies, and therefore, the

17 Court refuses to compel arbitration under the FAA."  (September 24, 2012 Order at

18 p. 9).

19     Despite that finding, the Court nonetheless proceeded to cite and apply

20 _____

21 [7] The Supreme Court recently granted certiorari in *Oxford Health Plans LLC v. John

22 Ivan Sutter MD* to address whether the parties to an arbitration agreement authorize
class arbitration when the agreement provides that "any dispute" will be submitted to

23 arbitration. See *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215 (3d Cir. 2012), *cert.*

24 *granted* 2012 WL 3096766 (December 7, 2012).  Like this Court's November 8 and
December 13, 2012 Orders, Defendants respectfully submit that Third Circuit's

25 decision in *Oxford Health*, which upheld an arbitrator's decision to proceed with class

26 arbitration based on such an agreement, conflicts with the Supreme Court's decision
in *Stolt-Nielsen*.  Regardless, it is clear that further clarification of the law in this area

27 will be forthcoming from the Supreme Court.

28

1  multiple federal cases decided under the FAA in the subsequent section of its

2  September 24, 2012 Order upholding the parties' waiver of class actions. (*Id.* at 12-

3  14). Among these cases was *Concepcion* (cited multiple times by the Court) in

4  which the Supreme Court, relying on *Stolt-Nielsen* and other cases, ruled that federal

5  courts must enforce an agreement by the parties precluding class actions.

6  *Concepcion* reaffirmed the fundamental principle that federal courts must enforce

7  arbitration agreements according to their *express terms* and may not imply terms

8  that fundamentally alter the parties' expectations.

9      By citing *Concepcion* and other similar federal cases after the Court had

10  already decided that the dispute is not subject to the FAA, this Court clearly

11  signaled that the applicability of those cases does not depend on whether the

12  particular agreement at bar may ultimately be subject to the FAA. Nevertheless, in

13  its subsequent Orders of November 8 and December 13, 2012, the Court departed

14  from that standard, choosing to imply from the parties' silence regarding

15  "collective" actions that the parties must have agreed to permit such actions.

16  Whether this approach correctly effectuates the intent of the parties is a pure

17  question of law. The Court justified this approach, in part, by asserting that "[s]ince

18  the FAA is not at issue here, the decision in *Stolt-Nielsen* is not on point."

19  (December 13, 2012 Order at p. 5). Defendants respectfully submit that this

20  assertion is not consistent with federal law, is contrary to the Court's September 24,

21  2012 Order and should be certified for appeal.

22      Utah courts follow the same basic rules of interpretation applied by federal

23  courts under *Stolt-Nielsen*. Thus, even assuming *Stolt-Nielsen* did not apply, the

24  Court's interpretation of the parties' contracts would still present a controlling

25  question of law suitable for interlocutory appeal. Consistent with the federal

26  approach, the Utah Supreme Court has held that "[b]ecause arbitration is a matter of

27  contract and a party cannot be required to submit to arbitration any dispute which he

28  has not agreed so to submit." *Central Florida Investments, Inc. v. Parkwest*

1  *Associates*, 40 P.3d 599, 604 (Utah 2002) (citation and internal quotations omitted).

2  Under this standard, the parties may not be required to arbitrate any of their claims

3  on a group-wide basis absent a clear contractual provision permitting such a

4  procedure.  There is no such provision anywhere in the arbitration clauses at issue,

5  let alone a provision that authorizes two parallel proceedings as ordered by this

6  Court.  On the contrary, the arbitration clause expressly prohibits group-wide

7  arbitration in the clearest possible terms: "[N]o consolidated or class arbitrations

8  will be conducted."

9       The full text of the arbitration clause (see Lease at § 21 and Contractor

10  Agreement at § 18) reads as follows:

11  **GOVERNING LAW AND ARBITRATION.** This Agreement shall be
12  governed by the laws of the State of Utah. Any dispute (including a
13  request for preliminary relief) arising in connection with or relating to this
     Agreement, its terms, or its implementation including any allegation of a
14  tort, or of breach of this Agreement, or of violations of Applicable Law,
15  including but not limited to the DOT Leasing Regulations will be fully
     and finally resolved by arbitration in accordance with (1) the Commercial
16  Arbitration Rules (and related arbitration rules governing requests for
17  preliminary relief) of the American Arbitration Association ("AAA"); (2)
18  the Federal Arbitration Act (ch. 1 of tit. 9 of United States Code, with
     respect to which the parties agree that this Agreement is not an exempt
19  "contract of employment") or, if the Federal Arbitration Act is held not to
20  apply, the arbitration laws of the State of Utah; and (3) the procedures that
21  follow. Notwithstanding anything to the contrary contained or referred to
     herein, no consolidated or class arbitrations will be conducted. If a court
22  of arbitrator decides for any reason not to enforce this ban on consolidated
23  or class arbitrations, the parties agree that this provision, in its entirety,
24  will be null and void, and any disputes between the parties will be
     resolved by court action, not arbitration. A Demand for Arbitration will be
25  filed with the AAA's office located in or closest to Salt Lake City, Utah,
26  and will be filed within the time allowed by the applicable statute of
27  limitations. Failure to file the Demand within such statute-of-limitations
     period will be deemed a full waiver of the claim.  The place of the
28

arbitration hearing will be Salt Lake City, Utah. Both parties agree to be fully and finally bound by the arbitration award, and, where allowed by law, judgment may be entered on the award in any court having jurisdiction thereof. Each party will pay its own AAA arbitration filing fees, and an equal share of the fees and expenses of the arbitrator, provided that if CONTRACTOR owns, leases (to COMPANY and other motor COMPANYs combined), or controls only one commercial motor vehicle, COMPANY will pay the full fees and expenses of the arbitrator as well as (i) the full arbitration filing fee, if COMPANY is the claimant, or (ii) the portion of the arbitration filing fee that exceeds the filing fee then in effect for civil actions in the United States district court for the district that includes Salt Lake City, Utah, if CONTRACTOR is the claimant. In all other respects, except to the extent otherwise determined by law, the parties will be responsible for their own respective arbitration expenses, including attorneys' fees.

[See Hansen Declaration, ¶ 6, Exs. D and E.]

While it is true the parties did not expressly use the term "collective" in prohibiting group-wide arbitration, it would make no sense for them to include such a prohibition, because, as independent contractors, the only types of group-wide arbitration Plaintiffs could have brought were class actions or consolidated actions. The Utah Arbitration Act expressly provides that a contractual prohibition against consolidated arbitration is enforceable. Utah Code Ann. § 78B-11-111(3) ("The court may not order consolidation of the claims of a party to an agreement to arbitrate if the agreement prohibits consolidation."). Utah case law also confirms that class action waivers contained in arbitration agreements are enforceable. *Miller*, 769 F. Supp. 2d at 1348-49. By contrast, nothing in Utah law suggests that there is any difference between "collective" and *consolidated* arbitration, nor that such a proceeding can be conducted when the agreement expressly prohibits consolidated arbitration.

Given the legal context in which the parties entered into their agreements, their silence regarding collective arbitration cannot logically be deemed consent to

1 | the (non-applicable) procedure of collective arbitration of FLSA claims by

2 | employees.  Because the interpretation of a written agreement presents a question of

3 | law, and because the issue of collective arbitration involves the parties' fundamental

4 | expectations, this is a controlling issue of pure law which may properly be certified

5 | for appeal pursuant to Section 1292(b).

6 |       **2.**       ***There Is Substantial Ground For Difference Of Opinion***

7 |            ***Regarding The Issue Of Interpretation Presented Here***

8 |       Section 1292(b) allows for certification of an immediate appeal if "there is

9 | substantial ground for difference of opinion" concerning the controlling legal

10 | question.  "When novel legal issues are presented, on which fair-minded jurists

11 | might reach contradictory conclusions, a novel issue may be certified for

12 | interlocutory appeal without first awaiting development of contradictory precedent."

13 | *Reese, supra*, 643 F.3d at 688.

14 |       The issue presented here is one where there is substantial ground for

15 | difference of opinion.  Other district judges have reached the opposite conclusion

16 | from this Court when analyzing similar contract language. *E.g., Porter v. MC*

17 | *Equities, LLC*, 2012 WL 3778973, * 4 - *5 (N.D. Ohio Aug. 30, 2012) (arbitration

18 | agreement which was "silent as to the arbitrability of 'collective claims'" under the

19 | FLSA requires arbitration on an individual basis).  Substantial ground for difference

20 | of opinion also exists because there are no Utah or federal decisions allowing

21 | collective arbitration under a contract that expressly prohibits *consolidated* and class

22 | arbitrations.  Nor is there any law supporting the creation of a highly inefficient

23 | dual-track dispute resolution process.  Regardless, **Plaintiffs' collective arbitration**

24 | **is nothing more than a <u>consolidated</u> proceeding**, joining individual claims, with

25 | perhaps more to be added later.  The prohibition of "consolidated arbitrations"

26 | necessarily encompasses and prohibits a collective action.  Indeed, there is no

27 | meaningful difference between a consolidated action and a collective action.  Nor

28 | have Plaintiffs ever cited any prior case which authorizes their attempt to

THEODORA ORINGHER
COUNSELORS AT LAW

1  consolidate at least 99 individual claims under the rubric of a collective arbitration.[8]

2      There is also substantial ground for difference of opinion as to the Court's

3  conclusion that because the arbitration clause is not "completely silent on the issue

4  of arbitration," that collective arbitration is permitted. (December 13, 2012 Order at

5  page 6.)  The same was true in *Reed v. Florida Metropolitan University, Inc.*, 681

6  F.3d 630, 642-646 (5th Cir. 2012), but the Fifth Circuit reached a conclusion

7  opposite that of this Court.  *Reed* pointed out that "the parties here did not stipulate

8  that their agreement was silent on class arbitration," *id.* at 642, but concluded that

9  that was not the dispositive fact.  What was dispositive was that "[n]one of the

10  provisions the arbitrator identified, however, even remotely relates to or authorizes

11  class arbitration." *Id.  Reed* further found that "[t]ogether, *Stolt–Nielsen* and

12  *Concepcion* indicate that [a trier of fact] should not find implied agreements to

13  submit to class arbitration."  *Id.* at 646.  In this case as well, the absence of any

14  agreement to collective arbitration means that it is not permitted.

15      Substantial ground for difference of opinion also exists as to whether the

16  cases cited by this Court in its Orders support the conclusion that collective

17  arbitration is required.  This Court cited *Espenscheid v. Direct Sat USA, LLC*, 688 F.

18  3d 872 (7th Cir. 2012), for the proposition that "collective actions and class actions

19  are different" in that a collective action requires class members to "opt-in" rather

20  than "opt-out." (November 6, 2012, Order at p. 4; December 13, 2012, Order at p.

21  5.)  Defendants agree with that general point.  But the case cited by the Court

22  overlooks the equally valid point made by the Seventh Circuit, which is that this

---

[8]  The closest that Plaintiffs come is to rely upon FINRA cases, holding that "collective" FLSA claims do not fall within the scope of FINRA's rules against class-wide arbitration. *E.g., Chapman v. Lehman Bros.*, 279 F. Supp. 2d 1286 (S.D. Fla. 2003); *Velez v. Perrin Holden & Davenport Capital Corp.*, 769 F. Supp. 2d 445 (S.D. N.Y. 2011).  Neither case addresses whether a prohibition against "consolidated" arbitration would allow a multi-plaintiff FLSA claim.

1  distinction was of "no consequence" for the purpose of the dispute at issue on that

2  appeal, which was whether the named plaintiffs could appeal a decertification order.

3  688 F.3d at 874.  The Seventh Circuit concluded that for this purpose "[t]here is no

4  relevant difference between the collective, consisting of opt-ins, and the class,

5  consisting of class members minus the opt-outs." *Id.* at 877.  The same argument

6  could be made with respect to enforcement of arbitration agreements, an issue which

7  was not presented by, nor discussed in, *Espenscheid.*

8          Certainly there is substantial ground for difference of opinion as to whether

9  this decision compels the conclusion that an express contractual prohibition against

10  class *and consolidated* arbitration somehow allows collective arbitration.[9]

11          **3.    *Resolving Whether Litigation Must Proceed On Two Tracks Will***

12                  ***Materially Advance The Litigation And Avoid Substantial***

13                  ***Inefficiency, Delay and Expense***

14          The third requirement of Section 1292(b) – that the appeal must be likely to

15  materially advance the litigation – is closely linked to the question of whether an

16  issue of law is "controlling."

17          If collective arbitration proceeds, but is not authorized by the contract, the

18  result will be that the arbitration award must be vacated, and the claims re-arbitrated

19  on an individual basis, thereby resulting in duplication of the individual arbitration

20  proceedings that are already being pursued by at least 75 plaintiffs.  *Reed, supra,*

21

22  _____

23  [9]  The same is true with respect to the two district court decisions cited by the Court for
the same general proposition.  In *Wilkie v. Gentiva Health Services, Inc.*, 2010 WL
24  3703060 (E.D.Cal. Sept. 16, 2010), the court denied a motion to transfer, without any
issue raised concerning arbitration.  The portion of the opinion cited by the Court, in
25  footnote 5, simply states that "[d]espite the difference in terminology, collective actions
are similar to class actions, . . . ." *Id.* at *3, fn. 5.  *Ferrell v. ConocoPhillips Pipe Line*
26  *Co.*, 2010 WL 1946896 (C.D. Cal. 2010), likewise involved no issue related to
27  arbitration of FLSA claims, either on an individual or other basis.

28

1    681 F.3d at 642 ("we conclude that the arbitrator exceeded his authority by ordering

2    the parties into class arbitration without a sufficient basis for concluding that the

3    parties agreed to resolve their disputes in this manner").  It would materially

4    advance the litigation to allow the Ninth Circuit to resolve that issue now, rather

5    than after the parties have spent a substantial amount of time and money on a

6    collective arbitration that results in an invalid award.

7        As explained by the *DeLock* court, in certifying its order compelling

8    arbitration for immediate interlocutory appeal, "[i]f the Court is mistaken about

9    enforceability, then after these twelve guards' claims have been arbitrated

10    individually, and after those awards have been confirmed (or not, as may be), and

11    after the Court of Appeals reverses and returns the case for adjudication as a

12    collective action, the parties will have to start over.  That long road would waste

13    everyone's scarce resources."  2012 WL 3150391 at *8.  The same is true here.  As

14    of January 2, 2013, there are at least 75 separate individual arbitrations, plus the

15    purported collective arbitration consisting of 99 individuals, on file with the AAA.

16    Certifying the Court's decision for interlocutory appeal would materially advance

17    the ultimate termination of the litigation, by allowing the Ninth Circuit to decide

18    whether the claimants' FLSA claims should also be decided in the pending

19    individual arbitration cases.

20        Both parties will be required to incur substantial time and expense to arbitrate

21    more than 75 separate arbitration proceedings on two separate tracks (i.e., the

22    collective arbitration involving 99 plaintiffs as well as the 75 individual arbitration

23    proceedings demanded by a subset of the same individuals on their non-FLSA

24    claims).  If the Court of Appeal were to decide that the collective proceeding is not

25    authorized by the contract, the resulting arbitration award would need to be vacated.

26    *Reed*, 681 F.3d at 642 ("we conclude that the arbitrator exceeded his authority by

27    ordering the parties into class arbitration without a sufficient basis for concluding

28    that the parties agreed to resolve their disputes in this manner").  The same risk

THEODORA ORINGHER
COUNSELORS AT LAW

1   exists with respect to the 75 individual arbitration cases initiated through January 2,

2   2013, in which each claimant asserts all available claims *other* than his or her FLSA

3   claim.  An immediate interlocutory appeal should be certified, to resolve these

4   issues now.

**C.   The Court's Decision To Adjudicate The Applicability Of The FAA Exemption Is Also Appropriate For Interlocutory Review Under Section 1292(b)**

8      As set forth above, the Court's September 24, 2012 Order concludes that this

9   Court, rather than the arbitrator, should decide if the present dispute is exempt from

10  arbitration pursuant to Section 1 of the FAA.  Defendants respectfully seek

11  certification of that portion of the Order, which decides a controlling question of law

12  appropriate for interlocutory review.

13     Another district court in this Circuit has already certified the same issue for

14  appeal pursuant to Section 1292(b).  See *Van Dusen, supra,* 2011 WL 3924831 at *3.

15  The Ninth Circuit, concurring in the district court's conclusion that the issue is

16  appropriate for interlocutory review pursuant to Section 1292(b), has agreed to hear the

17  appeal, noting (in a previous ruling) the "absence of controlling precedent." *In re Van*

18  *Dusen,* 654 F.3d at 843.  Given the Ninth Circuit's view of this issue, the Court can act

19  with complete assurance in certifying this issue as being appropriate for interlocutory

20  review pursuant to Section 1292(b).

21     Moreover, the day before the *Van Dusen* district court certified this issue for

22  appeal to the Ninth Circuit, the Eighth Circuit issued a decision adopting the same

23  approach as the district court in *Van Dusen,* ruling that an arbitrator should decide

24  threshold issues of arbitrability such as the applicability of the transportation worker

25  exemption under the FAA.  *Green v. SuperShuttle International, Inc.,* 653 F.3d 766,

26  769 (8th Cir. 2011).  That decision underscores that this case amply meets the second

27  prong of the Section 1292(b) analysis, namely that the issue presented involves

28  substantial grounds for a difference of opinion.  Furthermore, in the event the Ninth

THEODORA ORINGHER
COUNSELORS AT LAW

1  Circuit issues a decision in the pending *Van Dusen* appeal that is at odds with the

2  *SuperShuttle* case, the split in authority between the Circuits would render this case a

3  likely candidate for review by the United States Supreme Court.

4      In light of these circumstances, Defendants respectfully assert that the Court

5  should certify the subject Orders for appeal so that there can be an orderly and final

6  resolution of the issues outlined above before the parties are required to proceed to

7  arbitration.

8  **V.**    **CONCLUSION**

9      For all of the reasons set forth above, Defendants respectfully request that the

10 Court grant the Motion, and amend its Minute Orders of November 8, 2012,

11 December 13, 2012, and September 24, 2012 to certify an immediate interlocutory

12 appeal.

13 DATED: January 3, 2013    THEODORA ORINGHER PC

14

15     By: /s/ Drew R. Hansen

16         Drew R. Hansen

17         Suzanne Cate Jones

        Kenneth E. Johnson

18         Attorneys for Defendants

19         CENTRAL REFRIGERATED SERVICE, INC.,

        CENTRAL LEASING, INC., JON ISAACSON,

20         and JERRY MOYES

21

22

23

24

25

26

27

28