Benjamin Schonbrun, SBN 118323
Michael D. Seplow, SBN 150183
Aidan C. McGlaze, SBN 277270
SCHONBRUN SEPLOW
HARRIS & HOFFMAN LLP
11543 W. Olympic Boulevard
Los Angeles, California 90064
Telephone: (310) 396-0731
Facsimile: (310) 399-7040

Dan Getman, Esq. (*pro hac vice*)
GETMAN, SWEENEY & DUNN, PLLC
260 Fair Street
Kingston, New York 12401
Telephone: (845) 255-9370
Facsimile: (845) 255-8649
dgetman@getmansweeney.com

Susan Martin (*pro hac vice*)
Jennifer Kroll (*pro hac vice*)
MARTIN & BONNETT, PLLC
4647 N. 32nd St., Suite 185
Phoenix, AZ 85018
Telephone: (602) 240-6900
Facsimile: (602) 240-2345

Edward Tuddenham
228 W. 137th St.
New York, New York 10030
Telephone: (212) 234-5953
Facsimile: (512) 532-7780

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

GABRIEL CILLUFFO, KEVIN SHIRE, and BRYAN RATTERREE individually and behalf of all other similarly situated persons,

        Plaintiffs,

        vs.

CENTRAL REFRIGERATED SERVICES, INC., CENTRAL LEASING, INC., JON ISAACSON, and JERRY MOYES,

        Defendants.

Case No. ED CV 12-00886 VAP (OPx)
Honorable Virginia A. Phillips

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL SETTLEMENT APPROVAL**

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................... i

TABLE OF AUTHORITIES ............................................................................ iii

INTRODUCTION ............................................................................................. 1

BACKGROUND .............................................................................................. 1

    A. The Action ............................................................................................... 1

    B. The Collective Action ............................................................................. 2

    D. Settlement Agreement ............................................................................ 3

        1. Monetary Relief to Claimants .......................................................... 3

            a. Fund A ......................................................................................... 3

            b. Fund B ......................................................................................... 4

        2. Cy Pres Recipient............................................................................ 5

        3. Additional Benefits Offered to Claimants ....................................... 5

        4. Release of Claims Against Defendants.............................................. 5

        5. Attorney's Fees and Costs................................................................ 5

        6. Incentive Awards ............................................................................. 6

    E. Notice/Response To Notice ................................................................... 6

ARGUMENT..................................................................................................... 7

    I.    LEGAL   STANDARD   FOR   FINAL   APPROVAL   OF
           SETTLEMENT ................................................................................ 7

    II.  THE  COURT  HAS  PREVIOUSLY  DETERMINED  THAT
           *TORRISI* FACTORS 1-6 FAVOR APPROVAL OF THE
           SETTLEMENT ................................................................................ 9

    III. REACTION OF CLASS MEMBERS TO THE SETTLEMENT ........... 10

    A. Claims/Opt-outs ...................................................................................10

    B. Objections ............................................................................................10

IV.    THE    SETTLEMENT    REFLECTS    ARM'S-LENGTH
        MEDIATED NEGOTIATIONS ......................................................... 12

V. THE AGREEMENT IS FAIR AND SHOULD BE APPROVED .......... 13

VI. SERVICE PAYMENTS .......................................................... 14

XI. EXPENSES ...................................................................... 18

XII. ATTORNEYS' FEES ........................................................ 19

CONCLUSION ....................................................................... 26

1

## TABLE OF AUTHORITIES

2

3 **Cases**

4 *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) .....................20

5 *Barbosa v. MediCredit, Inc.,* No. EDCV 14-63 VAP, 2015 WL 1966911

6    (C.D. Cal. May 1, 2015)........................................................................................10

7 *Barnes v. The Equinox Grp., Inc.*, No. C 10-3586 LB, 2013 WL 3988804

8    (N.D. Cal. Aug. 2, 2013) ....................................................................................12

9 *Beaver, et al., v. Tarsadia Hotels,* No. 11-CV-01842-GPC-KSC, 2017 WL

10    4310707 (S.D. Cal. Sept. 28, 2017) ...................................................................17

11 *Bickley v. CenturyLink, Inc.,* No. CV 15-1014-JGB (ASX), 2016 WL

12    9046911 (C.D. Cal. Nov. 29, 2016).....................................................................24

13 *Bickley v. Schneider Nat'l, Inc.*, No. 08-CV-05806-JSW, 2016 WL 9114937

14    (N.D. Cal. Nov. 28, 2016) ...................................................................................11

15 *Blackwell v. Foley*, 724 F. Supp. 2d 1068 (N.D. Cal. 2010) ....................................22

16 *Bouman v. Block*, 940 F.2d 1211 (9th Cir. 1991) ...................................................25

17 *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804

18    (C.D. Cal. Nov. 18, 2014) ...................................................................................25

19 *Chalmers v. City of Los Angeles*, 796 F.2d 1205 (9th Cir. 1986).............................24

20 *Charlebois v. Angels Baseball LP*, No. SACV 10–0853 DOC (ANx), 2012

21    WL 2449849 (C.D. Cal. May 30, 2012) ..............................................................22

22 *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal. 2008) ................25

23 *Davis v. City & Cty. of San Francisco*, 976 F.2d 1536 (9th Cir. 1992),

24    *opinion vacated in part on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993)..............22

25 *Elliott v. Rolling Frito-Lay Sales, LP*, No. SACV 11-01730 DOC, 2014 WL

26    2761316 (C.D. Cal. June 12, 2014).....................................................................26

27 *Garibaldi v. Bank of Am., Nat'l Ass'n*, No. 3:13-CV-02223-SI, 2015 WL

28    12977072 (N.D. Cal. Aug. 28, 2015) ..................................................................12

*Gatdula v. CRST International, Inc.,* No. CV 11-1285 VAP (OPx), 2015 WL 12697656  (C.D. Cal. Aug. 26, 2015)...................................................12, 13, 24

*Gooding v. Vita-Mix Corp.*, No. 216CV03898ODWJEMX, 2018 WL 571881 (C.D. Cal. Jan. 25, 2018) ...........................................11, 20, 24

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998).....................................8, 10

*Harris v. Marhoefer,* 24 F.3d 16 (9th Cir. 1994) ...........................................18

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .................19

*In re High-Tech Employee Antitrust Litig.,* No. 11-CV-02509-LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015)...........................................17

*In re Immune Response Sec. Litig.,* 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..............20

*In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454 (9th Cir. 2000)................................8

*In re Omnivision,* 559 F. Supp. 2d 1036 (N.D. Cal. 2008)...................................11, 26

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934  (9th Cir. 2015) ..................17

*In re Rite Aid Corp. Sec. Litig.* 396 F.3d 294 (3d Cir. 2005)........................................20

*In re Titanium Dioxide Antitrust Litig.*, No. 10-CV-00318 RDB, 2013 WL 6577029 (D. Md. Dec. 13, 2013) ...........................................17

*Linney v. Cellular Alaska Partnership,* 151 F.3d 1234 (9th Cir. 1998)......................8

*Linney v. Cellular Alaska Partnership,* 1997 WL 450064  (N.D. Cal. July 18, 1997), aff'd 151 F.3d at 1234 ...........................................8

*Lopez v. Bank of Am., N.A.*, No. 10-CV-01207-JST, 2015 WL 5064085 (N.D. Cal. Aug. 27, 2015) ...........................................12

*Marchbanks Truck Serv. v. Comdata Network, Inc*., Case No. 07-CV-1078 (E.D. Pa. July 14, 2014) ...........................................17

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008)...............................23

*Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009) ...................................25

*Nat'l Federation of the Blind v. Target Corp.,* No. C 06–01802 MHP, 2009 WL 2390261 (N.D. Cal. Aug. 3, 2009) ...........................................23

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.,* 221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................................. 7, 8, 10

*Nitsch v. DreamWorks Animation SKG Inc.,* No. 14-CV-04062-LHK, 2017 WL 2423161 (N.D. Cal. June 5, 2017) ..................................... 11, 16, 25

*Pittman v. Diagnostic Products Corp.,* No. B212799, 2011 WL 1588846 (Cal. Ct. App. Apr. 28, 2011) ........................................................ 12

*Rutti v. Lojack Corp.,* No. SACV 06-350 DOC JCX, 2012 WL 3151077 (C.D. Cal. July 31, 2012) ................................................................ 22

*Satchell v. Fed Express Corp.,* 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ........... 13

*Singer v. Becton Dickinson and Co.,* 2010 WL 2196104 (S.D. Cal. 2010) ................ 19

*Steiner v. Am. Broad. Co.,* 248 F. App'x 780 (9th Cir. 2007) ........................ 25

*Taylor v. Shippers Transp. Express, Inc.,* No. CV1302092BROPLAX, 2015 WL 12658458 (C.D. Cal. May 14, 2015) ....................................... 24

*Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370 (9th Cir. 1993) .................. 8, 9, 10, 13

*United Steelworkers of Am. v. Phelps Dodge Co.,* 896 F.2d 403 (9th Cir. 1990) ................................................................................ 24

*Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294 (N.D. Cal. 1995) ............... 17, 25

*Velez v. Novartis Pharm. Corp.,* No. 04 CIV 09194 CM, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) .................................................... 17

*Vincent Hughes Air W., Inc.,* 557 F.2d 759 (9th Cir. 1977) ....................... 18

*Vizcaino v. Microsoft Corp.,* 290 F.3d 1043 (9th Cir. 2002) .................... 20, 25

*Wallace v. Countrywide Home Loans, Inc.,* No. 8:08-1463-JLS MLGX, 2014 WL 5819870 (C.D. Cal. Apr. 14, 2014) ............................... 12

*Wininger v. SI Mgmt, LP,* 301 F.3d 1115 (9th Cir. 2002) ........................ 18

**Statutes**

29 U.S.C. § 216(b) ................................................................ 18

**Rules**

Fed. R. Civ. P. 23(e) ........................................................... 1, 7

# INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Order of this Court (Doc. 258), preliminarily approving the Class Action Settlement Agreement ("Agreement") (Doc. 227), and in accordance with the provisions of the Agreement, Plaintiffs, on behalf of themselves and the Settlement Class,[1] hereby respectfully request that the Court grant final approval of the Agreement to resolve the claims in this case. This motion is supported by the record in this case, Plaintiffs' motion for preliminary approval of the Settlement Agreement and supporting documents (Doc. 227 et. seq.), Plaintiffs' Supplemental Brief and supporting documents (Doc. 243 et. seq.), Declaration in Support of the motion for preliminary approval (Doc. 256), and by the additional documents filed herewith.

# BACKGROUND

## A. The Action

The Named Plaintiffs Gabriel Cilluffo, Kevin Shire, and Bryan Ratterree (collectively "Plaintiffs" or "Named Plaintiffs") are long-haul truck drivers who leased trucks from Defendant Central Leasing, Inc. in order to haul freight for Defendant Central Refrigerated Service, Inc. On June 1, 2012, the Named Plaintiffs filed a Collective & Class Action Complaint ("Complaint") against Defendants Central Refrigerated Service, Inc.; Central Leasing, Inc.; Jerry Moyes; and Jon Isaacson (collectively, "Defendants") in the above-captioned case pending in this Court ("Action"). (Doc. 1.)

Plaintiffs alleged in their Complaint that the Defendants are liable for the misclassification of the Plaintiffs and other lease operator drivers[2] as independent contractors and for failing to pay them the legally required minimum wage for each hour worked per week in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206 et seq. The Plaintiffs also alleged that the Defendants violated the federal forced

---

[1] Capitalized terms are as set forth in the Agreement.
[2] Defendants referred to lease operator drivers as owner operators.

1

labor statutes, 18 U.S.C. §§ 1589, 1595. On September 24, 2012, the Court stayed the Action, and granted Defendants' motion to compel arbitration pursuant to the Utah Uniform Arbitration Act ("UUAA"). (Doc. 53.) On November 8, 2012, the Court held that the FLSA claim could proceed on a collective basis but that arbitration of Plaintiffs' forced labor claims must occur individually. (Doc. 61 at 4.)

## B. The FLSA Collective Action

The FLSA Collective Action consists of a conditionally-certified group of approximately 1,350 plaintiffs who opted in to the FLSA collective arbitration pending before the American Arbitration Association ("AAA") Case No. 77 160 00126 13 PLT. (Doc. 228-2 at ¶¶ 15-19.) The FLSA Collective Action consists of "truckers who leased a truck from Central Leasing, Inc. to drive for Central Refrigerated Service, Inc. on or after June 1, 2009." (*Id.* at ¶ 17.) Arbitrator Patrick Irvine (the "Arbitrator") denied Defendants' Motion to Decertify the Conditionally-Certified Class on October 26, 2016, dismissed 26 members, and on motions for summary judgment following extensive discovery ruled that approximately 1,350 plaintiffs were employees under the FLSA and that Defendants had misclassified these plaintiffs as independent contractors.[3] (*Id.* at ¶¶ 20-21.) The parties began settlement negotiations in June 2016 with the assistance of Hunter Hughes, an experienced mediator. Negotiations continued over the next ten months simultaneously with further discovery and investigations on damages and additional arbitration proceedings. Those efforts finally culminated in a Memorandum of Understanding signed by the parties at the end of April, 2017 – just days before an arbitration trial was scheduled to begin in the FLSA Collective Action in early May 2017. (*Id.* at ¶¶ 22, 35)

---

[3] In the event the Settlement Agreement does not become final for any reason, Defendants reserve their right to challenge the Arbitrator's October 26, 2016 rulings and any other aspects of the District Court and Arbitrator Irvine's rulings on appeal, including, but not limited to, the Arbitrator's ruling that Plaintiffs are employees under the FLSA and that a collective arbitration is permissible under the parties' contracts and applicable law.

### C. The Individual Arbitrations

The term "Individual Arbitrations" refers to the approximately 328 individual drivers ("Individual Plaintiffs") who submitted demands to the AAA for individual arbitration against Defendants. (Doc. No. 228-2 at ¶ 23.) The Individual Plaintiffs asserted claims for: federal common law fraud, Utah common law fraud and negligent misrepresentation, unconscionability, Utah common law unjust enrichment, as well as claims for violation of federal forced labor statutes and state wage and hour laws (i.e., they alleged violations of state minimum wage and unlawful deduction statutes). (*Id.* at ¶ 24.) Twenty-nine arbitrators were assigned to hear the claims of the first 300 individual arbitrations and extensive discovery in those cases was also conducted. (*Id.* at ¶ 25.) In July 2016, the parties agreed to fast-track eight "bellwether" arbitrations in front of four arbitrators. (*Id.* at ¶ 26.) In March 2017, the parties filed motions for summary judgment in all bellwether cases. (*Id.* at ¶ 27.) Four-day arbitration trials for each of the bellwether cases were scheduled to start in July 2017. (*Id.* at ¶ 28.)

### D. Settlement Agreement

This Settlement Agreement provides for the settlement of all of the pending claims against Defendants in *Cilluffo, et al. v. Central Refrigerated Service, Inc.*, *et al.*, Case No. 12-00886-VAP (OPx), as well as the Collective Action and Individual Arbitrations pending before the American Arbitration Association ("AAA"). A copy of the Settlement Agreement is attached as Ex. 1 hereto. Key provisions of the Settlement Agreement are outlined below.

**1. Monetary Relief to Claimants:** The Settlement Agreement provides for a Gross Settlement Amount of no more than ████████ (Settlement Agreement at ¶ 2.3(A)(i).) The Gross Settlement Amount will be divided between a non-reversionary Fund A and a reversionary Fund B. (Settlement Agreement at ¶ 2.3(A)(ii) and (iii).)

**a. Fund A:** Fund A Claimants consist of drivers who joined the FLSA Collective Action or filed an Individual Arbitration. (See Settlement Agreement at ¶ 2.1(N); *id.* at Ex. E.) The parties believe there are approximately 1,356 Fund A

1  Claimants. (Settlement Agreement at ¶ 2.3(A)(ii).) Fund A Claimants were able to opt

2  out of the settlement if they did not wish to participate, but not one has done so thus far.

3  ███ of the total settlement amount – less a share of approved attorneys' fees[4] and

4  costs, administrative costs and service awards – will be allocated pro rata to Fund A

5  Claimants who do not timely opt out of the settlement. (Settlement Agreement at ¶

6  2.3(A)(ii); Settlement Agreement at ¶ 2.3(B)(i).) Each claimant will receive a payment

7  based on a formula that takes the total number of hours worked multiplied by a damage

8  recovery per hour which is variable based on their average hourly earnings. This

9  formula is "based on Plaintiffs' counsel's privileged assessment of the Fair Settlement

10 Value of claims in relation to the average hourly wages paid by Defendants."

11 (Settlement Agreement at Ex. F.) Each Fund A Claimant will receive a minimum award.

12 (*Id.*) All Fund A Claimants who filed individual arbitration claims will receive an

13 additional award. (*Id.*)

14       **b. Fund B:**  Potential Fund B Claimants consist of drivers who drove for

15 Central Refrigerated and who were eligible to, but did not, join the FLSA Collective

16 Action or file an Individual Arbitration. The parties believe that there are approximately

17 1,955 potential Fund B Claimants. (Settlement Agreement at Ex. G.) ███ of the total

18 settlement amount, less a share of approved attorneys' fees and costs, administrative

19 costs and service awards, will be allocated to participating Fund B Claimants who

20 timely opt in to the Settlement, on a pro rata basis based on the number of months each

21 participating Fund B Claimant worked for Central Refrigerated from June 1, 2009 to

22 the date of the Settlement Agreement, provided that no participating Fund B claimant

---

23 [4] Attorneys' fees were originally to be deducted from Funds A and B proportionally

24 according to each Fund's share of the Gross Settlement Amount (i.e., ███████),

   which resulted in fees of approximately ██████ and ██████. However, due

25 to the approximately ██████ correction of the Fund A allocation, including the

26 costs to send out corrective notice, and Plaintiffs' counsel's proposal, subsequently

   approved by this Court (see Doc. 271) to reduce their Fund A attorneys' fees by

27 approximately ██████, Class Counsel now seek approximately ██████ from

28 Fund A and ██████ from Fund B.

will receive less than a specified minimum payment. (Settlement Agreement at ¶ 2.3(B)(ii).)

**2. Cy Pres Recipient:** The unclaimed funds remaining in Fund A one year after distribution from Fund A commences, shall be paid to a cy pres recipient. Since the parties could not come to an agreement on a cy pres recipient, the Court resolved their dispute by selecting the National Employment Law Project as the cy pres recipient. (Doc. 258 at 21-22.)

**3. Additional Benefits Offered to Claimants:** Defendants have agreed not to pursue collection efforts against participating settlement members with respect to leases involving Central Leasing or in connection with Central Refrigerated's contracts. (Settlement Agreement at ¶ 2.8(D.) Central Refrigerated and Central Leasing will also release and dismiss with prejudice any counterclaims they have filed, or ever could file, based on any occurrences that took place prior to May 5, 2017. (*Id.*) Upon request, Defendants Central Refrigerated and Central Leasing will timely provide a letter to a background screening company on behalf of a Participating Settlement Member that defaults under the Central Leasing lease have been rescinded. (Settlement Agreement at ¶ 2.8(I).)

**4. Release of Claims Against Defendants:** The Named Plaintiffs have agreed to release any and all claims against Defendants and all other Released Parties. (Settlement Agreement at ¶ 2.8(F).) Other participating Settlement Members release all claims against Defendants and other Released Parties that related to the services they provided at issue in the Action. (Settlement Agreement at ¶ 2.8(A).) The Settlement Agreement does not affect the claims by potential Fund A Claimants who opt-out of the settlement, or potential Fund B Claimants who do not affirmatively opt-in. (Settlement Agreement at ¶¶ 2.9(C), 2.10 (C).)

**5. Attorney's Fees and Costs:** Plaintiffs' counsel intended to seek attorney's fees in an amount of ▮▮▮ of the Gross Settlement Amount and certain costs. (Settlement Agreement at ¶ 2.3(F).) However, due to a calculation error, 226 Fund A

1   Claimants received notices that understated their individual damages awards. Rather

2   than correct this error by re-apportioning Fund A in its entirety, (which would have had

3   the effect of reducing the amounts set forth in the notices sent to other Fund A

4   Claimants), and notwithstanding that the Court had preliminarily found the ████ fee

5   allocation to be fair, Plaintiffs' counsel proposed to reduce their fee award by the

6   amount necessary to pay the 226 Fund A drivers their correct allocation under the

7   approved settlement formula and the cost of sending out corrective notice. (Doc. 270.)

8   The Court approved that procedure by Order of January 22, 2018. (Doc. 271.) With that

9   reduction, Plaintiffs' counsel now seeks a fee of ████████, which equals ████ of the

10  Gross Settlement Fund. Counsel also seeks reimbursement of litigation expenses in the

11  amount of ████████.[5]

12          **6. Incentive Awards:** Plaintiffs seek approval of "service awards" totaling

13  ████████ (████ of the Gross Settlement Amount). These awards consist of ████

14  for each of the three Named Plaintiffs, ████ for each of the ten individuals who gave

15  all day depositions and acted as representatives of the plaintiffs in the FLSA Collective

16  Action, and ████ each to the 166 plaintiffs who sat for half-day depositions in the

17  Individual Arbitrations. These service awards are to be deducted proportionally from

18  Fund A and Fund B. (Settlement Agreement at ¶ 2.3(G).)

19          **E. Notice/Response To Notice**

20          The Court approved the parties' proposed method of notice to the Settlement

21  Class members (Doc. 258 at 23) and on December 7, 2017, Settlement Services, Inc.,

22  the settlement administrator, sent notices to the class members by email and first class

23  mail. (Settlement Agreement at ¶¶ 2.5(A), 2.9(A), 2.10(A), 2.12(A); Declaration of Dan

24  Getman ("Getman Decl.") at ¶ 10) As a result of the error in calculating the individual

25  award for 226 Fund A drivers, Settlement Services, Inc. mailed and e-mailed corrective

26  ───────────────────

27  [5] Attorneys' fees and costs are to be deducted proportionately from Fund A and Fund
    B, except that the attorneys' fees to be deducted from Fund A are reduced by the

28  approximately ████████ calculation error discussed above.

6

notices to those individuals on January 30, 2018, pursuant to the Court's Order at Doc. 271. *Id.* at ¶ 11. The period for responding to the notice will close on March 7, 2018. Thereafter the settlement administrator will report all results. As of February 21, 2018, the settlement administrator has reported as follows:

Notices Mailed: 3,348

Notices Returned as Undeliverable: 1,086

Traced, Notices Re-mailed: 1,006

Trace Unsuccessful: 80

Trace Pending: 0

Total Corrective Notices mailed per Order of Jan. 22 (Doc. 221): 226

Fund B Claim Forms Received: 253

Fund A Opt-outs Received: 0

Objections Received: 0

Correspondence from Beneficiary of Deceased Class Member: 8

Total Funds Claimed from Fund B: ████████

Notice Mailing Date: 12/7/2017

Postmark Deadline: 3/7/2018

*Id.* at ¶ 12.

## ARGUMENT

## I. LEGAL STANDARD FOR FINAL APPROVAL OF SETTLEMENT

Under Rule 23(e) of the Federal Rules of Civil Procedure "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). A court must engage in a two-step process to approve a proposed class action settlement. First, the court must determine whether the proposed settlement deserves preliminary approval. *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.,* 221 F.R.D. 523, 525 (C.D. Cal. 2004). Second, after notice is given to class members, the Court must determine whether final approval is warranted. *Id.* A court should approve a settlement pursuant to Rule 23(e) only if the

settlement "is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotation marks omitted); *accord In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998)).

The court must balance the following factors to determine whether a class action settlement is fair, adequate, and reasonable:

(1) the strength of the plaintiff's case;

(2) the risk, expense, complexity, and likely duration of further litigation;

(3) the risk of maintaining class action status throughout the trial;

(4) the amount offered in settlement;

(5) the extent of discovery completed and the stage of the proceedings;

(6) the experience and views of counsel;

(7) the presence of a governmental participant; and

(8) the reaction of the class members to the proposed settlement.

*Torrisi,* 8 F.3d at 1375; *accord Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1242 (9th Cir. 1998); *Hanlon,* 150 F.3d at 1026. "In addition, the settlement may not be the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d at 458. These factors are not exclusive, and one factor may deserve more weight than the others depending on the circumstances. *Torrisi,* 8 F.3d at 1376. In some instances, "one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l. Rural Telecomms. Corp.,* 221 F.R.D. at 525-526 (citing *Torrisi,* 8 F.3d at 1376). These factors are analyzed below and support final approval of the settlement. In addition, "[t]he involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership,* 1997 WL 450064 at *5 (N.D. Cal. July 18, 1997), aff'd 151 F.3d at 1234.

## II. THE COURT HAS PREVIOUSLY DETERMINED THAT *TORRISI* FACTORS 1-6 FAVOR APPROVAL OF THE SETTLEMENT

In its order granting preliminary approval to the settlement, the Court addressed at length most of the *Torrisi* factors. Specifically, the Court found that the strength of Plaintiffs' case and the risk, expense, complexity and likely duration of further litigation weighed in favor of approving the settlement (*Torrisi* factors 1-3). (Doc. 258 at 10-11.) The Court also considered the comparison of the amount offered in settlement to the maximum possible recovery were Plaintiffs to continue litigating (*Torrisi* factor 4). Based on counsel's explanation that the Fund A settlement represented between ███ and ███ of the best day recovery (after deduction for attorney's fees and service awards), the Court found that the settlement amount for Fund A weighed in favor of approving the settlement. (Doc. 258 at 11-13). As for Fund B, comparison of the settlement amount to the best day recovery is not possible because the Fund B claimants did not file any claims nor were they subject to discovery, leaving Plaintiffs with no way to calculate their potential recovery. Nevertheless, the Court found that, because Fund B class members have the right to not join in the settlement if they find it inadequate, the settlement amount for Fund B also weighed in favor of approving the settlement. (Doc. 258 at 13.)

The Court reviewed the discovery that had been conducted prior to the settlement agreement and found that "the parties possessed sufficient information to make an informed decision about the settlement" leading the Court to conclude that *Torrisi* factor 5 weighed in favor of approval. (Doc. 258 at 14.) Finally, with regard to *Torrisi* factor 6, the views of counsel, the Court noted the counsel for both sides were experienced in class litigation and that all counsel believe the settlement is in the best interests of the class. (Doc. 258 at 14.)

Nothing has changed with respect to these first six *Torrisi* factors since the Court granted preliminary approval. All six factors continue to weigh heavily in favor of

granting final approval to the settlement.[6]

## III. REACTION OF CLASS MEMBERS TO THE SETTLEMENT

Given that the notice period closes shortly, it is possible to assess *Torrisi* factor 8 - the reaction of Class Members to the settlement. As set forth below, this factor also weighs heavily in favor of granting final approval.

**A. Claims/Opt-outs:** To date, *no Fund A class members have requested to be excluded from the settlement although they were given three months to do so*. Getman Decl. at ¶ 12. Fund B claimants were required to affirmatively opt-into the settlement and a total of 253 individuals out of approximately 1,955 potential claimants have opted in to date. *Id.* at ¶ 12.

**B. Objections:** To date, no objections have been filed by any member of Fund A or Fund B. *Id.* at ¶ 12. Moreover, many Fund A Claimants have filed declarations supporting the settlement terms. Those comments are discussed below with regard to the incentive awards.

That none of the Fund A Claimants have opted out and no one covered by either Fund has objected to the settlement indicates a strongly positive response to the settlement that further supports granting final approval.[7] *See Barbosa v. MediCredit, Inc.,* No. EDCV 14-63 VAP, 2015 WL 1966911 at *6 (C.D. Cal. May 1, 2015), *quoting Hanlon,* 150 F.3d at 1027 ("Where 'the overwhelming majority of the class willingly approved the offer and stayed in the class,' there is 'at least some objective positive commentary as to its fairness."); *Nat'l. Rural Telecomms. Coop.,* 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class

---

[6] *Torrisi* factor 7 (presence of governmental participant) is inapplicable to this litigation between private parties.

[7] Although only some of the potential Fund B Claimants opted in, that is not surprising since all of them previously declined to opt-into the FLSA Collective Arbitration. It is also important to remember that no potential Fund B Claimant who has not affirmatively opted in waives any claims nor forfeits any rights, if any, they might possess against Defendants. The basis on which this Court found preliminary fairness for this fund thus remains unchanged.

action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."); *In re Omnivision,* 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (same).

Two non-party individuals, Walter Ellis and Randall Pittman, have indicated that they may file objections to the settlement or otherwise attempt to be heard in these proceedings. However, inasmuch as they are non-parties, the Court need not, and should not, consider their views. *Nitsch v. DreamWorks Animation SKG Inc*., No. 14-CV-04062-LHK, 2017 WL 2423161, at *12 (N.D. Cal. June 5, 2017) (non-class members lack standing to object). Mr. Ellis discharged Plaintiffs' counsel and pursued his own individual arbitration against Defendants which he lost on the merits. Getman Decl. at ¶ 14. That ruling was confirmed by the Superior Court of the State of California, County of Riverside. *Id.* at ¶ 15. Mr. Ellis is not a member of the Settlement Class; the parties' Settlement Agreement makes this clear. Ex. 1 at ¶ 1a. Mr. Pittman is not an attorney and has never worked for Central Refrigerated or any of the other Defendants, although he claimed to Plaintiffs' counsel that he allegedly filed an application for employment with Central Refrigerated. Getman Decl. at ¶¶ 16-17. The Settlement Agreement applies to drivers who opted into the FLSA Collective Action and do not choose to opt-out ("Fund A Claimants") and drivers who leased a truck from Central Leasing, Inc. to drive for Central Refrigerated Service, Inc. at any time between June 1, 2009 and February 1, 2014, and who choose to opt-in ("Fund B Claimants"). The Settlement Agreement has nothing to do with purported applicants who never drove for Central Refrigerated and Mr. Pittman does not have any interest in this lawsuit or the settlement.[8]

---

[8] Mr. Pittman is a habitual inappropriate litigant in these types of cases. *See, e.g., Gooding v. Vita-Mix Corp.*, No. 216CV03898ODWJEMX, 2018 WL 571881, at *6 (C.D. Cal. Jan. 25, 2018) ("Pittman did not present any evidence or argument establishing that he is a member of the class, and thus, by the plain language of Rule 23, he does not have standing to assert his objection."); *Bickley v. Schneider Nat'l, Inc.*, No. 08-CV-05806-JSW, 2016 WL 9114937, at *2 (N.D. Cal. Nov. 28, 2016) ("In overruling Mr. Pittman's objections to the class action settlement, the Court found that Mr. Pittman lacked standing to object to the proposed class action settlement of this

## IV. THE SETTLEMENT REFLECTS ARM'S-LENGTH MEDIATED NEGOTIATIONS

Another factor often considered by courts in assessing whether to approve a class or collective action settlement is whether there is any indication of collusion between class counsel and defendants. *Gatdula v. CRST International, Inc.,* No. CV 11-1285 VAP (OPx), 2015 WL 12697656 at *8-9 (C.D. Cal. Aug. 26, 2015). There was no collusion here. None of the "subtle signs" of collusion discussed in *Gatdula* are present here: First, class counsel are not seeking a disproportionate share of the settlement. As explained below, Plaintiffs' counsel seek ███ of the settlement fund, which is within the range of amounts approved by courts in this Circuit. Moreover, while reserving judgment on whether the amount sought in attorneys' fees is reasonable, the Court's order preliminarily approving the settlement found counsel's explanation for the fee they are requesting to be persuasive. (Doc. 258 at 16-17.) Second, the Settlement Agreement contains no clear-sailing provision or other provision "providing for the

---

case, because he was (and is) not a class member....The Court finds that Mr. Pittman's appeal from this order is frivolous, and hereby CERTIFIES, sua sponte, that Mr. Pittman's appeal is not taken in good faith."); *Garibaldi v. Bank of Am., Nat'l Ass'n*, No. 3:13-CV-02223-SI, 2015 WL 12977072, at *2 (N.D. Cal. Aug. 28, 2015) ("the Court OVERRULES the objections of ... Randall Pittman. The objections are without merit. Moreover, Mr. Pittman lacks standing to make any objections."); *Lopez v. Bank of Am., N.A.*, No. 10-CV-01207-JST, 2015 WL 5064085, at *9 (N.D. Cal. Aug. 27, 2015) ("The Court also received a 'joinder notice' to Davis's objection filed by Randall Pittman. .... Pittman is not a member of the class."); *Wallace v. Countrywide Home Loans, Inc.*, No. 8:08-1463-JLS MLGX, 2014 WL 5819870, at *1 (C.D. Cal. Apr. 14, 2014) ("The Court then issued an order finding that Pittman was not a member of the certified class or settlement class in this action, and accordingly had no standing to object to the settlement."); *Barnes v. The Equinox Grp., Inc.*, No. C 10-3586 LB, 2013 WL 3988804, at *2 (N.D. Cal. Aug. 2, 2013) ("He appeared at the state court hearing as an objector with someone else named Randall Pittman, who is not a class member and who has made similar objections (without being a class member) in other class action settlements (rendering him, in Plaintiffs' view, a vexatious litigant)."); *Pittman v. Diagnostic Products Corp.*, No. B212799, 2011 WL 1588846, at *1 (Cal. Ct. App. Apr. 28, 2011) (affirming orders denying Pittman's motions to set aside judgments for defendants in three cases).

payment of attorneys' fees separate and apart from the class funds." *Gatdula*, 2015 WL 12697656 at \*8. Third, the Settlement Agreement does not provide for fees not awarded to revert to the Defendants. Any fees not awarded are to be distributed pro rata among the participating class members participating in the settlement. Fund A is non-reversionary; nothing from the Fund A settlement fund will be returned to Defendants. While Fund B, which is a significantly smaller Fund, is reversionary in the sense that Central Refrigerated need only fund so much of Fund B as is affirmatively claimed by Fund B class members, potential Fund B Claimants who choose not to opt into the Settlement, will be left in the same position they were in before the Settlement and suffer no adverse consequences.

Finally, and most importantly, the entire settlement was arrived at in an arm's-length and non-collusive manner with the assistance of an experienced and well-respected neutral mediator, Hunter Hughes. It took a mediation and numerous additional conferences with the mediator over the course of ten months in order to hammer out the current Settlement Agreement. Settlements reached with the help of a mediator are presumed to be non-collusive. *Gatdula*, 2015 WL 12697656 at \*9; *Satchell v. Fed Express Corp.,* 2007 WL 1114010 at \*4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Thus, none of the "subtle signs" of collusion are present here which further weighs in favor of approving the settlement. *Gatdula,* 2015 WL 12697656 at \*9.

## V. THE AGREEMENT IS FAIR AND SHOULD BE APPROVED

In sum, all of the relevant *Torrisi* factors favor approval of the settlement and, accordingly, the Court should find the Settlement Agreement to be fair, reasonable, and adequate. *Gatdula*, 2015 WL 12697656 at \*9. Following approval, several matters within the Court's discretion remain to be determined, including the amounts to be awarded for service payments, litigation expenses, and attorney's fees.

## VI. SERVICE PAYMENTS

Factors the court should consider when assessing whether individual incentive payments are reasonable include: (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; (3) the amount of time and effort the plaintiff expended in pursuing the litigation; and (4) and reasonable fears of workplace retaliation. *Gatdula*, 2015 WL 12697656 at *10 Courts may also consider: the risk to the class representative in commencing suit, both financial and otherwise; the notoriety and personal difficulties encountered by the class representative; the amount of time and effort spent by the class representative; the duration of the litigation; and the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *Id.*

Plaintiffs briefed these factors extensively in their supplemental brief in support of preliminary approval of the settlement (Doc. 243 at 9-16), and, in its Order granting preliminary approval, the Court noted that it "finds it compelling that the incentive awards sought make up a small percentage of the total settlement amount. . . . It is also persuasive given Plaintiffs' declarations suggesting that participation in this case may harm the employment prospects of certain Plaintiffs. [Citing 243-6, -7, and -8]." (Doc. 258 at 18.) The Court declined to make a final determination on the amount to be allocated as incentive awards though it did find that "more than a nominal amount for incentive awards is likely appropriate." *Id.* Plaintiffs now further urge the Court to grant final approval to the full incentive awards permissible under the settlement to wit: a ███████ award for each of the three Named Plaintiffs, Cilluffo, Shire, and Ratterree, an award of ███████ for each of the ten individuals who sat for all day depositions and acted as representatives of the FLSA Collective Action, and an award of ███████ each for the 166 individuals who gave 1/2 day depositions in the individual arbitrations. The service awards to the Named Plaintiffs amount to ███████ of the total settlement fund and the deposition awards amount to ███████. All service awards taken together amount to ███████ of the total settlement fund.

14

There are several reasons for granting these requests in addition to those set forth in Plaintiffs Supplemental Brief. (Doc. 251 at 9-16.) First, and foremost, to date, not a single class member has expressed any objection to the incentive awards. Getman Decl. at ¶ 12. The Notices sent to each class member specifically informed them of the incentive award amounts that Plaintiffs would ask the Court to approve (Doc. 40 at 60 and 69), yet none of the class members in Fund A or Fund B has expressed any objection to those awards or argued that they should be reduced. Since the class members themselves are in the best position to evaluate the risks taken by their colleagues who came forward to make this settlement possible, as well as the degree to which they have benefitted from their colleagues' actions, the absence of any objection on the issue should weigh heavily in favor of granting the requested awards.

Second, numerous class members have signed declarations affirmatively endorsing the incentive awards, noting that they would not or could not have taken the time to search for documents and sit for depositions and would not have had the courage to risk retaliation as those who brought the suit and sat for depositions did. See declarations attached hereto as Ex. 2. Because the perceived, and likely very real risks, to those who publicly step forward to sue their employer cause many meritorious suits never to be brought, it is extremely important to the FLSA's remedial purposes, that some individuals do in fact assume such risks to vindicate the rights of the class. Plaintiffs' counsel regularly hears from individuals who call to learn of their rights, but who ultimately do not step forward to assert them, due to fear of long-term consequences in publicly suing one's employer. Getman Decl. at ¶ 18. In this case, the stark power differential between the individual and corporate defendants and the mostly high-school educated truckers was extreme. For individuals to step forward, to sit for depositions, to challenge the practices which have dominated the trucking industry for the last 20 years, has taken immense courage. Just the very act of sitting for depositions was upsetting in the extreme. Some truckers were in tears during and after their depositions. *Id.* at ¶ 19.

Many Plaintiffs and class members who sat for depositions and for whom service awards are sought have submitted declarations further explaining and supporting the arguments made in Plaintiffs' supplemental brief. See declarations attached hereto as Ex. 3. These declarations describe in detail the considerable investment in time and energy necessary to prepare for the depositions as well as the consuming and complex problems posed by the need for working drivers who were on the road in locations that were far from home or a terminal location, carrying truckloads of goods to find the ways and means to get to a deposition site in Salt Lake City or other location on a particular day -- logistics that required negotiations with their current employers for time off from work with the associated loss of pay, both of which posed not only financial hardship but genuine risks of retaliation. It is difficult for non-truckers to understand the logistical complications involved in planning to be in a specific location on a specific date, when the driver is required by his or her current employer to be available to be sent anywhere in the continental U.S. at any time, subject only to the company's needs at the moment. It is no simple matter to find a parking location for big rigs, and then obtain transportation from there to another location. The declarations make clear that the service awards for these efforts are modest in comparison to the efforts and risks undertaken by the individuals who sat for depositions-- something their fellow drivers clearly recognize. The Named Plaintiffs previously submitted declarations setting forth the time, effort and risks they undertook to bring this case to a successful conclusion. Docs. 243-5, -6 and -7.

The amounts of the awards are not disproportionate to the average recovery for class members as they range from just over ███ the average payment of ███ for Fund A drivers for the Named plaintiffs and considerably less for the deponents. *Nitsch,* 2017 WL 2423161, at *15 (finding service awards 7.3 times the average recovery to be "not unreasonable"). And, as the Court noted, the incentive awards make up a small percentage of the settlement fund. (Doc. 258 at 18.) Further, the amount of the incentive awards is within the range approved in other similar cases. *Nitsch,* 2017

WL 2423161, at *15 (awards of $100,000 to named plaintiffs); *Beaver, et al., v. Tarsadia Hotels,* No. 11-CV-01842-GPC-KSC, 2017 WL 4310707, at *7–8 (S.D. Cal. Sept. 28, 2017) (approving $50,000 service awards); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) ("Court finds that an incentive award of $50,000 is just and reasonable under the circumstances"). *See also Marchbanks Truck Serv. v. Comdata Network, Inc*., Case No. 07-CV-1078, Dkt. 713 at 2, 8 (E.D. Pa. July 14, 2014) (approving $130 million class action settlement, including service award of $150,000 to one class representative and service awards of $75,000 to two other class representatives); *In re Titanium Dioxide Antitrust Litig.*, No. 10-CV-00318 RDB, 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (awarding $125,000 to lead class representative out of $163.5 million settlement); *Velez v. Novartis Pharm. Corp.*, No. 04 CIV 09194 CM, 2010 WL 4877852, at *4, *8, *28 (S.D.N.Y. Nov. 30, 2010) (awarding $125,000 to named plaintiffs from $175 million settlement); *In re High-Tech Employee Antitrust Litig.,* No. 11-CV-02509-LHK, 2015 WL 5158730, at *18 (N.D. Cal. Sept. 2, 2015) (authorizing $80,000 and $120,000 service awards in case with $415 million settlement fund and collecting similar "mega-fund" cases); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (approving $45,000 in incentive awards to class representatives based on the awards making up 0.17% of the total settlement fund).

Plaintiffs understand that the Court's responsibility requires it to be vigilant to ensure that a high service award does not indicate that the class was sold out for a high individual payment. But that clearly is not the case here. No class member has objected to the service payments, or to their own payments. Getman Decl. at ¶ 12. And Plaintiffs urge the Court to understand the critical importance that named plaintiffs serve in giving effect to the statutory intention that <u>all workers be paid the minimum wage</u>. Without named plaintiffs such as those here, this case would never have been brought. Thus, to fulfill the statutory purposes, named plaintiffs, and others who bear risk and burdens on behalf of the class of otherwise passive workers (who have equal legal rights but would never assert them), must be given a significant incentive, or the statutory goals would

never be fulfilled.[9]

Accordingly, Plaintiffs respectfully request that the Court grant final approval for incentive awards totaling ███████ to be deducted from the Gross Settlement Amount and awarded as requested and stated in the proposed final judgement.

## XI. EXPENSES

In common fund cases, the Ninth Circuit has stated that the reasonable expenses of acquiring the fund can be reimbursed to counsel who have incurred the expenses. *See Vincent Hughes Air W., Inc.,* 557 F.2d 759, 769 (9th Cir. 1977); *Wininger v. SI Mgmt, LP*, 301 F.3d 1115, 1121 (9th Cir. 2002). All expenses that are typically billed by attorneys to paying clients in the marketplace are compensable. *Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994). The FLSA, 29 U.S.C. § 216(b), also provides for recovery of these expenses.

Plaintiffs' counsel have incurred ██████ in costs to date. See Getman Decl. ¶ 23; Martin Decl. ¶ 10; McGlaze Decl. ¶ 18. A review of these costs, the vast majority of which relate to discovery expenses, expert witness fees, and filing fees, demonstrates that they were reasonably incurred in prosecuting this case and bringing it to a successful settlement. Accordingly, in granting final approval to the Settlement Agreement, Plaintiffs' counsel respectfully requests that the Court approve the deduction of ██████ from the Gross Settlement Amount to be paid to Plaintiffs' counsel as reimbursement of their reasonable expenses. In addition, under the Settlement Agreement, ¶ 2.5.B., the costs of the settlement administrator are to be deducted from the Gross Settlement Amount. These costs which will amount to ██████, are reasonable and should be approved. Accordingly, in granting final approval to the settlement agreement, Plaintiff's counsel respectfully requests that the Court approve the deduction of ██████ from the Gross Settlement Amount to be paid to the settlement administrator.

---

[9] Defendants maintain that Plaintiffs were paid in accordance with all applicable laws, including federal minimum wage laws.

## XII. ATTORNEYS' FEES

Plaintiffs' counsel originally sought ███ of the common fund and provided an explanation of the special circumstances justifying departure from the ███████ ██████████ benchmark for attorney's fees awarded based on the "percentage of the fund" method, *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011), in their Supplemental Brief in Support of Preliminary Approval (Doc. 243). After reviewing that submission, the Court stated in its Order preliminarily approving the Settlement, that "Plaintiff's counsel's explanation for the requested upward departure from the benchmark percentage provided in Plaintiff's supplementary briefing is persuasive. The Court is impressed by the result achieved in this case and the time and resources invested by Plaintiffs' counsel." (Doc. 258 at 17.) The Court deferred ruling on the reasonableness of the actual amount sought in attorney's fees until after Plaintiffs' counsel had submitted copies of their contemporaneous time-keeping records. *Id.*

Although the Court's favorable comments were addressed to Plaintiffs' counsel's original request of ███ of the fund, Plaintiffs' counsel voluntarily agreed to reduce the amount requested by ██████████[10] to ██████ of the common fund, for a total award of attorney's fees of ███████████) in order to ensure that an error in some of the class notices could be corrected without reducing the amount that other class members had previously been told they would receive. This lower percentage is even more reasonable than the ████ preliminarily approved by the Court in November and is well within the range awarded by courts in this Circuit. *See Singer v. Becton Dickinson and Co.*, 2010 WL 2196104, at * 8 (S.D. Cal. 2010) (finding an award of 33.3% percent of the common fund in a wage and hour case to be reasonable because class counsel took the case on a contingent basis and litigated for two years, awards usually range from 20% to 50%, and no class member objected to the award).

---

[10] ██████████ to correct the Fund A allocation and ██████ to send corrective notice.

A lodestar cross-check also confirms that the requested fee is reasonable and appropriate. "The lodestar may provide a useful perspective on the reasonableness of a given percentage award." *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). The lodestar method is used as a cross-check of the percentage method and is performed with a less exhaustive cataloguing and review of counsel hours. *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 451 (E.D. Cal. 2013) (citing *In re Rite Aid Corp. Sec. Litig.* 396 F.3d 294, 306 (3d Cir. 2005)) ("The lodestar cross-check calculation need entail neither the mathematical precision nor bean-counting"). Plaintiffs' counsel submits their contemporaneous time records, though the court need not review actual billing records. *See, e.g., Gooding v. Vita-Mix Corp.*, No. 216CV03898ODWJEMX, 2018 WL 571881, at *7 (C.D. Cal. Jan. 25, 2018) ("[I]t is well established that '[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting ... [courts] may rely on summaries submitted by the attorneys and need not review actual billing records.'"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ("Although counsel have not provided a detailed cataloging of hours spent, the Court [finds] the information provided to be sufficient for purposes of lodestar cross-check."). Those records show in detail the work that was performed in this case and fully support the requested fee award. A review of those time records demonstrates that both the time expended by counsel and counsel's billing rates are reasonable. At counsels' normal billing rates, those hours generate a lodestar amount of ███████████ broken down as follows:

| Firm/Attorney | Hours | Rate | Lodestar |
|---|---|---|---|
| Getman Sweeney & Dunn | | | |
| Dan Getman (Partner) | ███ | $785 | ██████ |
| Michael Sweeney (Partner) | ██ | $670 | █████ |
| Matt Dunn (Partner) | ██ | $580 | █████ |
| Lesley Tse (Associate) | ███ | $455 | ██████ |
| Artemio Guerra (Associate) | ██ | $385 | █████ |

| | | | |
|---|---|---|---|
| Carol Richman (Associate) | ██ | $455 | ███████ |
| Diana Marin (Associate) | ██ | $345 | ████ |
| Kimberly Webster (Associate) | ██ | $325 | ██████ |
| Alex Dumas (Associate) | ██ | $295 | ███████ |
| Michael Russo (Data Analyst) | ██ | $275 | ███████ |
| Jason Kandel (Data Analyst) | ███ | $230 | ██████ |
| Paralegals | ███ | $190 | ███████ |
| Martin & Bonnett | | | |
| Susan Martin (Sr. Partner) | ██ | $785 | ██████ |
| Dan Bonnett (Sr. Partner) | ██ | $785 | ██████ |
| Jennifer Kroll (Jr. Partner) | ██ | $580 | ██████ |
| Ravi Patel (Associate) | ██ | $455 | ██████ |
| Evan Schlack (Associate) | ██ | $295 | █████ |
| Michael Licata (Associate) | ██ | $385 | ████ |
| Paralegals | ██ | $190 | ████ |
| Law Clerk | ██ | $190 | █████ |
| Edward Tuddenham | ██ | $785 | ██████ |
| Schonbrun Seplow Harris & Hoffman | | | |
| Benjamin Schonbrun (Partner) | ██ | $875 | ███████ |
| Michael Seplow (Partner) | █ | $815 | ███████ |
| Wilmer Harris (Partner) | █ | $815 | ██████ |
| Aidan McGlaze (Partner) | █ | $600 | ███████ |
| Paralegals | █ | $200 | ██████ |
| **Total Lodestar:** | ██████ | | ███████ |

The ███████ hours that Plaintiffs' counsel expended litigating this case are reasonable, given the complexity of the issues, the extraordinary number of separate proceedings, Defendants' vigorous defense in all of those proceedings, and the exceptional results Plaintiffs' counsel obtained, including prevailing on the

misclassification issue on summary judgment in the FLSA Collective Action.[11] While the three law firms who primarily litigated this case spent many hours conferring and strategizing, this was justified due to the intricacies and sheer size of the case, including the individual and collective action arbitrations. *See, e.g., Rutti v. Lojack Corp.*, No. SACV 06-350 DOC JCX, 2012 WL 3151077, at *9 (C.D. Cal. July 31, 2012) ("This Court does not wish to encourage shoddy worksmanship by strictly limiting the amount of time counsel are permitted to spend on discrete legal tasks… nor will it encourage attorneys to litigate in a way that may jeopardize the quality of their representation."); *Charlebois v. Angels Baseball LP*, No. SACV 10–0853 DOC (ANx), 2012 WL 2449849, at *11 (C.D. Cal. May 30, 2012) ("[T]he Court suspects that several of the complaints it dismisses every week fail to state a claim because attorneys spend too little time researching the grounds for their case; the Court sees no reason why it should punish the attorney that researches the law and facts before putting paper to pen."); *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1079 (N.D. Cal. 2010) ("Defendants would have the Court penalize [counsel] for litigating the case in a manner that afforded plaintiff quality representation, and the Court will not do so.").

The three firms made great efforts to ensure that work was not duplicated, including making sure that only one attorney was drafting or reviewing a document at a time, and that tasks like depositions were staffed with one attorney whenever possible. Getman Decl. at ¶ 20. More than one attorney worked on a task only when Plaintiffs' counsel felt it was warranted. Getman Decl. at ¶ 21. *See, e.g., Davis v. City & Cty. of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992), *opinion vacated in part on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993) ("We have previously recognized that broad-based class litigation often requires the participation of multiple attorneys."); *Rutti*, 2012 WL 3151077 at *10 (declining to reduce fees because both partners worked on same task); *Charlebois*, 993 F. Supp. 2d at 1125 ("[T]he Court declines to reduce the

---

[11] As explained above, Defendants disagree with this ruling and reserve all rights they may possess to challenge it should the Settlement not be approved for any reason.

hours simply because Class Counsel kept each other informed about the case and double-checked each other's work; indeed, many motions this Court denies would have benefitted from a second read and more strategizing by the attorneys involved."); *Nat'l Federation of the Blind v. Target Corp.,* No. C 06–01802 MHP, 2009 WL 2390261, at *5 (N.D. Cal. Aug. 3, 2009) ("[I]t is often more efficient for lawyers with complementary skill sets to cooperate in performing a task. The use of two attorneys for such a task is hardly extravagant.").

The hours expended are also reasonable given that, due to the class waiver in Defendants' arbitration agreements, Plaintiffs were required to litigate the claims of hundreds of plaintiffs individually. Getman Decl. at ¶ 22. Also, because this case was litigated for over five years before the parties reached the Settlement Agreement, much of the work had to be duplicated by necessity. As the Ninth Circuit has recognized:

> When a case goes on for many years, a lot of legal work product will grow stale; a competent lawyer won't rely entirely on last year's, or even last month's, research: Cases are decided; statutes are enacted; regulations are promulgated and amended. A lawyer also needs to get up to speed with the research previously performed. All this is duplication, of course, but it's *necessary* duplication; it is inherent in the process of litigating over time. Here, there was a previous appeal (of the district court's grant of summary judgment) which would have added to the delay and rendered much of the research stale. One certainly expects *some* degree of duplication as an inherent part of the process. There is no reason why the lawyer should perform this necessary work for free.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Finally, Plaintiffs' counsel were particularly motivated to litigate this case as efficiently as possible, given that they were by no means guaranteed a recovery in this exceptionally risky case:

> It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer

23

1
2
> to the winning lawyer's professional judgment as to how much time he
> was required to spend on the case; after all, he won, and might not have,
> had he been more of a slacker.

3   *Id.* The ███████ hours expended by Plaintiffs' counsel to bring about an

4   extraordinarily successful result for the thousands of class members here is reasonable.

5   *See Gooding*, 2018 WL 571881 at *7 ("[T]he Court cannot find that [the number of

6   hours expended] are unreasonable, especially when being used as a cross-check for the

7   percentage method of fee calculation.").

8      Plaintiffs' counsel's hourly rates are reasonable. In evaluating rates, courts take

9   into account the reasonable rates for the specific geographic area and type of practice.

10  *See Gooding*, 2018 WL 571881 at *7, *citing Chalmers v. City of Los Angeles*, 796 F.2d

11  1205, 1210–11 (9th Cir. 1986). Plaintiffs' counsel's rates are comparable to rates that

12  have been approved in this district in similar cases. *See, e.g., Bickley v. CenturyLink,*

13  *Inc.,* No. CV 15-1014-JGB (ASX), 2016 WL 9046911, at *5 (C.D. Cal. Nov. 29, 2016)

14  (approving attorney rates ranging from $650 to $750 per hour in 2016

15  misclassification/overtime case as "reasonable and in line with the prevailing rate in

16  this District."); *Gatdula v. CRST Int'l, Inc.*, No. CV 11-1285 VAP (OPx), 2015 WL

17  12697656, at *11 (C.D. Cal. Aug. 26, 2015) (approving attorney rates ranging from

18  $550 to $750 per hour in 2015 settlement of trucker minimum wage case); *Taylor v.*

19  *Shippers Transp. Express, Inc.*, No. CV1302092BROPLAX, 2015 WL 12658458, at

20  *17 (C.D. Cal. May 14, 2015) (approving paralegal and attorney rates ranging from

21  $185 to $750 per hour in 2015 settlement of trucker misclassification case). The rates

22  being sought by the three firms who primarily litigated this case are also in line with the

23  rates being sought by local counsel, who regularly litigate FLSA cases in this district.

24     All of this evidence, taken together, is more than sufficient to justify counsel's

25  hourly rates. *See United Steelworkers of Am. v. Phelps Dodge Co.*, 896 F.2d 403, 407

26  (9th Cir. 1990) ("Affidavits of the plaintiffs' attorney and other attorneys regarding

27  prevailing fees in the community, and rate determination in other cases, particularly

28  those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing

market rate."); *Bouman v. Block*, 940 F.2d 1211, 1235 (9th Cir. 1991) (the submission
of "declarations stating that the rate was the prevailing market rate in the relevant
community [was] ... sufficient to establish the appropriate rate for lodestar purposes");
*Nadarajah v. Holder*, 569 F.3d 906, 917 (9th Cir. 2009) (affirming award of attorneys'
fees where party had submitted a declaration describing her experience and attached
copies of fee awards in the same geographical area where counsel had comparable
experience). Accordingly, Plaintiffs' counsel's requested rates should be approved.

Given a lodestar amount of ████████████, the requested fee amount of
████████████ represents a ████ multiplier, an amount well within the range normally
approved by Court's in the 9th Circuit for highly successful settlements such as this
one. *See, e.g., Steiner v. Am. Broad. Co.*, 248 F. App'x 780 (9th Cir. 2007) (noting that
lodestar multiplier of 6.85 "still falls well within the range of multipliers that courts have
allowed"); *Vizcaino*, 290 F.3d at 1051, 1052 (Ninth Circuit affirmed fee award of 28% of
common fund which resulted in lodestar multiplier of 3.65 and noted in Appendix that of
24 cases identifying multiplier only seven awarded multipliers of less than 2.0, eight
awarded multipliers of between 2 and 3, and nine awarded multipliers greater than 3);
*Nitsch*, 2017 WL 2423161, at *10 (awarding multiplier of 2.0 as in line with the vast
majority of mega-fund cases); *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC,
2014 WL 6473804, at *11 (C.D. Cal. Nov. 18, 2014) (approving multiplier of 2.58);
*Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008)
(awarding multiplier of 5.2 and collecting cases with cross-check multipliers ranging
from 4.5 to 19.6); *Van Vranken,* 901 F. Supp. at 299 (awarding multiplier of 2.4). Given
the extensive risks borne by counsel,[12] the extraordinary challenges of prosecuting the

---

[12] Plaintiffs will not rehash the extensive description of the risks they took set forth in
the supplemental filing on fees (Doc. 243), however, we summarize those risks now.
Counsel taking this case understood that the trucking industry has been built on paying
drivers as independent contractors, and thus Plaintiffs' counsel believed that a major
industry player such as Central Refrigerated, would have to fight this case to the death,
or lose its competitive place in the industry. Counsel knew the case could take years,

case and the excellent results achieved, the relatively small lodestar multiplier in this case, is entirely appropriate, particularly as the lodestar represents less than ███ of the total settlement, substantially below the Ninth Circuit benchmark. *See Elliott v. Rolling Frito-Lay Sales, LP*, No. SACV 11-01730 DOC, 2014 WL 2761316, at *10 (C.D. Cal. June 12, 2014) (awarding 1.73 multiplier of calculated lodestar where there were no objections to hours performed or billing rates, and where lodestar represented only 18 percent of total settlement).

The lack of any objections to date from the class lends further support to this conclusion. *In re Omnivision Technologies, Inc.,* 559 F. Supp. 2d at 1048. Accordingly, Plaintiffs' counsel respectfully requests that attorney's fees of ███ be approved.

## CONCLUSION

For all of the foregoing reasons, the Settlement Agreement is fair, reasonable, and adequate and should receive final approval. The requested service awards of ███ to each of the three Named Plaintiffs, ███ to each of the 10 individuals who gave all-day depositions as representatives of the FLSA Collective Action, and

---

even decades to litigate and that they would not be paid until the end. Counsel took on this case knowing that the case stood a significant risk of being sent to arbitration, where the employer's role in selecting the arbitrator is significant. Counsel knew that the law of independent contractor misclassification involves a great many contradictory and vague standards – effectively, the case could have gone either way and counsel could easily have spent a decade expending a high percentage of their available billing hours litigating the case only to lose at the end. Counsel doubled down on these odds, filing approximately 350 individual cases against Defendants to make sure as many drivers as possible could receive what Plaintiffs contend is justice. To accomplish the results here, there were entire months where counsel were handling four to five 4-hour trucker depositions per day. And there were 20-25 full day depositions all in locations far from counsel's office, requiring extensive travel as well (mostly in Salt Lake City, but also L.A., Atlanta, and Birmingham, AL). Counsel knew in taking this case that over a decade of litigation, mergers, consolidations, insolvencies and bankruptcies could render even a favorable judgment difficult or impossible to collect.

to each of the 166 individuals who gave half-day depositions in the Individual arbitrations should be approved and deducted proportionately from Fund A and B. Plaintiffs' counsels' expenses in the amount of ▓▓▓▓▓▓ and the Settlement administration expenses should be approved and deducted from the two Funds. Finally, Plaintiffs' counsels' fee request in the amount of ▓▓▓▓▓▓ should be approved and deducted from the two funds.

Respectfully submitted this 26th day of February 2018.

GETMAN, SWEENEY & DUNN, PLLC

By: */s/ Dan Getman*
    Dan Getman (*pro hac vice*)
    dgetman@getmansweeney.com
    Lesley Tse (*pro hac vice*)
    260 Fair Street
    Kingston, NY 12401

    Benjamin Schonbrun, SBN 118323
    SCHONBRUN SEPLOW
    HARRIS & HOFFMAN LLP
    11543 W. Olympic Boulevard
    Los Angeles, CA 90064

    Susan Martin (*pro hac vice*)
    Jennifer Kroll (*pro hac vice*)
    MARTIN & BONNETT, PLLC
    4647 N. 32nd St., Suite 185
    Phoenix, AZ 85018

    Edward Tuddenham (*pro hac vice*)
    228 W. 137th St.
    New York, New York 10030

    Attorneys for Plaintiffs

Exhibit 1

THEODORE J. BOUTROUS JR., SBN 132099
    tboutrous@gibsondunn.com
SCOTT A. EDELMAN, SBN 116927
    sedleman@gibsondunn.com
JESSE A. CRIPPS, SBN 222285
    jcripps@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

Attorneys for Company Respondents (*additional counsel
for Company Respondents and Individual Respondents on
signature page*)

Dan Getman
Lesley Tse
Getman, Sweeney & Dunn, PLLC
260 Fair Street
Kingston, NY 12401
Telephone: (845) 255-9370
Fax: (845) 255-8649
dgetman@getmansweeney.com

Settlement Counsel (*additional counsel
listed in signature block*)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| GABRIEL CILLUFFO, KEVIN SHIRE, and BRYAN RATTERREE individually and on behalf of all other similarly situated persons,<br><br>    Claimants,<br><br>        v.<br><br>CENTRAL REFRIGERATED SERVICE, INC., CENTRAL LEASING, INC., JON ISAACSON and JERRY MOYES,<br><br>    Respondents. | CASE NO. ED CV 12-00886 VAP (OPx)<br><br>**STIPULATION OF SETTLEMENT AND RELEASE**<br><br>Action Filed: June 1, 2012<br>Judge: Honorable Virginia A. Phillips, Chief Judge |

## SETTLEMENT AGREEMENT AND RELEASE

This Stipulation of Settlement ("Settlement Agreement" or "Agreement") is made by and between Gabriel Cilluffo, Bryan Ratterree, and Kevin Shire (collectively, "Named Claimants"), on behalf of themselves, their agents, representatives, assigns, heirs, executors, beneficiaries, trustees and all drivers who are "Settlement Members" as defined below; and Respondents Central Refrigerated Service, Inc. (reorganized as Central Refrigerated, LLC), Central Leasing, Inc. (reorganized as Central Leasing, LLC), Swift Transportation Company, and Swift Transportation Company, LLC and their successors or assigns (collectively, the "Company Respondents"), and Jon Isaacson, and Jerry Moyes (collectively, the "Individual Respondents") (the Company Respondents and Individual Respondents are referred to collectively hereafter as "Respondents"). Respondents and the Settlement Members are referred to herein as the "Parties." Among other things, this Settlement Agreement is intended to fully, finally, and forever compromise, release, resolve, discharge, and settle the Released Claims subject to the terms and conditions set forth in this Settlement Agreement. This Settlement Agreement also provides for the settlement of the Settlement Members' pending claims against Respondents in the Lawsuit entitled *Cilluffo, et al. v. Central Refrigerated Service, Inc., et al.*, Case No. 12-00886-VAP (OPx), as well as the Collective Action and Individual Arbitrations pending before the American Arbitration Association ("AAA"), as described further herein. Upon final approval of this Settlement Agreement by the Court, and any related motions, the instant action shall be dismissed in its entirety with prejudice.

1.      **THE INSTANT ACTION**

        1.1      **Background and Procedural History**

        On June 1, 2012, Named Claimants Gabriel Cilluffo, Kevin Shire, and Bryan Ratterree filed a Collective & Class Action Complaint ("Complaint") against Respondents Central Refrigerated Service, Inc. ("Central Refrigerated"), Central Leasing, Inc. ("Central Leasing"), and the two Individual Respondents in *Cilluffo, et al. v. Central Refrigerated Service, Inc., et al.*, Case No. 12-00886-VAP (OPx), pending in the United States District Court for the Central District of California (the "Action"). Named Claimants alleged in their Complaint that the four Respondents mentioned in

the preceding sentence are liable for Central Refrigerated's misclassification of its owner-operator drivers as independent contractors and failed to pay them the legally required minimum wage for each hour worked per week in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206 *et seq.* Claimants also alleged that these Respondents violated the federal forced labor statutes, 18 U.S.C. §§ 1589, 1595. On July 16, 2012, the aforementioned Respondents moved to compel arbitration of the claims pursuant to an arbitration clause in the individual Contractor Agreements that Named Claimants had entered into with Central Refrigerated and the Equipment Leasing Agreements they had entered into with Central Leasing. The Court ordered the Parties to arbitration on September 24, 2012 and stayed the proceedings pending arbitration. The Court later clarified on November 8, 2012 that arbitration of the FLSA cause of action could proceed on a collective basis, but arbitration of Claimants' forced labor claims must occur individually.

On November 26, 2012, Named Claimants filed a demand for collective arbitration before the AAA, Case No. 77 160 00126 13 PLT. Arbitrator Patrick Irvine (the "Arbitrator") conditionally certified the FLSA Collective Action on March 10, 2014 and created a process for Claimants' counsel to provide notice of the Collective Action. Claimants' counsel distributed approximately 3,400 notices of the Collective Action to "all truckers who leased a truck from Central Leasing, Inc. to drive for Central Refrigerated Service, Inc. on and after June 1, 2009." Approximately 1,350 individuals from across the country filed opt-in forms and joined the Collective Action by the close of the opt-in period established by the Arbitrator (which originally was August 5, 2014 but was subsequently extended by the Arbitrator to February 27, 2015). On July 6, 2015, for purposes of satisfying a judgment, if any, Swift Transportation Company and Swift Transportation Co., LLC were added as Respondents in the Collective Action. The Arbitrator denied Respondents' Motion to Decertify the Conditionally-Certified Class on October 26, 2016. On the same day, Arbitrator Irvine also ruled that the Claimants in the Collective Action were employees under the FLSA and that

Respondents had misclassified Claimants as independent contractors.[1]  The Arbitrator also dismissed approximately 26 members of the Collective Action.

In addition, beginning in November 2012 and continuing for several years thereafter, 328 drivers represented by Claimants' counsel (not counting Walter Ellis, who was initially represented by Claimants' counsel but then chose to proceed with and litigated his case to conclusion *pro se*) submitted demands to the AAA for individual arbitration against Central Refrigerated, Central Leasing, and the two Individual Respondents for relief arising out of the same working relationship.[2]  The individual drivers ultimately asserted claims for "federal common law fraud," Utah common law fraud and negligent misrepresentation, "unconscionability," Utah common law unjust enrichment, as well as claims for violation of federal forced labor statutes and "state wage and hour law" (i.e., alleged violations of minimum wage and unlawful deduction statutes).

Respondents deny the allegations in both the Collective Action and Individual Arbitrations and have asserted a number of affirmative defenses and counterclaims, which they contend are meritorious.  Respondents expressly deny any and all charges of wrongdoing or liability arising out of any of the acts, omissions, facts, matters, transactions, or occurrences alleged, or that could have been alleged, in the Action, Collective Action, or Individual Arbitrations.  Notwithstanding Arbitrator Irvine's October 26, 2016 ruling in the Collective Action, Respondents contend that, in compliance with applicable state and federal laws, Central Refrigerated's former owner-operator drivers were properly classified as independent contractors.  Respondents further contend that even if they were misclassified, Central Refrigerated's former owner-operator drivers have been paid all wages due.  Because Respondents contend that they have complied with their obligations under federal and state laws, Respondents maintain that all of Claimants' claims are meritless.  Respondents also deny that

---

[1] Respondents dispute this conclusion and reserve their right to challenge it and any other aspects of the District Court and Arbitrator Irvine's rulings on appeal, including, but not limited to, the rulings that Claimants are employees and that a collective arbitration is permissible under the Parties' contracts and applicable law.

[2] Two drivers subsequently withdrew their arbitration demands, leaving 326 individual arbitrations pending before the AAA.

the asserted claims are appropriate for collective action treatment under 29 U.S.C. § 216(b) or class treatment under Federal Rule of Civil Procedure 23, except pursuant to a settlement, due to the intractable management problems and issues of individualized proof that would have been associated with a collective action and class-wide trial.

Notwithstanding Respondent's assertions, based on Arbitrator Irvine's ruling that the claimants in the collective action are employees and not independent contractors, a trial on the issue of damages and appropriate relief was scheduled to begin in Salt Lake City in May 2017.

### 1.2    Parties' Statements and Recognition of the Benefits of Settlement

Settlement Counsel has conducted an extensive investigation into the facts concerning the Action, Collective Action, and Individual Arbitrations as well as the Named Claimants and Settlement Members' claims (although not the facts relating to the individual claims of the Fund B Settlement Members), including through extensive formal discovery, informal disclosures between the Parties, and other investigations undertaken by Settlement Counsel.  Settlement Counsel has also undertaken a thorough assessment of the value of claims herein, including through the retention of an alleged expert who rendered several reports.  Settlement Counsel discounted the value of the claims based on their thorough understanding of the litigation risks and costs of delay with respect to the Named Claimants and various Settlement Members' claims.

The Parties engaged in extensive negotiations and exchange of data, documents, information, and mediation with mediator Hunter Hughes, which commenced on June 23, 2016 and which continued for several months of complex, difficult, arms-length negotiations by Mr. Hughes and ultimately between the Parties directly.  These efforts culminated in a Memorandum of Understanding, reached on April 28, 2017, three days before the damages trial for the Collective Action was to begin.

Respondents deny each and all of the claims in the Action, the Collective Action, and the Individual Arbitrations.  Nevertheless, Respondents have concluded that further conduct of the Action, Collective Action, and Individual Arbitrations would be protracted and expensive. Respondents, therefore, have determined that it is desirable and beneficial that the Action, Collective

Action, and Individual Arbitrations be settled in the manner and upon the terms and conditions set forth in the Settlement Agreement.  Neither this Settlement Agreement, nor any document referred to or contemplated herein, nor any action taken to carry out this Settlement Agreement, is, may be construed as, or may be used as an admission, concession, or indication by or against Respondents of any fault, wrongdoing or liability whatsoever.

**2.      TERMS OF THE SETTLEMENT AGREEMENT**

IT IS HEREBY STIPULATED AND AGREED by and among Named Claimants (for themselves and the Settlement Members) and Respondents, by and through their respective attorneys, that, subject to final approval by the Court, the Lawsuit, Collective Action, and Individual Arbitrations will be finally and fully compromised, released, resolved, discharged, and settled, and will be dismissed in their entirety with prejudice, subject to the terms and conditions of this Settlement Agreement, as follows:

**2.1      Definitions**

As used in this Settlement Agreement, the following terms have the meanings specified below:

A.      "Administrative Costs" means the estimated reasonable cost by the Settlement Administrator, including but not limited to costs for providing Notice, various efforts to locate Drivers Eligible To Participate, administering payment of claims on behalf of the Settlement Members, and administering payments to Named Claimants and Settlement Counsel by the Settlement Administrator.

B.      "Attorneys' Fees and Costs" shall have the meaning set forth in Section 2.3G of this Settlement Agreement.

C.      "Claim Form" means the form as described in Section 2.10 that must be timely and validly completed, signed and returned by Potential Fund B Claimants to confirm that they wish to become Participating Fund B Claimants and receive a payment under the terms of this Settlement Agreement, in the form attached hereto as **Exhibit C**.

D.      "Claimants" means collectively Named Claimants in the Collective Action and

Individual Arbitrations and those individuals that they sought to represent, including, but not necessarily limited to, all individuals who opted in to the Collective Action, as well as individuals who file a valid Claim Form in the form attached hereto as **Exhibit C**.

        E.      "Collective Action" means the FLSA collective arbitration between the Parties pending before Arbitrator Patrick Irvine of the American Arbitration Association ("AAA"), Case No. 77 160 00126 13 PLT.

        F.      "Company Respondents" means, collectively, Central Refrigerated Service, Inc. (reorganized as Central Refrigerated, LLC), Central Leasing, Inc. (reorganized as Central Leasing, LLC), Swift Transportation Company, Swift Transportation Company, LLC, and their successors or assigns.

        G.      "Complaint" means the operative complaint in this Lawsuit.

        H.      "Consent to Join" means any "Consent to Sue" or "Consent to Join Lawsuit" form filed by Claimants with the Court in the Action and/or submitted by Claimants to the American Arbitration Association ("AAA") and/or Arbitrator Patrick Irvine in connection with the Collective Action pursuant to 29 U.S.C. § 216(b) or any such form filed by Potential Fund B Claimants as provided herein.

        I.      "Court" shall mean the United States District Court for the Central District of California.

        J.      "Drivers Eligible To Participate" shall mean Fund A Claimants and Potential Fund B Claimants, as those terms are defined herein.

        K.      "Employee Taxes" means the employee portion of all applicable payroll taxes owed by the employee or more specifically those payroll taxes for which Settlement Members bear responsibility in connection with the portion of their Individual Settlement Payments that shall be treated as wages and which shall be withheld from such Individual Settlement Payments and remitted to the appropriate taxing agencies. The Parties agree that ▮▮▮▮▮▮▮▮▮▮ of each Individual Settlement Payment shall be treated as wages for the purposes of calculating appropriate Employee Taxes due in connection with the Settlement Payment.

L.     "Employer Taxes" means the employer's share of FICA, FUTA, and any payroll taxes due on an Individual Settlement Payment or more specifically those payroll taxes for which the Company Respondents bear responsibility in connection with the portion of the Individual Settlement Payments that shall be treated as wages, and which shall be funded by the Company Respondents in addition to their obligation to fund the Gross Settlement Amount.  "Employer Taxes" shall not be considered part of the Gross Settlement Amount and shall not be considered in calculating the ▓▓▓▓▓▓▓ amount described in Section 2.4B.  The Parties agree that ▓▓▓▓▓▓▓ ▓▓▓▓ of each Individual Settlement Payment shall be treated as wages for the purposes of calculating appropriate Employer Taxes due in connection with the Settlement Payment.  The Parties further agree that the Settlement Administrator shall be authorized to calculate and submit Employer Taxes to the appropriate state and/or federal taxing authorities on Company Respondents' behalf, provided that Company Respondents provide the appropriate tax funds to the Settlement Administrator to satisfy their obligation to pay Employer Taxes.  Company Respondents will bear the cost of the Settlement Administrator doing so, if any, outside the Settlement Fund.

M.     "Estate Representatives" shall mean the court appointed representative of any deceased Settlement Member or, in the absence of a court appointed representative, the surviving spouse, or, in the absence of a surviving spouse, the surviving children, or in the absence of a surviving spouse or children, the surviving parents of the Settlement Member.

N.     "Fund A Claimant" refers to (i) each Claimant who previously timely filed or submitted a Consent to Join the Collective Action by February 27, 2015 (or who otherwise filed a Consent to Sue in the case on or before February 27, 2015), and who is currently represented by Settlement Counsel; and (ii) all of the Claimants in the Individual Arbitrations who are currently represented by Settlement Counsel (i.e., all Individual Arbitrations filed with the AAA except for the case filed by Walter Ellis).  A complete list of Fund A Claimants is attached hereto as **Exhibit E.**

O.     "Final Fairness Hearing" means the hearing to be conducted by the U.S. District Court for the Central District of California, Hon. Virginia A. Phillips as agreed by the Parties, or any other court or judge taking jurisdiction of this matter, to determine whether to finally approve

the settlement.

P.      "General Release" means a release of all claims against Respondents and other Released Parties, except as otherwise stated therein, in the form attached hereto as **Exhibit A**, which shall be executed by each Named Claimant concurrently with the final approval of this Settlement Agreement by the Court.

Q.      "Gross Settlement Amount" or "Total Settlement Fund" refers to ████████ ███████████████, which is the total and maximum amount Company Respondents will be required to pay under this Settlement (excluding Employer Taxes), subject to Respondents' rights to void this Settlement Agreement *ab initio* as described in Section 2.4 herein.  The Gross Settlement Amount will be distributed in accordance with Sections 2.3 and 2.5.

R.      "Individual Arbitrations" shall mean all of the approximately 326 individual-claimant arbitration proceedings currently pending before the AAA that are identified in **Exhibit D**.

S.      "Individual Respondents" means, collectively, Jon Isaacson and Jerry Moyes.

T.      "Individual Settlement Payments" means the amount of the Net Settlement Fund to be paid to individual Participating Settlement Members pursuant to the terms and conditions of this Agreement.

U.      "Lawsuit" or "Action" means *Cilluffo, et al. v. Central Refrigerated Service, Inc., et al.*, Central District of California Case No. 12-00886-VAP (OPx), pending in the United States District Court for the Central District of California, and the corresponding Collective Action and Individual Arbitrations, as those terms are defined herein.

V.      "Motion for Preliminary Approval" refers to the motion for preliminary approval of this settlement and its supporting papers.

W.      "Named Claimants" means Gabriel Cilluffo, Kevin Shire, and Bryan Ratterree.

X.      "Net Settlement Fund" shall be the Gross Settlement Amount less all Attorneys' Fees and Costs, Administrative Costs, and Service Awards, as approved by the Court. The Net Settlement Fund shall be available for the Settlement Members, subject to the Parties' right to void the settlement.

9

Y. "Notice Period" refers to the time period of ninety (90) days from the first mailing date postmarked on the first Notice of Settlement mailed by the Settlement Administrator.

Z. "Notices of Settlement" refers to the official notices of settlement of the Lawsuit, materially in the forms attached hereto as **Exhibit B-1 and B-2**.

AA. "Opt-Out Date" refers to the expiration of the Notice Period, by which time Fund A Claimants who do not wish to be part of the settlement and who are permitted to opt out of this settlement must have timely and properly opted out of the settlement as described herein.

BB. "Opt-In Date" refers to the expiration of the Notice Period, by which time Potential Fund B Claimants must have timely and properly opted in to the settlement as described herein.

CC. "Order Granting Preliminary Approval" refers to the Court order or statement of decision granting preliminary approval to this Settlement Agreement.

DD. "Order of Final Approval" and "Final Approval" means an order, that finally and unconditionally grants final approval of the Settlement Members for settlement purposes only, authorizes payments to Participating Settlement Members, Named Claimants, and Settlement Counsel as provided in this Agreement, and fully and finally extinguishes the Released Claims of the Settlement Members as set forth herein, which the Parties shall submit in a mutually agreed-upon form.

EE. "Participating Fund A Claimants" shall mean Fund A Claimants who do not timely and properly opt out of the settlement, in the manner described by and in compliance with the terms of this Agreement.

FF. "Participating Fund B Claimants" shall mean Potential Fund B Claimants who opt in to the settlement by submitting a timely and valid Claim Form, in the manner described by and in compliance with the terms of this Agreement.

GG. "Participating Settlement Members" refers collectively to Participating Fund A Claimants and Participating Fund B Claimants, as those terms are defined herein.

HH. "Potential Fund B Claimants" refers to the ███ drivers listed on **Exhibit G**,

10

"who leased a truck from Central Leasing, Inc. to drive for Central Refrigerated Service, Inc. at any point on or after June 1, 2009" and who did not previously opt in to the Collective Action or file one of the Individual Arbitrations.[3]

II.     "Released Claims" means the claims released pursuant to Sections 2.8 and 2.16 of this Settlement Agreement.

JJ.     "Released Parties" means Respondents, including all of Respondents' past, present, and future parents, affiliates, subsidiaries, divisions, predecessors, successors, partners, joint venturers, affiliated organizations, shareholders, insurers, reinsurers and assigns, and each of their past, present and future officers, directors, trustees, estates, heirs, agents, employees, attorneys, contractors, representatives, divisions, units, and branches, and any other persons or entities acting on behalf of or in concert with any of the foregoing persons or entities.

KK.     "Respondents" means Company Respondents and Individual Respondents collectively.

LL.     "Service Award" means a Court-approved sum to be paid to the Named Claimants and all other Claimants who were discovery representatives and/or deposed in the Collective Action or Individual Arbitrations in accordance with Section 2.3H.

MM.     "Settlement Administrator" means the firm of Settlement Services, Inc., which is the entity that has been selected by the Parties to provide notice of this proposed collective action settlement to the Drivers Eligible To Participate and to perform other related functions to administer the settlement contemplated by this Settlement Agreement as described herein.

---

[3] The Parties understand that the number of drivers who should be considered Potential Fund B Claimants according to this definition may change due to discovery of additional qualifying drivers in Company Respondents' data.  At this time, Respondents warrant in good faith that they are not aware of any drivers other than the ▮▮▮▮ identified in **Exhibit G**.  If additional qualifying drivers are later identified, they shall be included in the definition of "Potential Fund B Claimants" notwithstanding the fact that they are not included in the list of ▮▮▮ drivers identified in **Exhibit G**, and such inclusion shall not be considered a material change in the terms of the settlement, provided the total number of qualifying drivers does not exceed ▮▮▮.  Nothing herein or in related settlement documents, disclosures, and notices shall prevent the inclusion of additional drivers as provided in this footnote.

NN.   "Settlement Counsel" means the attorneys representing the Participating Settlement Members.

OO.   "Settlement Effective Date" means the date that the Court's approval of the settlement becomes final and is no longer subject to appeal.  In the event the Court's approval is appealed, the Settlement Effective Date shall be the date the settlement is finally approved and all appellate rights have been exhausted.

PP.   "Settlement Member" means each individual who is part of the group of Settlement Members as defined below.

QQ.   "Settlement Members" shall refer to (i) Fund A Claimants who do not timely and properly opt out as provided herein and (ii) Potential Fund B Claimants who timely and validly opt in to the settlement as provided herein.

### 2.2   Settlement of the Lawsuit, Collective Action, and Individual Arbitrations

As of the Settlement Effective Date and subject to (i) Settlement Counsel's right to void the Settlement Agreement in the event of non-payment of any amounts due hereunder and (ii) Respondents' rights to void this Settlement Agreement *ab initio* as described in Section 2.4, it is agreed by and among the Named Claimants, the Settlement Members, and Respondents that the Lawsuit, including any and all allegations in the Complaint, the Collective Action, and the Individual Arbitrations as well as any and all claims, damages, remedies sought or causes of action alleged in the Complaint, the Collective Action, and the Individual Arbitrations or that could have been alleged in the Complaint, the Collective Action, and the Individual Arbitrations based on the pleaded allegations, shall be settled and compromised as between the Named Claimants, the Settlement Members, and Respondents, subject to the terms and conditions set forth in this Settlement Agreement and the approval of the Court, including through any Court-appointed referee or agent of the Court or other judicial entity with jurisdiction over this matter.

### 2.3   Claims and Gross Settlement Amount Distribution

A.   Total Settlement Fund.  In consideration for settlement of the Action, the Collective Action, and the Individual Arbitrations, as well as the release of all Released Claims of the

Settlement Members, Company Respondents agree to fund the settlement subject to the following conditions:

(i)  Gross Settlement Amount.  

Gross Settlement Amount to be established for complete resolution of the Action, the Collective Action and the Individual Arbitrations.  The settlement will be funded within five (5) business days of the Settlement Effective Date, by Swift Transportation Company or one of the other Company Respondents, or their successors subject to the terms set forth herein.  Under no circumstances shall the Settlement Members or Settlement Counsel ever be able to collect any monies from the Individual Respondents under this Settlement Agreement.[4]  The Gross Settlement Amount is the maximum total amount Company Respondents are required to pay for any and all purposes under this Settlement Agreement, except Employer Taxes as defined above.  The Gross Settlement Amount will consist of two funds:

(ii)  ████████████████████████ Non-Reversionary Fund ("Fund A").  Fund A covers the claims of Named Claimants and all other individuals who opted in to the Collective Action who are currently represented by Settlement Counsel (whether dismissed or not from the Collective Action), as well as all other persons who filed Individual Arbitrations who are currently represented by Settlement Counsel.  Walter Ellis, who previously discharged counsel and subsequently lost his individual arbitration *pro se*, is not a member of either Fund A or Fund B.  The Parties believe that there are approximately 1,356 individuals who fall within Fund A.

(iii)  ████████████████████ Reversionary Fund ("Fund B").  Fund B is a maximum amount that covers no more than ████ Potential Fund B Claimants.  No

---

[4]  Neither the Claimants nor any Settlement Members or Settlement Counsel shall seek payment from the Individual Respondents under this Settlement Agreement.  In the event this Agreement does not become effective as defined in the definition of Settlement Effective Date, or if Company Respondents shall fail to make all payments that become due in accordance with Section 2.14 below, nothing herein shall extinguish Claimants' ability to allege in this or any future litigation that the Company Respondents and Individual Respondents are jointly and severally liable outside of the terms of this Settlement Agreement.  Respondents similarly retain their ability to contest any such assertion by Claimants in any future litigation.

person eligible to participate in Fund A shall participate in Fund B.  In the event any Potential Fund B Claimants do not submit an opt-in form to participate in the settlement, their Individual Settlement Payment shall revert to Respondent Swift Transportation Company or other payor.  There are and can be no more than ███ Potential Fund B Claimants.

      B.   <u>Settlement Structure</u>. The settlement shall be structured as described herein:

      (i)   <u>Fund A</u>.  Fund A funds, less the proportionate share of approved Settlement Counsel's Attorneys' Fees and Costs, Administrative Costs, and Service Awards, will be apportioned among all Participating Fund A Claimants as set forth in **Exhibit F** hereto.[5]  Individual Settlement Payments to Participating Fund A Claimants, shall be made within ten (10) days following the Settlement Effective Date, or, if an individual payment is not possible at that time, and the Settlement Administrator has so informed the Parties' counsel, then the Settlement Administrator shall make such payments as soon as possible.  The Settlement Administrator shall calculate and withhold from the Individual Settlement Payment any Employee Taxes due as provided in Sections 2.5 and 2.7.  Participating Fund A Claimants, or their Estate Representatives if said individuals are deceased, shall have one year from the date that distribution of settlement funds is sent to such individual to cash checks issued in connection with this settlement or by other reasonable alternate means established by the Settlement Administrator and approved by Settlement Counsel.  Funds remaining unclaimed one year after distribution from Fund A commences, and after good faith efforts have been made by the Settlement Administrator by phone, mail, and/or email, as available based on the currently available information provided by Respondents provided in connection with this settlement or learned by the Settlement Administrator in the course of settlement administration, to

---

[5] Respondents take no position on the issue of whether the allocation formula as set forth in **Exhibit F** is fair, reasonable, adequate, or accurate.  By not taking a position on the allocation for the purposes of this settlement, Respondents in no way concede that use of the allocation formula is an accurate reflection of any alleged damages in the Collective Action, Individual Arbitrations, or Lawsuit, or that such a formula would be proper or admissible at trial in the Collective Action, Individual Arbitrations, or Lawsuit.

contact those Participating Fund A Claimants who did not claim their funds, shall be paid to the approved Cy Pres recipient, [TBD].

(ii)     Fund B.  Fund B funds, less the proportionate share of approved Settlement Counsel's Attorneys' Fees and Costs, Administrative Costs, and Service Awards, shall be allocated on a pro rata basis based on the number of months each Potential Fund B Claimant provided services under a Contractor Agreement originally entered into with Central Refrigerated Service, Inc. and an Equipment Leasing Agreement ("Lease") originally entered into with Central Leasing, Inc. during the period from June 1, 2009 to the date of this Settlement Agreement including any period after which Central Refrigerated assigned any such Contractor Agreement to Swift Transportation Company of Arizona, LLC ("Swift AZ") and Central Leasing assigned any such Lease to Interstate Equipment Leasing ("IEL"); provided, however, that each Participating Fund B Claimant shall be entitled to a minimum payment of ███████████████████.  Individual Settlement Payments to Participating Fund B Claimants shall be made within ten (10) days of the Settlement Effective Date.  If an Individual Settlement Payment is not possible on that date, and the Settlement Administrator has so informed the Parties' counsel, then the Settlement Administrator shall make such payments as soon as possible.  The Settlement Administrator shall calculate and withhold from the payment any Employee Taxes due as provided in Sections 2.5 and 2.7.  Participating Fund B Claimants, or their Estate Representatives if said drivers are deceased, shall have one year, from the date that distribution commences to cash checks issued in connection with this settlement or by other reasonable alternate means established by the Settlement Administrator and approved by Settlement Counsel.  Unclaimed Individual Settlement Payments shall revert to the Company Respondents as provided in Section 2.3A(iii).

C.     Claim Form Contents.  The Claim Form shall be in the form attached hereto as **Exhibit C**.  Such consents will be deemed immediately cancelled *ab initio*, as if they were never filed, in the event that the Settlement Agreement is voided or not finally approved.

D.     Submission of Claim Form.  In order to become a Participating Settlement Member and receive a payment under this Settlement Agreement, Potential Fund B Claimants, or, if

deceased, their Estate Representative, must opt in and must submit a complete and executed Claim Form to the Settlement Administrator, which must be postmarked before the expiration of the Notice Period, or otherwise accepted by all Parties, provided that nothing herein shall be construed as authority requiring acceptance of an untimely Claim Form.  All original Claim Forms shall be sent directly to the Settlement Administrator at the address indicated on the Claim Form.  To be valid, a Claim Form must be completed in full including, but not limited to, the portion requesting the last four digits of the Settlement Member's Social Security Number, and signed without any deletion or amendment of any other portion of the Claim Form other than to indicate that the Potential Fund B Claimant is deceased and to supply information regarding the Estate Representative.  The Settlement Administrator will notify any Potential Fund B Claimant if it receives a Claim Form from him or her that is incomplete, has been altered, is inconsistent internally or with any other submission(s) to the Settlement Administrator, is not timely and/or otherwise valid and afford the Potential Fund B Claimant an opportunity to resubmit the form or reconcile any inconsistencies by the Opt-in Date. Any disputes regarding the timeliness, validity or effectiveness of a Claim Form shall be decided by the Court consistent with this Settlement Agreement, with input from the Parties if appropriate.

      E.    <u>Filing of Consents to Join with the AAA</u>.  Within seven (7) days after the expiration of the Notice Period, the Settlement Administrator shall make copies of the originals of the Consent to Join portion of the Claim Forms and shall transmit a set of copies of each to Settlement Counsel and to Respondents' counsel.  The Settlement Administrator will file the original copies of all timely Consents to Join that it receives that are postmarked by the Opt-In Date with the AAA within ten (10) business days after the Opt-In Date. The Settlement Administrator shall separately transmit a set of copies of each untimely, incomplete, or inconsistent Consent to Join portion of the Claim Forms to Settlement Counsel and to Respondents.  Should the Settlement Agreement not receive Final Approval, all consents from Fund B Settlement Members will be deemed immediately cancelled *ab initio*, as if they were never executed or filed.

      F.    <u>Attorneys' Fees and Costs</u>.  The Parties and Settlement Counsel specifically include payment of Settlement Counsel's Attorneys' Fees and Costs as provided by the FLSA among

the consideration received by the Settlement Members for settling this matter and in exchange for the release of all Released Claims by the Settlement Members as set forth in Section 2.8 of this Agreement and General Release of all claims by the Named Claimants, unless otherwise specified in the General Release, as set forth as **Exhibit A**.  Subject to Court approval, Settlement Counsel's cost and expenses borne to date, or reasonably expected to be borne by Settlement Counsel, including costs related to settlement administration, shall be proportionally deducted from Fund A and Fund B and paid to Settlement Counsel.  Settlement Counsel will file a motion with the Court for payment of an amount not to exceed ██████████████████ of the Gross Settlement Amount as attorneys' fees to be proportionately deducted from Fund A and Fund B, provided, however, that Settlement Counsel will agree to reduce their attorneys' fees on Fund B disbursements to a sum from ███████ ████████ to a sum no less than ███████████████████ if it would serve to reduce the total payments by Company Respondents from an amount above to an amount below the ████████ ███████████████████████████████████████ threshold set forth in Section 2.4.

Subject to approval by the Court, that amount shall be the only compensation paid by Company Respondents for attorneys' fees associated with the prosecution and administration of this Action.  Settlement Counsel, Named Claimants, and Participating Settlement Members will not apply to the Court for any payment of attorneys' fees or costs that are in addition to the foregoing.  The Parties agree that, over and above the Court-approved Attorneys' Fees and Costs awarded in this Lawsuit, all Parties shall bear their own fees and costs, including, but not limited to, those relative to the investigation, filing, prosecution or settlement of the Lawsuit, the Collective Action, and the Individual Arbitrations; the negotiation, execution, or implementation of this Settlement Agreement; and/or the process of obtaining, administering or challenging a Certification Order and/or Final Approval.  Neither Named Claimants, nor any other Settlement Member, shall seek payment of attorneys' fees or reimbursement of costs or expenses from Company Respondents other than as expressly set forth in this Settlement Agreement.  Under no circumstances under this settlement, shall the Named Claimants, Settlement Members or Settlement Counsel ever be able to collect any monies from the Individual Respondents under this Settlement Agreement.  In the event that the Court

denies, modifies or reduces Settlement Counsel's request for Attorneys' Fees and Costs, Named Claimants, Settlement Counsel and the Settlement Members may not seek modification or cancellation of this Agreement and will not seek, request or demand an increase in the Gross Settlement Amount. If Settlement Counsel appeal the Court's ruling on their application for Attorneys' Fees and Costs, the ruling of the appellate court (regardless of its substance) shall not constitute a material alteration of a term of this Settlement Agreement. All claims for Attorneys' Fees and Costs or expenses that Settlement Counsel, Named Claimants, and the Settlement Members may possess against Respondents are compromised and resolved in this Settlement Agreement and shall not be affected by any appeal that Settlement Counsel may file. Nothing herein shall prevent Settlement Counsel, Named Claimants, and the Settlement Members from seeking fees and costs, if any, from any objector, intervenor or appellant who challenges this Settlement Agreement or Settlement Counsel's Attorneys' Fees and Costs on appeal.

      G.    <u>Service Awards</u>.

      (i)    In addition to the claim amount determined to be due and owing to the Named Claimants and Participating Settlement Members, Settlement Counsel and Named Claimants may petition the Court for Service Awards for the Named Claimants and all other Claimants who were discovery representatives and/or deposed in the Collective Action or Individual Arbitrations in accordance with Section 2.3H. Any such petition shall be filed concurrently with Settlement Counsel's application for Attorneys' Fees and Costs. Any Service Award(s) approved by the Court in conjunction with the settlement shall be paid proportionately from Fund A and Fund B. Service Awards to Named Claimants and all other Claimants who were discovery representatives and/or deposed in the Collective Action or Individual Arbitrations in accordance with Section 2.3H shall be in addition to their respective payments that they would receive as Settlement Members. Service Awards shall be distributed by the Settlement Administrator in accordance with Section 2.14 of this Agreement and shall be reported by the Settlement Administrator to state and federal taxing authorities as non-wage income on IRS Form 1099.

      (ii)    The Named Claimants may request Service Awards for themselves if

they execute this Settlement Agreement and/or other Participating Settlement Members as provided below:

> (1)   Subject to Court approval, for each Named Claimant in the Collective Action for their service to Claimants, including the creation of Funds A and B herein, Service Awards not to exceed ███████████████████.

> (2)   Subject to Court approval, for each Claimant who sat for deposition in the Collective Action, a Service Award not to exceed ██████████████████.

> (3)   Subject to Court approval, for each Claimant who sat for deposition in the Individual Arbitrations, a Service Award not to exceed ██████████████████.

(iii)   Service Awards shall be deducted proportionally from Fund A and Fund B.

(iv)   In the event that the Court denies, modifies, or reduces any request for a Service Award, the Settlement Members may not seek modification or cancellation of this Agreement and will not seek, request, or demand an increase in the Settlement Amount.  Any reduction of Service Award amounts or Attorneys' Fees and Costs awarded by the Court shall be allocated proportionally to Fund A and Fund B for distribution to Participating Settlement Members in accordance with this Settlement Agreement.

(v)   Any Participating Settlement Member receiving a Service Award will be solely responsible for correctly characterizing their Service Award for tax purposes and is solely responsible for paying any and all taxes owing on said amount(s).  Each Participating Settlement Member receiving a Service Award agrees to assume responsibility of remitting to the Internal Revenue Service and any other relevant taxing authority the amounts required by law, if any, to be withheld by Respondents or the Settlement Administrator from their Service Award.  Each Participating Settlement Member receiving a Service Award also agrees not to hold Settlement

Counsel or Respondents responsible for any taxes, interests, penalties, and/or costs associated with any taxes the Participating Settlement Member owes in connection with his or her Service Award(s).

(vi)     Named Claimants shall receive payment of Service Awards and any other payments under this Settlement Agreement only after the Settlement Effective Date and only if they have executed and delivered to Respondents this Settlement Agreement and a separate General Release of all known and unknown claims against Respondents in accordance with Section 2.8.  As consideration for the Service Payment under Section 2.3H of this Agreement, and subject to the Court approving this Agreement, Named Claimants will:

(1)     Execute a General Release as to any and all claims they may have against Respondents and all other Released Parties up through the date they sign the General Release, unless otherwise specified in the General Release, whether the claim is known or unknown, in the form attached hereto as **Exhibit A** and in accordance with Section 2.8B.

(2)     Limit communications pursuant to Section 2.18.

**2.4     Right to Void Settlement Agreement**

The Parties will have the right to consider the Settlement Agreement void *ab initio* under the following circumstances only and shall communicate the exercise of such right through electronic mail notice to opposing counsel:

A.     If Company Respondents shall fail to make any of the payments referenced in Section 2.14 in the amount or at the time described herein, the Settlement Members shall have the sole and exclusive right to consider the Agreement void *ab initio* (which they shall do no later than twenty-one (21) calendar days after said failure) or to move to enforce.

B.     If the total of Fund A and Fund B payments to be made hereunder (including claims paid to Participating Settlement Members, Employee Taxes, Attorneys' Fees and Costs, Administrative Costs, and Service Awards) exceed ████████████████████████████ ████████████████████, Company Respondents shall have the sole and exclusive right to void this

Agreement *ab initio* (which they shall do by email notice to Settlement Counsel and filed with the Court not later than fifteen (15) calendar days after the Fund B Opt-In Date).  Under no circumstances will Company Respondents ever be obligated to make payments from Fund A and Fund B in an amount that exceeds ███████████████████████████████ ████████████, unless the deadline to void this Settlement Agreement under this paragraph has passed, and Respondents have not provided the requisite notice and the settlement thereafter becomes completely final and non-appealable.

      C.      If the number of individuals who have opted out from Fund A ███████████ ████████████████████████████████████ Respondents reserve the right to void the Settlement Agreement in its entirety *ab initio* (which they shall do by email notice to Settlement Counsel and filed with the Court not later than fifteen (15) calendar days after the Fund A Opt-Out Date).

      D.      The Parties stipulate that the tolling order in *Cilluffo, et al. v. Central Refrigerated Service, Inc., et al.*, Central District of California Case No. 12-00886-VAP (OPx) (i.e., the Action or Lawsuit) shall terminate on the Settlement Effective Date, without prejudice to Respondents' rights to argue after the Settlement Effective Date that tolling has ended sooner than the Settlement Effective Date.  Termination of the tolling order by the Court is a material term of this Agreement and the Agreement shall not be effective unless the tolling order is lifted on the Settlement Effective Date.  Put another way, in the event the tolling of the FLSA claims is not lifted by the Court on the Settlement Effective Date, this Settlement shall be deemed void *ab initio*.  Respondents shall not seek clarification or dismissal of the tolling order prior to the Settlement Effective Date or prior to the settlement being rejected.

      E.      In the event the Settlement Agreement is voided for any of the reasons stated in Section 2.4 or otherwise provided herein, or in the event the Settlement Agreement is not approved, Company Respondents shall be responsible for payment to the Settlement Administrator for all costs of administering the Settlement Agreement incurred by the Settlement Administrator.

F.      In the event the Settlement Agreement is voided for any reason or is not approved, or if funds are not paid as set forth herein, the following will occur:  (i) the stay of the arbitrations in effect shall terminate; (ii) all opt-in forms received as a result of this settlement from a Potential Fund B Claimant shall be immediately deemed void *ab initio* and the Settlement Administrator shall send notice of same to all opt-ins; (iii) the Action shall also be restored to the docket; (iv) any orders or judgments related to the settlement shall be deemed vacated; and (v) the Action shall continue in effect as if this Settlement Agreement had never been reached.

### 2.5     Appointment and Duties of Settlement Administrator

A.      Subject to the approval of the Court, the Parties have agreed to the appointment of a professional class action claims administration firm, Settlement Services, Inc., as the Settlement Administrator for the purpose of administering the settlement and claims process, including but not limited to (i) distributing notice by email and by First Class Mail to last known addresses on file with Company Respondents, or such later addresses supplied by the Driver Eligible To Participate or Settlement Member, or as determined by the USPS change of address registry; (ii) performing a skip trace as necessary for returns; (iii) in the event the Settlement Agreement is voided or the Settlement Effective Date does not occur, sending a notice to the Participating Settlement Members informing them of the voiding of the Settlement Agreement; (iv) establishing a Qualified Settlement Fund; (v) issuing 1099s (checking Box 3) and W-2s to Participating Settlement Members (including Estate Representatives), and calculating any taxes due on a one-time annual payment basis, based on W-4 forms to be provided by Participating Settlement Members, or based on the single no dependents rate if a W-4 is not provided; (vi) contributing unclaimed Fund A funds to the Cy Pres recipient to be mutually agreed by the Parties, or in the absence of agreement, by the Court; (vii) attempting to contact Participating Fund B Claimants (through all available contacts within the possession of the Settlement Administrator such as telephone, letter, email) who have uncashed checks after one year after distribution; and (viii) reverting unclaimed Fund B funds to Company Respondents.

B.     The Administrative Costs shall be deducted proportionally from Fund A and Fund B.  Although the Administrative Costs shall be deducted from the Gross Settlement Amount, Company Respondents shall advance the Administrative Costs as necessary.  Settlement Counsel shall approve the Administrative Costs before such costs are incurred.  In the event the Settlement Agreement is voided pursuant to Section 2.4 or as otherwise provided herein, or if for any reason the settlement is not granted final approval, Company Respondents shall remain liable for payment of all Administrative Costs incurred.  The settlement shall proceed regardless of the amount of Administrative Costs actually approved by the Court.  In the event that the Settlement Agreement is voided or for any reason is not granted final approval, neither Claimants nor Settlement Counsel shall have any liability for the Administrative Costs advanced by Company Respondents to the Settlement Administrator.

C.     The duties of the Settlement Administrator shall include without limitation:

(i)     compiling the class list from information provided by the Parties;

(ii)    handling all mailings to the Drivers Eligible To Participate;

(iii)   tracing undeliverable mailings;

(iv)    recording and tracking responses to the mailing to the Drivers Eligible To Participate (including recording the identity of any Potential Fund B Claimant who submits a Claim Form or any Driver Eligible To Participate who submits a request for exclusion);

(v)     issuing and mailing Individual Settlement Payments and making electronic transfers to Participating Members who have no permanent address or live in a truck;

(vi)    reporting payment of the Individual Settlement Payments to all required taxing and other authorities;

(vii)   taking appropriate withholding from the Individual Settlement Payments;

(viii)  remitting all Employee Taxes and Employer Taxes and other required payments to the proper authorities;

(ix)     establishing a Qualified Settlement Fund ("QSF") pursuant to Section 468B(g) of the Internal Revenue Code, and regulations promulgated thereunder for the purpose of administering this settlement;

(x)     transmitting all Consent to Sue forms and objections from Participating Settlement Members, and exclusions to Settlement Counsel and all counsel for Respondents on a weekly basis;

(xi)     sharing updates and information equally with both Parties; and

(xii)     other related tasks as mutually agreed to by the Parties or ordered by the Court.

D.     The Settlement Administrator shall keep Respondents' counsel and Settlement Counsel timely apprised of the performance of all Settlement Administrator responsibilities on weekly emails or more frequently if requested by one or more of the Parties and shall forthwith scan and email to Settlement Counsel and counsel for all Respondents copies of all objections, opt-in and opt-out forms, notice or information relating to the death of a Settlement Member and their Estate Representatives, if any, on a weekly basis.

E.     All disputes relating to the Settlement Administrator's performance of its duties will be referred to the Court, if necessary, which will have continuing jurisdiction over this settlement until all payments and obligations contemplated by this Settlement Agreement have been fully carried out, regardless of dismissal.

F.     At least twenty-one (21) days before the Final Fairness Hearing, the Settlement Administrator shall prepare a declaration of due diligence and proof of mailing with regard to its mailing of the Notice of Settlement, any attempts by it to locate Drivers Eligible To Participate, its receipt of valid Claim Forms (indicated by number of Potential Fund B Claimants who timely and validly submitted such forms), its receipt of objections and requests to appear at the final approval hearing, its receipt of requests for exclusion, and its inability to deliver the Notice of Settlement to Drivers Eligible To Participate due to invalid addresses ("Due Diligence Declaration"), to Settlement

24

Counsel and Respondents' counsel for presentation to the Court.  Settlement Counsel shall be responsible for filing the Due Diligence Declaration with the Court.

### 2.6 Method of Determining Amount of Individual Settlement Payments

A.     The Settlement Administrator will determine the amount of each Net Individual Settlement Payment(as defined below) payable to each Participating Settlement Member.

B.     Fund A: The Allocation Formula for Fund A shall be as described in **Exhibit F** hereto.

(i)     In the event that, one year after distribution from Fund A commences, the aggregate amount of Individual Settlement Payments paid to Participating Fund A Claimants (including Employee Taxes) combined with the proportionate share of Attorneys' Fees and Costs, Administrative Costs, and Service Awards attributable to Fund A is less than ██████████████ ████████████████, the remainder of Fund A shall be paid to the Cy Pres recipient to be mutually agreed upon by the Parties, or in the absence of agreement, chosen by the Court.

C.     Fund B: Fund B funds minus the proportionate share of Attorneys' Fees and Costs, Administrative Costs, and Service Awards will initially be apportioned among all Potential Fund B Claimants.  Fund B funds shall be allocated on a pro rata basis based on the number of months each Potential Fund B Claimant provided services under a Contractor Agreement originally entered into with Central Refrigerated Service, Inc. and an Equipment Lease Agreement ("Lease") originally entered into with Central Leasing, Inc. during the period from June 1, 2009 to the date of this Settlement Agreement including any period after which Central Refrigerated assigned any such Contractor Agreement to Swift Transportation Company of Arizona, LLC ("Swift AZ") and Central Leasing assigned any such Lease to Interstate Equipment Leasing ("IEL"); provided, however, that each Participating Fund B Claimant shall be entitled to a minimum payment of ██████████████ ██████.

(i)     In the event that any Individual Settlement Payments from Fund B are not timely and validly claimed by a Potential Fund B Claimant by the Opt-In Date, all such amounts

shall revert to Respondent Swift Transportation Company or other payor, and need not be transferred to the Settlement Administrator at the time the Settlement is funded pursuant to Section 2.14.

(ii) In the event that Fund B funds are timely and validly claimed by a Participating Fund B Claimant by the Opt-In Date and a check is later mailed to that individual in accordance with the terms of this Settlement Agreement but remains uncashed one year after the Individual Settlement Payment is sent to such individual and after good faith efforts to contact the recipient (through all contact addresses and phone numbers within the Settlement Administrator's possession or further skip traces as may be appropriate) have been made by the Settlement Administrator to contact the particular Participating Fund B Claimant, such uncashed funds shall revert to Respondent Swift Transportation Company or other payor.

D. Required tax withholding on the wage portion of a Participating Settlement Member's Individual Settlement Payment shall be calculated on a one-time annual payment basis by the Settlement Administrator based on W-4 forms to be provided by Participating Settlement Members. Any Participating Settlement Member who does not provide a W-4 shall have withholding on the wage portion of his or her Individual Settlement Payment calculated at the single no dependents rate.

**2.7 Allocation and Taxability of Settlement Distributions**

A. The payments to Participating Settlement Members, will be treated as follows:

(i) For tax purposes, ██████████████ of each Individual Settlement Payment will be treated by the Parties as wages reported on IRS Form W-2, and the Settlement Administrator shall withhold appropriate amounts for Employee Taxes from those wages and pay all such withheld funds to the appropriate state and federal taxing authorities from the Individual Settlement Payment. The Settlement Administrator will calculate the corresponding share of Employer Taxes and pay all such taxes to the appropriate state and federal taxing authorities, provided that Company Respondents shall separately fund the amounts owed as Employer Taxes and such funds shall not be deducted from the Total Settlement Fund or Net Settlement Fund. To the extent there is any additional cost associated with the Settlement Administrator calculating the

26

Employer Taxes, this shall be at Company Respondents' expense (outside the fund and outside any payment limits herein). The remaining ████████████ of the Individual Settlement Payment will be treated by the Parties as additional, non-wage penalties and interest, not subject to payroll withholdings, and shall be reported on an IRS Form 1099.[6] The Settlement Administrator will provide to all Parties records of what was paid to each Participating Settlement Member and records of the W-2 forms issued to Participating Settlement Members. The Employer Taxes shall be funded by Company Respondents out of their own funds and shall be their sole responsibility. Neither Fund A or Fund B Claimants, nor Settlement Counsel shall bear any responsibility in connection with the Employer Taxes owed on the Individual Settlement Payments. Neither this Settlement Agreement, nor any of its attachments, should be interpreted to contain or constitute representations or advice regarding any U.S. federal or state tax issue. All Drivers Eligible To Participate will be specifically informed that neither Respondents nor Settlement Counsel make any representations regarding the tax implications of any amounts paid under this Settlement Agreement and that if any Drivers Eligible To Participate or Settlement Members have any questions regarding those implications, they can and should consult a tax professional.

(ii)     The Settlement Administrator shall provide each Participating Settlement Member who is entitled to an Individual Settlement Payment with an IRS Form W-2 reflecting the wages and the taxes withheld from those wages and with an IRS Form 1099 reflecting the non-wage damages and interest paid. The Settlement Administrator shall provide each Participating Settlement Member who is entitled to an Individual Settlement Payment with appropriate documentation setting forth the amount of any tax or other payment withheld and employer tax contribution made, in accordance with state and federal tax requirements. Participating

---

[6]   It is and remains Respondents' position that no taxes are owed by any of them since they contend all of the Drivers Eligible To Participate were properly classified as independent contractors and are not employees. The Parties agree that the allocation between wages and non-wages is also fair, reasonable, and appropriate here given that Settlement Members asserted or could have asserted claims for penalties, non-wage related damages, and interest, including claims for liquidated damages, fraud, unjust enrichment, forced labor, unlawful deductions, RICO, various other state law claims for damages and penalties, incidental and consequential damages, etc.

Settlement Members shall be solely and exclusively responsible for remitting to state and/or federal taxing authorities any applicable other taxes due in connection with their Individual Settlement Payments, other than Employer Taxes.  Participating Settlement Members agree not to hold Settlement Counsel or Respondents responsible for any taxes, interests, penalties, and/or costs associated with any taxes the Participating Settlement Members owe in connection with their Individual Settlement Payments.

          (iii)     The Settlement Administrator shall verify that Individual Settlement Payments are made to the Participating Settlement Members, and this verification and proof of payment shall be filed with the Court and provided to the Parties.  Any checks issued to Participating Settlement Members shall remain valid and negotiable for one (1) year from the date of their mailing. Within seven (7) business days of the conclusion of the one-year check cashing period, the Settlement Administrator shall inform the Parties regarding the status of any uncashed checks, including the amount, and the identity of the corresponding Participating Settlement Member with an uncashed check.  Within ten (10) business days of the conclusion of the one-year check cashing period, the Settlement Administrator will file a declaration with the Court regarding the status of uncashed checks and unclaimed Individual Settlement Payments, including the identities of the Participating Settlement Members with an uncashed check.  If any Settlement Member does not cash his or her settlement check, the Settlement Administrator shall distribute the funds as provided in Section 2.3.A(ii)-(iii).

          B.     Service Awards to the Named Claimants and any other Participating Settlement Members who receive such an award shall be reported on IRS Form 1099s (checking Box 3).  Named Claimants and all other Participating Settlement Members receiving Service Awards shall be responsible for all taxes associated with those payments.

          C.     Payment of Attorneys' Fees and Costs to Settlement Counsel shall be made directly to Settlement Counsel and reported on IRS Form 1099s issued to Settlement Counsel and not to the Settlement Members.  Settlement Counsel shall be responsible for all taxes associated with any Attorneys' Fees and Costs award.

**2.8     Release of Claims; Representations & Warranties; Dismissal**

A.      Based on a reasonable investigation, Respondents represent that they are aware of no other pending litigation not expressly described in the Settlement Agreement, which will be subject to any release herein.  Named Claimants and Settlement Counsel further warrant that they are not currently aware of any other claims against Respondents or any of the other Released Parties, including those that cannot be released, such as workers' compensation claims.  Upon the Settlement Effective Date, all Participating Settlement Members, including their heirs, assigns, and estates, shall be deemed to fully forever, irrevocably and unconditionally release, and discharge the Respondents and all other Released Parties from any and all claims, debts, liabilities, demands, obligations, guarantees, penalties, costs, expenses, attorneys' fees, damages, liquidated damages, action or causes of action of whatever kind or nature, whether known or unknown, contingent or accrued, that are based on, arise out of, or relate in any way to services provided as a "lease operator" also known to Respondents as an "owner operator" for Central Refrigerated Service, Inc. and/or leasing a vehicle from Central Leasing, Inc. (collectively, the "Section 2.8 Released Claims"), including, but not limited to, any claims regarding why any such individual decided to execute a Contractor Agreement with Central Refrigerated Service, Inc. and/or an Equipment Leasing Agreement with Central Leasing, Inc.  The Section 2.8 Released Claims include, without limitation, any and all claims, known or unknown, contingent or accrued, that were actually raised or which could have been raised in the Lawsuit, including in the Individual Arbitrations or the Collective Action, based on the facts alleged in those proceedings against Respondents and/or any of the other Released Parties.  The Section 2.8 Released Claims relate to the period from June 1, 2002 up through and including the date of final settlement approval by the Court, except for Named Claimants who will execute a General Release of all claims, as set forth in **Exhibit A** hereto, to the date of signing of the General Release.  In the event the settlement becomes completely final and non-appealable and all monies owed by the Company Respondents in connection with this Settlement Agreement are paid, the Lawsuit, including the Complaint pending before District Court Judge Virginia Phillips, the Collective Action pending

29

before the AAA, and all Individual Arbitrations pending before the AAA shall be dismissed with prejudice.

        B.      Nothing herein shall release claims against Swift Transportation arising from employment or contractor status with a lease involving Interstate Equipment Leasing, Inc. ("IEL"), or claims against Knight Transportation, other than their role, if any, as assignees of Contractor Agreements with Central Refrigerated Service, Inc. and leases with Central Leasing, Inc.  The release will not cover any claims against Swift Transportation or any Swift entity, or officers including Jerry Moyes and Chad Killebrew arising from any contractor agreement originally entered into by the driver directly with Swift Transportation or a lease originally entered into by the individual directly with IEL or its successors or assigns or any contractor agreements or leases with Knight Transportation and its leasing arm or any entity other than the Respondents in this case and shall not include any claims alleged in *Van Dusen et al. v. Swift Transportation Co., Inc., et al.*, Case No. 2:10-cv-00899-JWS (D. Ariz.) ("*Van Dusen*"); provided, however, that in the event the plaintiffs in *Van Dusen* amend the operative complaint in that action on or after May 5, 2017, it is understood and agreed by the Parties that any claims or causes of action that arise out of, relate to, or are based on a Contractor Agreement originally entered into by the driver directly with Central Refrigerated Service, Inc. (including, but not limited to, any such Contractor Agreement that was assigned to Swift Transportation effective February 1, 2014) or an Equipment Leasing Agreement originally entered into by the individual directly with Central Leasing, Inc. (including, but not limited to, any such Equipment Leasing Agreement that was assigned to IEL effective February 1, 2014) are part of the Released Claims being released as part of this Settlement Agreement.

        C.      The Named Claimants and Settlement Counsel warrant that they are currently aware of no other claims against Respondents or any of the other Released Parties, including those that cannot be released, such as workers' compensation claims.

        D.      Respondents represent that they are not engaged in collections efforts with respect to Equipment Leasing Agreements involving Central Leasing or in connection with Central Refrigerated's Contractor Agreements, and will not pursue collections efforts against Participating

Settlement Members.  Upon the Settlement Effective Date, Central Refrigerated and Central Leasing will also release and dismiss with prejudice any counterclaims they have filed, or ever could file based on any actions, events or occurrences that took place prior to May 5, 2017, against Participating Settlement Members.

E.      Settlement Counsel represent they do not currently represent any of the Potential Fund B Claimants and that they have no present intention of filing any legal action, administrative proceeding, or complaint of any type on behalf of those individuals, or encouraging the filing of such claims by those individuals if this settlement becomes effective.

F.      Concurrently with the final approval of this Settlement Agreement by the Court, each Named Claimant will execute a General Release of all claims against Respondents and all other Released Parties, unless otherwise specified in the General Release, in the form attached hereto as **Exhibit A**.

G.      Upon the Settlement Effective Date, Respondents shall be deemed to have released all Participating Settlement Members from any and all claims known or unknown, contingent or accrued, that are based on, arise of out of, or relate in any way to a Contractor Agreement with Central Refrigerated Service, Inc. and/or an Equipment Leasing Agreement ("Lease") with Central Leasing, Inc. or any services provided under such Contractor Agreement or Lease.

H.      Respondents shall not retaliate against any Settlement Member or any Driver Eligible To Participate who excludes themselves from this settlement.

I.      If a Claimant requests by letter to HireRight that records of a Central Leasing lease default be corrected, Company Respondents agree to provide a timely letter to HireRight with a copy to the requesting Claimant that defaults under the Central Leasing lease have been rescinded by mutual agreement.

J.      Respondents shall give no new or additional negative references to any Participating Settlement Member for having allegedly defaulted on their lease for the time they were driving for Central Refrigerated.

K.      Upon the Settlement Effective Date, *Cilluffo, et al. v. Central Refrigerated Service, Inc., et al.*, Central District of California Case No. 12-00886-VAP (OPx), as well as the corresponding Collective Action pending before Arbitrator Patrick Irvine of the American Arbitration Association ("AAA"), Case No. 77 160 00126 13 PLT (together, the "Collective Action") and each of the approximately 326 Individual Arbitrations pending before the AAA that are identified in **Exhibit D** (the "Individual Arbitrations") shall be deemed to have been dismissed with prejudice.

**2.9     Opt-Out/Request for Exclusion Procedure for Fund A Claimants**

A.      Fund A Claimants, or their Estate Representatives, shall be entitled to "opt out" of the settlement.  The Notice to Fund A Claimants shall be in the form set forth in **Exhibit B** and shall include instructions for submitting a valid opt-out.  A valid opt-out must be signed by the Fund A Claimant or his or her Estate Representative(s), must be submitted to the Settlement Administrator by First Class Mail, and must be postmarked no later than the Opt-Out Date.

B.      Any Fund A Claimant who does not properly and timely submit a request for exclusion in the manner and by the deadline specified above in Section 2.9A will be bound by all terms and conditions of the settlement and this Settlement Agreement, including the releases of claims pursuant to Sections 2.8 and 2.16 of this Settlement Agreement, if the Settlement is approved by the Court, and be bound by the Final Approval Order, regardless of whether he or she has objected to the settlement.

C.      Any Fund A Claimant who properly and timely submits a request for exclusion in the manner and by the deadline specified above in Section 2.9A will not be bound by the Settlement Agreement, and will remain free to pursue any claim as to that individual that would have been barred by this Settlement Agreement, and nothing in this Settlement or Settlement Agreement will constitute or be construed as a waiver of any defense Respondents or the other Released Parties have or could assert against such a claim.

**2.10    Opt-In Procedure for Potential Fund B Claimants**

A.      Potential Fund B Claimants, or their Estate Representatives, shall be entitled to "opt in" to the settlement.  The Notice to Potential Fund B Claimants shall provide instructions to

Potential Fund B Claimants who wish to opt in and shall include an opt-in form similar to **Exhibit C** hereto, subject to the Court's approval.  To be valid, the opt in request must (i) include a clear statement of intention to be included in the settlement; (ii) include the full name, address, telephone number, and last four digits of the Social Security Number of the Potential Fund B Claimant opting in; (iii) be signed by the Potential Fund B Claimant; (iv) be returned by U.S. Mail to the Settlement Administrator at the specified address; and (v) must be postmarked, emailed, faxed or electronically submitted no later than the last day of the Notice Period (i.e., the Opt-In Date).  The Settlement Administrator will notify any Potential Fund B Claimant from whom it receives a request to opt in if it is not timely and/or valid.  Any disputes regarding the timeliness, validity or effectiveness of a request to opt in shall be decided by the Court consistent with the terms of this Settlement Agreement, with the Parties' input, if appropriate.  The date of the postmark (or postage meter date) on the mailing envelope for any request to opt in shall be the exclusive means used to determine whether a mailed request to opt in has been timely submitted.  If an opt-in form is received by the Settlement Administrator on or prior to the opt-in date, it shall be presumed to be timely.  If a mailed request to opt in has no postmark or postage meter date, it will be timely if received within ten (10) days of the opt in date.

       B.      Any Potential Fund B Claimant who properly and timely submits a request to opt in in the manner and by the deadline specified above in Section 2.10A will be a Participating Fund B Claimant and will be bound by all terms and conditions of the settlement and this Settlement Agreement, including the releases of claims pursuant to Sections 2.8 and 2.16 of this Settlement Agreement, if the settlement is approved by the Court, and be bound by the Final Approval Order, regardless of whether he or she has objected to the Settlement.

       C.      Any Potential Fund B Claimant who does not properly and timely submit a request to opt in in the manner and by the deadline specified above in Section 2.10A will not be bound the Settlement Agreement, and will remain free to pursue any claim as to that individual that would have been barred by this Settlement Agreement, and nothing in this settlement or Settlement

Agreement will constitute or be construed as a waiver of any defense Respondents or the other Released Parties have or could assert against such a claim.

> **2.11    Procedures for Objecting to the Settlement**

> A.    The Notices to Fund A Claimants and to Potential Fund B Claimants shall provide that Participating Settlement Members and persons purporting to act on behalf of a Participating Settlement Members who wish to object to the Settlement Agreement shall file with the Settlement Administrator, a written statement objecting to the Settlement Agreement.  Such objection and any supporting briefs or other materials must be filed with the Court and mailed, via First Class U.S. Mail, to counsel for the Parties and postmarked no later than the last day of the Notice Period. Both (i) Fund A Claimants who opt out and (ii) Potential Fund B Claimants who do not opt in are not participants in this action and thus may not file and serve an objection or otherwise comment on this Settlement Agreement and any such objections shall not be filed with the Court by any party.  The postmark date of the filing and service of an objection shall be deemed the exclusive means for determining that the objection is timely.  An objection must be signed and state the Participating Settlement Member's name, current address and telephone number, last four digits of social security number, and the basis for the objection.  The notice of objection must also be signed by the Participating Settlement Member.

> B.    No Participating Settlement Member or person purporting to act on behalf of a Participating Settlement Member shall be entitled to be heard at the Final Approval Hearing (whether individually or through counsel) or to object to the settlement, and no written objections or briefs submitted by any such individuals or persons purporting to act on behalf of them shall be received or considered by the Court at the Final Approval Hearing, unless the individual's objection and supporting materials have been timely filed and served as set forth above in Section 2.11A within the Notice Period.  Any Participating Settlement Member who fails to file and serve a timely and complete objection in the manner specified above in Section 2.11A shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the settlement.

C.      Counsel for the Parties shall file any responses to any timely objections at least fourteen (14) calendar days before the Final Approval Hearing.

D.      No party shall be responsible for the fees, costs, or expenses incurred by any other party related to Participating Settlement Members who submit objections or otherwise purport to object to the Settlement Agreement or related to any appeals thereof, except to the extent described above allowing Settlement Counsel to seeks fees and costs (as set forth herein) from the fund for work on any appeal and additional to the fund, but solely against an objector, intervenor, or appellant who challenges Settlement Counsel's Attorneys' Fees and Costs on appeal.

### 2.12    Preparation and Mailing of Notice to Drivers Eligible To Participate

A.      The Notices of Collective Action Settlement and Hearing Date for Court Approval (one for Fund A Claimants and one for Potential Fund B Claimants (hereinafter "Notices of Settlement")), in materially the forms attached hereto as **Exhibit B** and as approved by the Court, shall be sent by the Settlement Administrator to the Drivers Eligible To Participate, by First Class Mail and email (in English, and in both English and Spanish for any Spanish-surnamed drivers) to those addresses provided, within ten (10) days of preliminary approval by the Court, or as soon as the Settlement Administrator is able to do so.  The Spanish version of the Notices of Settlement shall reflect the same content as the English versions attached hereto and the translation of the Notice will be subject to the mutual approval of the Parties, such approvals not to be unreasonably withheld.  The specific amounts allocated to a particular Fund A Claimant or a particular Potential Fund B Claimant shall not be disclosed to any other Driver Eligible To Participate.

B.      The Settlement Administrator will attempt to locate any Drivers Eligible To Participate by performing a National Change of Address (NCOA) search on the entire list of Fund A Claimants and Potential Fund B Claimants and if needed, conducting one or more skip trace searches regarding any returned or undeliverable Notice of Settlement.

C.      If an envelope has not been returned within thirty (30) days of the mailing, it shall be conclusively presumed that the Fund A Claimant or Potential Fund B Claimant received the Notice of Settlement.

D.      If after preliminary approval and distribution of the Notices of Settlement, the Settlement Effective Date does not occur, or the Settlement Agreement is voided by any party, the Settlement Administrator shall send notice to Participating Settlement Members informing them of the voiding of the Settlement Agreement.

### 2.13    Final Fairness Hearing

In accordance with all applicable procedural rules and any briefing schedule ordered by the Court, Settlement Counsel and Named Claimants shall move for final approval of the settlement and separately apply for Attorneys' Fees and Costs and Service Awards.  Respondents may oppose Settlement Counsel's application for Attorneys' Fees and Costs and in such event agree to simultaneously provide Settlement Counsel with Respondents' counsel's hourly rates and the total hours billed in the Action, the Collective Action, the Individual Arbitrations, and/or any other aspect related to the *Cilluffo et al. v. Central Refrigerated et al.* litigation.  The Parties will request the Court to conduct a Fairness Hearing on the date set forth in the Order of Preliminary Approval and in the Notices of Settlement to determine if the Settlement Agreement is fair, reasonable, and adequate, and if so, enter a final order and judgment granting Final Approval of Settlement, which will (a) approve the Settlement Agreement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions; (b) approve in whole or in part Settlement Counsel's application for an award of Attorneys' Fees and Costs; (c) approving in whole or in part the Service Awards; (d) release all of the Released Claims against Respondents and/or any of the other Released Parties as defined in the Settlement Agreement; (e) end the tolling of any and all FLSA claims as of the Settlement Effective Date as set forth in Section 2.4D; and (f) and dismiss the case, which dismissal shall be effective upon funding of the settlement as set forth in Section 2.14.

### 2.14    Funding of Settlement Amount and Distribution of Payments

No later than five (5) business days after the Settlement Effective Date, Company Respondents will place all funds necessary to fund this Settlement Agreement into a Qualified Settlement Fund established by the Settlement Administrator to fund the settlement, including the calculated Employer Taxes, and provide Settlement Counsel with notice and confirmation from the

Settlement Administrator that the funds have been transferred.  When, after the Settlement Effective
Date, Company Respondents fund the Settlement pursuant to this Section, they may deduct from the
Gross Settlement Amount any unclaimed portion Individual Settlement Payments to Potential Fund B
Claimants as well as the Administrative Costs approved by the Court.  Within twenty (20) days of the
Settlement Effective Date, the payment of all Administrative Costs, Individual Settlement Payments,
taxes, Attorneys' Fees and Costs, and Service Awards shall be made by the Settlement Administrator.
Payments by the Settlement Administrator to Settlement Counsel will be by bank wire pursuant to
wire instructions provided by Settlement Counsel.  All payments called for under this Section 2.14
shall be made solely from the Gross Settlement Amount except the Employer Taxes, which will be
paid by the Corporate Respondents in addition to the Gross Settlement Amount.

### 2.15   Nature of Agreement

Nothing in this Settlement Agreement shall be deemed to affect any contractual or legal
relationships between or among any of the Respondents, any Swift entity, IEL, any Knight
Transportation entity, or any of their respective successors or assigns.

### 2.16   Release of Claims Among Settlement Counsel and Settlement Members

Participating Settlement Members and Settlement Counsel shall, and hereby do, fully and
finally release and forever discharge Respondents and all other Released Parties (as defined herein)
of and from any and all claims, demands, damages, actions and/or causes of action of whatever kind
or nature, including claims for attorneys' fees or costs, whether known or unknown, existing or
claimed to exist, in any way set forth in or arising out of any: (i) dispute or claim between or among
any Settlement Members and/or Settlement Counsel, including over any claim to any monetary part
of the settlement and/or to Settlement Counsel's fees, costs or expenses; and/or (ii) any dispute
between Settlement Members, Settlement Counsel, and/or any governmental authority with respect to
this Settlement Agreement.  This Settlement Agreement shall constitute, and may be pleaded by
Respondents and the other Released Parties as, a complete and total defense to any such dispute or
claim.

**2.17    Duties of the Parties Prior to Court Approval**

A.    Within twenty-one (21) days after the signing of the Settlement Agreement, the Parties shall jointly seek preliminary approval of the settlement from the Honorable Virginia A. Phillips of the United States District Court for the Central District of California.  Named Claimants and Settlement Counsel will file a Motion for Preliminary Approval seeking the following:

(i)    Preliminary approval of the proposed settlement as fair, reasonable, and adequate as to the Drivers Eligible To Participate;

(ii)    Approval as to form and content of the proposed Notice of Settlement;

(iii)    Approval of the plan of allocation of the Gross Settlement Amount;

(iv)    Directing the mailing of the Notice of Settlement by First Class Mail and email to Drivers Eligible To Participate by the Settlement Administrator;

(v)    Appointing Settlement Services, Inc. as the Settlement Administrator;

(vi)    Preliminarily approving this Settlement Agreement; and

(vii)    Scheduling a Final Fairness Hearing on the question of whether the proposed settlement should be finally approved.

B.    Settlement Counsel shall give Respondents an opportunity to review and comment on any motion for preliminary or final approval along with any related papers at least seven (7) calendar days prior to filing.

C.    Prior to the Final Fairness Hearing by the Court of the settlement provided for in this Settlement Agreement, Settlement Counsel will submit a proposed final order in a form to be mutually agreed upon by the Parties:

(i)    Approving the settlement, adjudging the terms thereof to be fair, reasonable and adequate, and directing consummation of its terms and provisions;

(ii)    Approving Settlement Counsel's application for an award of Attorneys' Fees and Costs in whole or in part.  These amounts for Attorneys' Fees and Costs shall be paid from the Gross Settlement Amount;

38

(iii)     Ending the tolling of any and all FLSA claims as of the Settlement Effective Date as set forth in Section 2.4D; and

(iv)     Dismissing the Complaint in this Action on the merits and with prejudice as against Respondents and the other Released Parties.  Such dismissal shall be effective upon funding of the settlement as set forth in Section 2.14.

(v)     Settlement Counsel shall encourage Fund A Claimants not to opt out of the settlement, including, but not limited to, informing any such drivers that contact them that the settlement is fair, reasonable and adequate and that Settlement Counsel believes it is in the Fund A Claimant's best interest to participate in the settlement.

(vi)     Settlement Counsel believe the Fund B settlement offered to the Potential Fund B Claimants is fair, reasonable, and adequate because, among other things, Potential Fund B Claimants have not participated in the underlying litigation over the past several years and retain the ability to opt in or not without penalty.

**2.18     Communications**

A.     Except for disclosures authorized by the Court or by Respondents, or that are required by law (including any applicable securities or accounting laws, regulations or rules), or that are necessary to prepare the Motion for Preliminary Approval or Final Approval, or to enforce this Settlement Agreement, or for Settlement Counsel to defend themselves in any third party action, or as set forth herein with respect to the Named Claimants, the terms of the MOU and this Settlement Agreement shall remain confidential until they are presented to the Court in connection with the Motion for Preliminary Approval.

B.     Any information provided to the Settlement Administrator, whether by Respondents or potential Settlement Members, including but not limited to the identities of those who opt in or opt out, shall be treated as confidential by the Settlement Administrator except as necessary to fulfill the Settlement Administrator's duties in this case.  Any such information concerning Potential Fund B Members provided by Respondents to Settlement Counsel for purposes of effectuating this Settlement Agreement, shall not be used for any other purpose (other than as set

forth in subsection A above) should the Parties fail to obtain final approval of the settlement for any reason. However, nothing herein shall bar Settlement Counsel from using any such information known to or available independently to them or independently seeking such information from alternate sources. And nothing herein shall bar Potential or Participating Fund B Claimants from retaining Settlement Counsel or Settlement Counsel from separately representing any Potential or Participating Fund B Claimants in the event this settlement does not become effective for any reason.

C.     Any information supplied by Company Respondents concerning Potential Fund B Claimants will be kept strictly confidential by Settlement Counsel and the Settlement Administrator. If this settlement is not approved or voided or for any reason there can be no Settlement Effective Date, or once the Settlement Effective Date is reached, Settlement Counsel shall destroy all information provided regarding all Potential Fund B Claimants (who have not opted in) and they shall make no other use of the information for any reason. Claimants and Settlement Counsel agree that confidential documents and information provided to them in discovery pursuant to a Stipulated Protective Order dated April 30, 2015, shall continue to be subject to that order, which shall survive this Agreement.

D.     Nothing in this Section will be construed as a restraint on the right of any counsel to practice or a limitation on the rights that any Driver Eligible To Participate or Settlement Counsel may have under any applicable federal, state, or local law to separately obtain documents or information from Respondents. Furthermore, Company Respondents shall make any such confidential information available to Settlement Counsel for the purpose of defending themselves against any legal malpractice lawsuit(s) related to the Individual Arbitrations or the Collective Action. Company Respondents shall maintain a copy of all confidential information provided to Settlement Counsel in connection with this settlement for a minimum of seven (7) years.

E.     Respondents may request the Court to treat this Settlement Agreement as confidential, except as to disclosures permitted hereunder. If that request is made and approved by the Court and the Settlement Agreement is ordered to be confidential in some manner, that shall in no way preclude Fund A Claimants or Potential Fund B Claimants to whom the Notice of Settlement is

40

sent from being provided with a copy of the Settlement Agreement upon agreeing to any confidentiality conditions that have been imposed by the Court. Settlement Counsel, Named Claimants, and the Drivers Eligible To Participate shall take no position on a motion to keep the Settlement Agreement confidential. In no event shall approval of confidential treatment by the Court be a condition to the effectiveness of this Settlement Agreement. If Respondents choose to move to seal the Settlement Agreement and related proceedings, then Respondents shall be responsible for filing the Motion for Preliminary Approval of the Settlement Agreement and any accompanying or subsequent papers in the Court under seal.

F.     Respondents and Settlement Counsel shall be permitted to disclose the settlement in order to comply with any state or federal law.

G.     Nothing in this Section 2.18 shall limit Respondents from communicating with their counsel regarding this Settlement Agreement, or shall limit Named Claimants and the Drivers Eligible To Participate from communicating with Settlement Counsel regarding this Settlement Agreement or receiving a copy thereof.

H.     The Named Claimants and Settlement Counsel shall strictly maintain the confidentiality of this Settlement Agreement pending a determination on a motion for confidentiality if one is filed by Respondents or, if no such motion is filed, then until the Settlement Agreement is filed with the Court in connection with the motion for preliminary approval of the settlement.

I.     The Named Claimants and Settlement Counsel shall not publicize the terms of this Settlement Agreement in any medium, or initiate or issue any press release or have any communications to the press or media concerning the Lawsuit, the settlement of the Lawsuit and/or the terms or provisions of this Agreement. If contacted by the press Named Claimants and Settlement Counsel may indicate that the matter is settled and may state whether or not the settlement has been approved by the Court and discuss the Court procedures utilized to approve settlements such as this one, and any dates for expected notice, preliminary and final review.

J.     Settlement Counsel shall be permitted to announce on their website that there has been a settlement on behalf of Drivers Eligible To Participate and indicate that any such drivers

41

may obtain further information regarding the settlement by contacting Settlement Counsel. Settlement Counsel is permitted to post any approved Notice Forms (without specific figures) on their website.

      K.     While Settlement Counsel will not reach out to communicate with any Potential Fund B Claimant unless that individual has first reached out to Settlement Counsel, Settlement Counsel may respond to inquiries from Potential Fund B Claimants and nothing herein shall limit such communications or counsel's ethical obligations with respect to such communications.

      L.     Nothing herein shall limit Settlement Counsel's right to respond to inquiries from Potential or Participating Fund B Claimants, and to provide copies of the Settlement Agreement to any putative Settlement Member, except that Settlement Counsel shall not reveal the specific amounts to be awarded to other drivers under the settlement.

      M.     Any information previously designated as confidential prior to the parties' MOU shall remain confidential as set forth in any prior confidentiality agreement, which shall remain applicable.

      N.     Information provided by Respondents to Settlement Counsel in this action with respect to Potential Fund B Claimants shall not be used for any other purpose (such as the prosecution of other actions) or be supplied to any other driver, except that this provision shall not be construed to prohibit Settlement Counsel from using such confidential information for the purpose of defending themselves against any legal malpractice lawsuit(s) related to the Action, the Individual Arbitrations, and/or the Collective Action.

      O.     Whether or not the settlement herein is finally approved, neither the Settlement Agreement, nor any of its terms, nor any document, statement, proceeding or conduct related to this Settlement Agreement including without limitation the Memorandum of Understanding, the motions for preliminary and final approval of the settlement and any documents submitted in support of such motions, nor any reports or accounts thereof, shall in any event be disclosed, referred to or offered or received in evidence against any of the Parties, in any further proceeding in this Action, the

Collective Action, the Individual Arbitrations, or any other civil, criminal or administrative action or proceeding (including arbitrations) except for purposes of settling this Action or enforcing the Released Claims contained herein pursuant to the terms of this Settlement Agreement, and except as otherwise provided herein.

P.   At the conclusion of all payout periods applicable to this Action, Settlement Counsel shall destroy any information they have received with respect to Potential Fund B Claimants. Once information is destroyed, Company Respondents' counsel shall be required for up to seven (7) years thereafter to promptly provide copies of any information destroyed to Settlement Counsel as needed for defense of any third-party or malpractice or other action to which such information is relevant.

Q.   This Section 2.18 does not apply to any Court-approved notice of the settlement.  Nothing in this Section 2.18 shall be construed as prohibiting the Parties or their counsel from responding to an inquiry issued under court order, subpoena, or other request issued under the law or any necessary disclosures regarding this settlement as required by law.

R.   Named Claimants shall be permitted to disclose the Settlement Agreement and any specifics about their rights thereunder to their spouse, life partners, immediate family members, tax advisors, accountants, attorneys, religious or spiritual advisors, or to any individual to whom they are required to disclose by law – however such disclosure shall also explain that the disclosed information is confidential and may not be repeated to any other individual.

### 2.19   Continuing Jurisdiction of the Court

The Parties agree that the Court shall retain jurisdiction over the Parties, and over this Settlement Agreement, for all purposes, including but not limited to: (i) monitor and enforce compliance with this Settlement Agreement, Final Approval and/or any related order of this Court; and/or (ii) resolve any disputes over this Settlement Agreement or the administration of the benefits of this Settlement Agreement, including disputes over entitlement to payments sought by Settlement Counsel.  The Court shall retain jurisdiction regardless of dismissal.

43

**2.20    Voiding the Settlement Agreement**

A.      If any of the conditions set forth in the preceding paragraphs are not met and materially satisfied, this Settlement Agreement shall, at the option of either party (except where otherwise provided herein), be ineffective, void, and of no further force and effect and shall not be used nor be admissible in any subsequent proceedings either in this Court or in any other Court or forum.  The Parties may exercise their option, only on the terms provided herein, to void this Settlement by giving notice, in writing, to the other party and to the Court at any time prior to the Settlement Effective Date (except where otherwise provided herein).

B.      In such an event, (i) nothing in this Settlement Agreement shall be construed as a determination, admission, or concession of any issue in the Action, Collective Action, and Individual Arbitrations, and nothing in this Settlement Agreement may be offered into evidence in any trial on the merits of the claims asserted in the Complaint or arbitration demands filed in the Action, Collective Action, or Individual Arbitrations or in any subsequent pleading; (ii) the Parties expressly reserve their rights with respect to the prosecution and defense of the Action, Collective Action, and Individual Arbitrations as if this Settlement Agreement never existed; and (iii) Company Respondents shall be responsible for any Administrative Costs incurred by the Settlement Administrator, including costs of providing notice to Drivers Eligible To Participate regarding the voiding of the settlement, provided that all Administrative Costs may be recoverable in the event that any of the Respondents is a prevailing party in the Action.  The form of such notice shall be mutually agreed upon by the parties within fifteen (15) days of notification of the voiding of the Settlement Agreement.  If no agreement is reached, the Parties agree to jointly submit disputed terms and a brief explanation of the Parties' respective positions on each disputed term to the Court for the Court to decide on the final form of notice.  Such joint submission shall be submitted within five (5) days of the expiration of the fifteen-day meet-and-confer period contemplated in this subsection.

### 2.21   Dispute Resolution

Except as authorized herein, all disputes concerning the interpretation, implementation, calculation, or payment of the Settlement Amount or other disputes regarding compliance with this Settlement Agreement will be resolved by the Court.

### 2.22   Parties' Authority

The signatories hereto hereby represent and warrant that they are fully authorized and competent to enter into this Settlement Agreement and bind the Parties hereto to the terms and conditions hereof, and have the full right, power, and authority to enter into and perform the obligations under this Settlement Agreement.

### 2.23   Mutual Full Cooperation

The Parties agree to fully cooperate with each other to accomplish the terms of this Settlement Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Settlement Agreement.  The Parties to this Settlement Agreement shall use their best efforts, including all efforts contemplated by this Settlement Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Settlement Agreement and the terms set forth herein.  As soon as practicable after execution of this Settlement Agreement, Settlement Counsel shall, with the assistance and cooperation of Respondents and their counsel, take all necessary steps to secure the Court's Final Approval of this Settlement Agreement.

### 2.24   No Prior Assignments

The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

### 2.25   No Admission

Nothing contained herein, nor the consummation of this Settlement Agreement, nor the tax treatment of payments discussed herein, nor any documents filed in support of the settlement shall

constitute, or be offered, received, claimed, construed, or deemed as, an admission, finding, or evidence of any violation of any statute, law, or regulation or any liability, culpability, negligence, or wrongdoing on the part of Respondents and/or any of the other Released Parties, or as to Settlement Members who were subject to Respondents' Counterclaims and they expressly deny liability or wrongdoing. Respondents further deny, for any purpose other than settling this lawsuit, that this lawsuit is appropriate for collective, class, or representative treatment, and also deny that the Drivers Eligible To Participate are employees. The Named Claimants maintain that all their claims were and are valid as alleged in their Complaint, arbitration demands, and any amendments or supplements thereto. This Settlement Agreement is not, shall not be deemed to be, and may not be used as, an admission or evidence of the appropriateness of this or similar claims for collective or class action certification or administration other than for the purposes of administering this Settlement Agreement. Each of the Parties hereto has entered into this Settlement Agreement with the sole purpose and intention to avoid further disputes and litigation with the attendant inconvenience and expenses. In the event this Settlement Agreement is not approved by the Court or otherwise does not become final, Respondents do not waive any defenses or rights, including without limitation that this case is not suitable for collective, class, or representative treatment. In the event this Settlement Agreement is not approved by the Court or otherwise does not become final, Claimants do not waive any claims, defenses or rights including with respect to any counterclaims. This Settlement Agreement is a settlement document and shall, pursuant to Federal Rule of Evidence 408 and any and all analogous state laws, be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce this Settlement Agreement.

### 2.26    Enforcement Actions

The Parties agree that this Settlement Agreement shall be enforceable pursuant to California Code of Civil Procedure Section 664.6 and any other state or federal corollary statute or rule of law, including the doctrine of Utah law permitting the summary enforcement of settlements described in *Tracy Collins Bank & Trust Co. v. Travelstead*, 592 P.2d 605 (Utah 1979).

### 2.27  Notices

Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To Named Claimants and the Settlement Members:

> Dan Getman, Esq.
>
> Getman, Sweeney & Dunn PLLC
>
> 260 Fair St.
>
> Kingston, NY 12401-3808

To Company Respondents:

> Jesse A. Cripps, Esq.
>
> Gibson, Dunn & Crutcher LLP
>
> 333 South Grand Avenue
>
> Los Angeles, CA 90071-3197

To Respondent Jon Isaacson:

> Drew R. Hansen, Esq.
>
> Theodora Oringher PC
>
> 535 Anton Boulevard, Ninth Floor
>
> Costa Mesa, CA 92626-7109

To Respondent Jerry Moyes:

> Ron Holland, Esq.
>
> DLA Piper LLP
>
> 555 Mission Street, Suite 2400
>
> San Francisco, CA 94105-2933

### 2.28    Construction

The Parties hereto agree that the terms and conditions of this Settlement Agreement are the result of lengthy, intensive arms-length negotiations between the Parties and that this Settlement Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or his, her or its counsel participated in the drafting of this Settlement Agreement.

### 2.29    Captions and Interpretations

Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any provision hereof.  Each term of this Settlement Agreement is contractual and not merely a recital.

### 2.30    Modification

This Settlement Agreement may not be changed, altered, or modified, except in writing and signed by Respondents and the Named Claimants (or their counsel) hereto.  This Settlement Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

### 2.31    Integration Clause

This Settlement Agreement contains the entire agreement between the Parties relating to the settlement and transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements relating to this settlement and the transaction contemplated hereby (including but not limited to the Parties' Memorandum of Understanding, signed by Respondents and Settlement Counsel in late April and early May of 2017), whether oral or written and whether by a party or such party's legal counsel, are merged herein.  No rights hereunder may be waived except in writing.

### 2.32    Binding on Assigns

The provisions of this Settlement Agreement shall run in perpetuity.  This Agreement shall be binding upon the Parties hereto and their spouses, heirs, administrators, representatives, executors, successors and assigns, and shall inure to the benefit of Respondents and the other Released Parties, and their predecessors, successors, affiliates, subsidiaries, parent companies, partners, current and

past employees, insurers, agents, legal representatives, each of which is entitled to enforce this Settlement Agreement.

### 2.33 Signatories

It is agreed that because the Participating Settlement Members are so numerous, it is impossible or impractical to have each Participating Settlement Member execute this Settlement Agreement. It is agreed that this Settlement Agreement as executed on behalf of the Settlement Members by Settlement Counsel and the Named Claimants shall have the same force and effect as if executed by each Participating Settlement Member once approved by the Court and upon the Settlement Effective Date.

### 2.34 Incorporation of Exhibits

All exhibits attached hereto are incorporated by reference and are a material part of this Settlement Agreement. Any notice, order, judgment, or other exhibit that requires approval of the Court must be approved without material alteration from its current form in order for this Settlement Agreement to become effective.

### 2.35 Reasonableness of Settlement Agreement

Settlement Counsel warrants that this is a fair, reasonable, and adequate settlement, and have arrived at this settlement through arms-length negotiations, taking into account all relevant factors, present and potential.

### 2.36 Federal Law and Interpretation

All terms of this Settlement Agreement and its exhibits will be governed and interpreted by and according to federal law, without giving effect to any conflict of law principles or choice of principles. "Days" as used herein refers to calendar days, unless expressly provided otherwise.

### 2.37 Counterparts

This Settlement Agreement may be executed in counterparts and/or by facsimile signature ("Counterpart"), and when each party has signed and delivered at least one such Counterpart, each Counterpart shall be deemed an original, and, when taken together with other signed Counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to all Parties.

**2.38    Entire Agreement**

After this Settlement Agreement is fully executed by the Parties, it will constitute the entire agreement of the Parties.  No oral representations, warranties, inducements, or writings have been made by any party concerning this Settlement Agreement, other than those expressly stated herein.

IN WITNESS WHEREOF, Named Claimants and Respondents and their respective counsel have executed this Settlement Agreement as of the date(s) indicated on the lines below.

Dated: July __, 2017                    NAMED CLAIMANT

                                        By: _____
                                              Gabriel Cilluffo

Dated: July __, 2017                    NAMED CLAIMANT

                                        By: _____
                                              Bryan Ratterree

Dated: July __, 2017                    NAMED CLAIMANT

                                        By: _____
                                              Kevin Shire

Dated: July __, 2017                    COMPANY RESPONDENTS

                                        By: _____
                                              Mickey R. Dragash
                                              Executive Vice-President, General
                                              Counsel and Corporate Secretary, Swift
                                              Transportation Company, on behalf of
                                              Company Respondents

Dated: July ___, 2017                    RESPONDENT


                                         By: _____
                                             Jon Isaacson


       August
Dated: ~~July~~ 17, 2017                 RESPONDENT


                                         By: _____
                                             Jerry Moyes


APPROVED AS TO FORM AND CONTENT ON BEHALF OF THE NAMED CLAIMANTS AND
AS A SUBSTANTIVE RECOMMENDATION TO THE COURT ON BEHALF OF THE
SETTLEMENT MEMBERS:

Dated: July ___, 2017                    GETMAN, SWEENEY & DUNN, PLLC


                                         By: _____
                                             Dan Getman, Esq.
                                             260 Fair Street
                                             Kingston, NY 12401

                                             MARTIN & BONNETT, PLLC
                                             Susan Martin
                                             4647 N. 32nd Street, Suite 185
                                             Phoenix, AZ 85018

                                             Edward Tuddenham
                                             228 West 137th Street
                                             New York, NY 10030

                                             *Settlement Counsel*


51

APPROVED AS TO FORM AND CONTENT:

Dated: July __, 2017                    GIBSON, DUNN & CRUTCHER LLP

                                        By: _____
                                            Theodore J. Boutrous, Jr., Esq.
                                            Scott A. Edelman, Esq.
                                            Jesse A. Cripps, Esq.
                                            333 South Grand Avenue
                                            Los Angeles, CA 90071-3197

                                            *Attorneys for Company Respondents*

Dated: July __, 2017                    THEODORA ORINGHER PC

                                        By: _____
                                            Drew R. Hansen, Esq.
                                            Seth M. Goldstein, Esq.
                                            535 Anton Boulevard, Ninth Floor
                                            Costa Mesa, CA 92626-7109

                                            *Attorneys for Company Respondents,
                                            Jon Isaacson, and Jerry Moyes*

Dated: July __, 2017                    DLA PIPER LLP
      *Aug 18, 17*
                                        By: _____
                                            Ron Holland, Esq.
                                            555 Mission Street, Suite 2400
                                            San Francisco, CA 94105-2933

                                            *Attorneys for Jerry Moyes*


**List of Exhibits**

   A.  General Release by the Named Claimants

   B.  Notices of Settlement (B-1 Fund A, B-2 Fund B)

   C.  Claim Form

   D.  List of Individual Arbitrations

   E.  List of Fund A Claimants

   F.  Fund A Allocation Formula

   G.  List of Potential Fund B Claimants

APPROVED AS TO FORM AND CONTENT:

Dated: July 18, 2017

*August*

GIBSON, DUNN & CRUTCHER LLP

By: _____
     Theodore J. Boutrous, Jr., Esq.
     Scott A. Edelman, Esq.
     Jesse A. Cripps, Esq.
     333 South Grand Avenue
     Los Angeles, CA 90071-3197

*Attorneys for Company Respondents*

Dated: July __, 2017

THEODORA ORINGHER PC

By: _____
     Drew R. Hansen, Esq.
     Seth M. Goldstein, Esq.
     535 Anton Boulevard, Ninth Floor
     Costa Mesa, CA 92626-7109

*Attorneys for Company Respondents,*
*Jon Isaacson, and Jerry Moyes*

Dated: July __, 2017

DLA PIPER LLP

By: _____
     Ron Holland, Esq.
     555 Mission Street, Suite 2400
     San Francisco, CA 94105-2933

*Attorneys for Jerry Moyes*

**List of Exhibits**

    A.  General Release by the Named Claimants

    B.  Notices of Settlement (B-1 Fund A, B-2 Fund B)

    C.  Claim Form

    D.  List of Individual Arbitrations

    E.  List of Fund A Claimants

    F.  Fund A Allocation Formula

    G.  List of Potential Fund B Claimants

Dated: July //, 2017

RESPONDENT

By: _____
       Jon Isaacson

Dated: July __, 2017

RESPONDENT

By: _____
       Jerry Moyes

APPROVED AS TO FORM AND CONTENT ON BEHALF OF THE NAMED CLAIMANTS AND AS A SUBSTANTIVE RECOMMENDATION TO THE COURT ON BEHALF OF THE SETTLEMENT MEMBERS:

Dated: July __, 2017

GETMAN, SWEENEY & DUNN, PLLC

By: _____
       Dan Getman, Esq.
       260 Fair Street
       Kingston, NY 12401

       MARTIN & BONNETT, PLLC
       Susan Martin
       4647 N. 32nd Street, Suite 185
       Phoenix, AZ 85018

       Edward Tuddenham
       228 West 137th Street
       New York, NY 10030

       *Settlement Counsel*

51

APPROVED AS TO FORM AND CONTENT:

Dated: July __, 2017                                GIBSON, DUNN & CRUTCHER LLP

                                                    By: _____
                                                        Theodore J. Boutrous, Jr., Esq.
                                                        Scott A. Edelman, Esq.
                                                        Jesse A. Cripps, Esq.
                                                        333 South Grand Avenue
                                                        Los Angeles, CA 90071-3197

                                                        *Attorneys for Company Respondents*

Dated: ~~July~~ *August* 16, 2017                   THEODORA ORINGHER PC

                                                    By: _____
                                                        Drew R. Hansen, Esq.
                                                        Seth M. Goldstein, Esq.
                                                        535 Anton Boulevard, Ninth Floor
                                                        Costa Mesa, CA 92626-7109

                                                        *Attorneys for Company Respondents,*
                                                        *Jon Isaacson, and Jerry Moyes*

Dated: July __, 2017                                DLA PIPER LLP

                                                    By: _____
                                                        Ron Holland, Esq.
                                                        555 Mission Street, Suite 2400
                                                        San Francisco, CA 94105-2933

                                                        *Attorneys for Jerry Moyes*

**List of Exhibits**

    A. General Release by the Named Claimants

    B. Notices of Settlement (B-1 Fund A, B-2 Fund B)

    C. Claim Form

    D. List of Individual Arbitrations

    E. List of Fund A Claimants

    F. Fund A Allocation Formula

    G. List of Potential Fund B Claimants

# EXHIBIT B-1

# FUND A

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

GABRIEL CILLUFFO, KEVIN SHIRE, and
BRYAN RATTERREE individually and behalf
of all other similarly situated persons,

        Plaintiffs,

        vs.

CENTRAL REFRIGERATED SERVICE,
INC., CENTRAL LEASING, INC., JON
ISAACSON, and JERRY MOYES,

        Defendants.

Case No. ED CV 12-00886 VAP (OPx)
Honorable Virginia A. Phillips, Chief Judge

**NOTICE OF SETTLEMENT**

**TO: All persons who leased a truck from Central Leasing, Inc. and contracted to drive for Central Refrigerated Service, Inc. at any point on or after June 1, 2009 and who timely opted into the Collective Action and/or who filed an Individual Arbitration.**

       The purpose of this Notice is to inform you of the existence of a settlement of the above captioned Lawsuit, the terms of that settlement that may affect you, and to instruct you on the procedure for taking part in the settlement of the Lawsuit if you wish to receive money from the settlement. If the addressee of this Notice is deceased, then the person's spouse, children or next of kin should contact the Settlement Administrator. The Settlement Administrator's contact information is set forth at the end of this Notice.

## WHAT IS THIS LAWSUIT ABOUT?

       Three truck drivers, Gabriel Cilluffo, Kevin Shire, and Bryan Ratteree (hereafter "Named Plaintiffs") filed this Lawsuit in mid-2012 on behalf of themselves and other drivers who leased trucks from Central Leasing, Inc. and who signed contractor agreements to drive for Central Refrigerated Service, Inc.  The Named Plaintiffs alleged that Central Refrigerated Service, Inc., Central Leasing, Inc., Jon Isaacson, and Jerry Moyes (hereafter collectively referred to as "Central") improperly classified them as independent contractors, failed to pay them at least the federal minimum wage and violated their rights under the federal forced labor statute. The Court ordered the Named Plaintiffs and the other individuals who had opted into or joined the Lawsuit by that time to take their claims to binding arbitration before the American Arbitration Association ("AAA").  The Named Plaintiffs filed their federal minimum wage claim as a collective arbitration with the AAA (the "Collective Action") and notice was sent to drivers who signed leases and contractor agreements with Central at any time on or after June 1, 2009 informing them of their right to opt into the Collective Action. Eventually more than 1,345 drivers opted into the Collective Action.  The Named Plaintiffs filed their other claims, including

claims for federal forced labor, fraud and negligent misrepresentation, contract unconscionability, unjust enrichment, state minimum wage, and unlawful deductions, as part of individual arbitrations with the AAA.  More than 325 other drivers asserted identical claims against Central and initiated their own individual arbitrations with the AAA (these 325-plus cases, which includes the three individual arbitrations filed by the Named Plaintiffs, are referred to collectively herein as the "Individual Arbitrations").

Central denies that it violated any law, maintains that drivers who signed contractor agreements were properly classified as independent contractors, and claims that such drivers were paid properly under the FLSA's minimum wage provisions and all other applicable laws.  Arbitrator Patrick J. Irvine, however, ruled that Central misclassified the drivers as contractors and found the Plaintiffs in the Collective Action to be employees as a matter of law.  Central disputes this conclusion and reserves its rights to challenge it and any other aspects of the Court and Arbitrator Irvine's rulings on appeal.

After nearly six years of litigation, the Named Plaintiffs and Central have reached a settlement that is designed to settle the claims of the Named Plaintiffs and all of the individuals who opted into the Collective Action and/or who filed Individual Arbitrations alleging claims against Central arising out of their contractor agreements and leases (approximately 1,356 drivers).  The settlement also offers to settle the claims of approximately ███ additional drivers who signed leases and contractor agreements with Central but who did not opt into the Collective Action and did not file an Individual Arbitration.  If you signed a lease with Central Leasing, Inc. and a contractor agreement with Central Refrigerated Service, Inc. at any point on or after June 1, 2009, you are eligible to participate in this settlement if it is finally approved by the Court and any appeals have been exhausted.

## WHAT ARE THE TERMS OF THE SETTLEMENT?

The following is only a summary of the terms of the proposed settlement.  The specific and complete terms are available for review.  You can request a copy of the complete Settlement Agreement from the Settlement Administrator or from Settlement Counsel. Their contact information is set forth at the end of this Notice.

The total amount of the settlement (defined as the Gross Settlement Amount in the Settlement Agreement) is ███████████████████.  This money will be divided into two funds, Fund A and Fund B, and will be used to pay the drivers for their alleged claims against Central and attorneys' fees, all costs and service awards as explained below.

**Fund A** shall consist of ████████████████████, less the amount the Court awards for attorneys' fees, costs (including settlement administration costs and Settlement Counsel's costs), and service awards, and shall be used to pay the claims of the Named Plaintiffs and the approximately 1,353 other drivers who either opted into the Collective Action and/or who filed Individual Arbitrations with the AAA.  Each driver who is a member of Fund A will receive a minimum award of ████.  All drivers who filed Individual Arbitrations will receive an additional ████.  The remaining Fund A monies will be divided among the approximately 1,356 drivers based on a formula that will be applied uniformly to every Fund A driver that does not opt out of the settlement. The formula is derived from Plaintiffs' allegations

in the Collective Action and Individual Arbitrations and is based on Settlement Counsel's analysis of the relative strengths and weaknesses of the claims that are settled herein.  The formula also takes into account a number of other factors derived from Plaintiffs' damage allegations in the Collective Action and Individual Arbitrations, including their alleged estimated hours worked per week, the number of weeks worked as a lease or contractor driver, the number of miles driven, the alleged net pay received, the number of loads delivered and the alleged estimated FICA/FUTA paid as a "contractor."  The exact formula created by Settlement Counsel is available from the Settlement Administrator or from Settlement Counsel.  By agreeing to settle this Action, Central is in no way conceding or agreeing that the Plaintiffs' allegations in this Lawsuit, the Collective Action, or the Individual Arbitrations are correct or that their formula for estimating hours worked and/or calculating their alleged damages is accurate or admissible.  Any monies in Fund A that are not claimed by drivers eligible to receive Fund A monies within one year will be given to [xx insert cy pres recipient approved by Court].

**Fund B** shall consist of ███████████████████████, less the amount the Court awards for attorneys' fees, costs (including settlement administration costs and Settlement Counsel's costs), and service awards, and shall be used to settle the claims of no more than ████ drivers who leased a truck from Central Leasing, Inc. and contracted with Central Refrigerated Service, Inc. at any point on or after June 1, 2009, and who did not opt into the Collective Action or were not allowed to opt into the Collective Action due to a late filing, and who did not file an Individual Arbitration.  Fund B monies will be allocated proportionately among the Fund B drivers entitled to participate in Fund B based on the number of months each had a contract and lease with Central Refrigerated Service, Inc. and Central Leasing, Inc. (or their assignees) on or after June 1, 2009.  The amounts to be paid to drivers participating in Fund B are less than those paid to the drivers participating in Fund A because the drivers participating in Fund B never joined the Lawsuit or the Collective Action and did not file their own Individual Arbitrations, and any claims they could assert against Central might be subject to additional defenses that Central cannot raise against the drivers participating in Fund A.  Based on the foregoing facts and in order to eliminate the risks, uncertainties and delay of any potential future litigation by Fund B drivers, Fund B drivers are free to participate or not participate in the settlement as they desire.  Only drivers eligible to participate in Fund B who affirmatively opt in to the settlement will receive their share of any Fund B monies.  The shares of Fund B belonging to eligible drivers who do not opt in will revert to Central.

**Deductions from the Gross Settlement Amount**:  Before Fund A and Fund B monies are divided among the drivers, amounts approved by the Court will be deducted from those two funds including (1) up to ███ of each Fund to pay for the attorneys' fees of Settlement Counsel for their work in litigating the case for more than five years without compensation to date, and obtaining the settlement; (2) each Fund's proportionate share of monies to reimburse Settlement Counsel for the out of pocket costs and expenses they have incurred litigating the case and obtaining the settlement; (3) the costs of a Settlement Administrator to administer the qualified settlement fund, including, but not limited to, the cost of sending this Notice and the cost of sending the money to participating drivers if the settlement is approved; (4) service awards to be paid to the Named Plaintiffs in an amount up to █████ for each of the three Named Plaintiffs, and up to ██████ for each driver who acted as a "discovery representative" or sat for deposition in the Collective Action, and ██████ for other drivers who sat for a deposition in the Individual Arbitrations.  These awards are designed to compensate these individuals for their time and

effort in making this settlement possible.  The service awards to these individuals are in addition to their share of the settlement funds.  Whatever amounts the Court approves for these items will be deducted proportionately from Fund A and Fund B before calculating each participating driver's individual award.

**Other Terms**:  The Court must approve the settlement as fair and reasonable before it can go into effect.  If approved, all Fund A drivers who do not opt out of the settlement and all Fund B drivers who opt in to the settlement will be deemed to have released any and all claims they may have against Central, Swift Transportation Company, Swift Transportation Co., LLC, and all other Released Parties from any and all claims, debts, liabilities, demands, obligations, guarantees, penalties, costs, expenses, attorneys' fees, damages, liquidated damages, action or causes of action of whatever kind or nature, whether known or unknown, contingent or accrued, that are based on, arise of out of, or relate in any way to services provided as a "lease operator" also known to Central as an "owner operator" for Central Refrigerated Service, Inc. and/or leasing a vehicle from Central Leasing, Inc. (collectively, the "Released Claims"), including, but not limited to, any claims regarding why any such individual decided to execute a Contractor Agreement with Central Refrigerated Service, Inc. and/or an Equipment Leasing Agreement with Central Leasing, Inc.  The Released Claims include, without limitation, any and all claims, known or unknown, contingent or accrued, that were actually raised or which could have been raised in the Lawsuit, including in the Individual Arbitrations or the Collective Action, based on the facts alleged in those proceedings against Central, Swift Transportation Company, Swift Transportation Co., LLC, and/or any of the other Released Parties.[1]  The Released Claims relate to the period from June 1, 2002 up through and including the date of final settlement approval by the Court, except for Named Plaintiffs who will execute a General Release of all claims to the date of signing of the General Release.  In the event the settlement becomes completely final and non-appealable and all monies owed by the Company Respondents (as that term is defined in the Settlement Agreement) in connection with this settlement are paid, the Lawsuit, including the complaint pending before the Court, the Collective Action pending before the AAA, and all Individual Arbitrations pending before the AAA shall be dismissed with prejudice.  If the settlement is approved, monies owed to drivers will be mailed within 10 days after the Court's approval becomes final and all appellate rights are exhausted.  In the event the settlement is not approved by the Court or a party exercises a right to call off or void the settlement, the parties will be returned to their previous positions and the cases will proceed as if no settlement had been reached.

---

[1]  Except for the Named Plaintiffs who are executing a General Release, nothing herein shall release claims against Swift Transportation arising from employment or contractor status with a lease involving Interstate Equipment Leasing, Inc. ("IEL"), or claims against Knight Transportation, other than their role, if any, as assignees of contractor agreements with Central Refrigerated Service, Inc. and leases with Central Leasing, Inc. The release will not cover any claims against Swift Transportation or any Swift entity, or officers including Jerry Moyes, and Chad Killebrew arising from any contractor agreement originally entered into by the driver directly with Swift or a lease originally entered into by the individual directly with IEL or its successors or assigns or any contractor agreements or leases with Knight Transportation and its leasing arm or any entity other than the Respondents (as that term is defined in the Settlement Agreement) in this case and shall not include any claims alleged in *Van Dusen et al. v. Swift Transportation Co., Inc., et al.*, Case No. 2:10-cv-00899-JWS (D. Ariz.).

If the settlement is approved and becomes final and non-appealable and a driver requests by a letter to HireRight that records of a Central Leasing, Inc. lease default be corrected, the Company Respondents agree to provide a timely letter to HireRight with a copy to the driver that defaults under a Central Leasing, Inc. lease have been rescinded by mutual agreement.  Central will not pursue collections efforts with respect to Equipment Leasing Agreements involving Central Leasing, Inc. or in connection with Central Refrigerated Service, Inc.'s Contractor Agreement against drivers who participate in the settlement.

**WHAT IS MY AWARD ESTIMATED TO BE?**

Based on the information provided by Central and their assignees, you are one of the drivers eligible to participate in Fund A.  After deductions for the amounts described above, your share of the Fund A monies is estimated to be:

# $XX,XXX.00

This amount is subject to change based on the amounts the Court approves for attorneys' fees, costs (including settlement administration costs and Settlement Counsel's costs), and service awards. ███████████ of this estimated amount will be paid to you as wages and will have employment taxes and withholding taxes deducted. The remaining ███████ ████ of your estimated award, and 100% of any service award if applicable, will be paid to you without any taxes being deducted or withheld.  You should consult a tax professional as to your responsibility for payment of taxes on all amounts received from the settlement.

**WHAT ARE MY OPTIONS?**

You can respond to this Notice in one of three ways:  (1) If you want to receive your share of Fund A, you do not need to do anything; (2) If you do not want to receive your share of Fund A, you can exclude yourself from the settlement; and (3) If you want to receive your share of Fund A, but do not think the settlement is fair or reasonable, you can object to the terms of the settlement.  Each of these choices is explained below.

1.  **To Receive Your Settlement Share**:  Because you are a Fund A driver who has already opted into the Collective Action and/or filed an Individual Arbitration with the AAA, you do not have to do anything to participate in the Fund A settlement.  If the Court approves the settlement and the Settlement Effective Date (as that term is defined in the Settlement Agreement) is realized, you will receive a check for your share of Fund A and you will be deemed to have released and given up all of the Released Claims you may have against Central, Swift Transportation Company, Swift Transportation Co., LLC, and the other Released Parties (unless otherwise specified in the Settlement Agreement).  **If you want to receive your money, it is extremely important that you keep the Settlement Administrator informed of any changes in your address on the change of address form attached hereto or through other means so the Settlement Administrator can mail your check to you.**  In addition, because taxes must be withheld from the wage portion of your award, it is in your interest to fill out and send the Settlement Administrator a W-4 form (attached hereto) indicating how

many withholding exemptions you claim.  If you decide to participate in the settlement please fill this out and mail it to:

[insert Settlement Administrator contact info]

2.      **To Exclude Yourself From the Settlement**:  As a Fund A driver, if you do not want to participate in the settlement you may opt out of the settlement by timely and properly submitting a letter to the Settlement Administrator stating that you want to "opt out" of the settlement.  Your letter must include your name, address, date and the last four digits of your social security number. If you request to be excluded, you will NOT receive the estimated settlement money set forth above, you will not be bound by the settlement and you will remain free to pursue whatever claims you may have against Central, Swift Transportation Company, Swift Transportation Co., LLC, and the other Released Parties.  To be valid, your request to be excluded must be postmarked no later than _____.

3.      **To File Objections to the Settlement**:  If you choose to participate in the settlement but think that any of the terms of the settlement are unfair, you may mail a letter to the Settlement Administrator at the address listed below explaining the terms that you think are unfair and why.  Your letter must include your name, address, telephone number and the last four digits of your social security number.  To be considered by the Court, your objection must be postmarked no later than _____.  If you wish to address the Court personally during the final fairness hearing (explained below) to state your objection, you must indicate that you would like to speak at the final fairness hearing in your letter and then file your objection with the Court by _____.  If the Court rejects your objection, you will still be bound by the terms of the settlement.  You cannot object to the settlement if you exclude yourself from the settlement.

**NO RETALIATION**

Whether you decide to participate in this settlement, not participate in this settlement by opting out, or participate and file an objection, you are free to make your choice without fear of retaliation.  Central is prohibited by law from retaliating against you in any way.

**WHEN WILL THE COURT MAKE A FINAL DECISION ABOUT THE SETTLEMENT?**

The Court will hold a hearing on the ____ day of _____, 2017 to consider whether the settlement is fair, reasonable and adequate for all of the affected drivers and to decide the Named Plaintiffs' application for service awards, Settlement Counsel's attorneys' fees and costs and expenses incurred in prosecuting this case including in the various arbitrations.  The Court will consider any objections that drivers timely and properly file and make a decision whether to approve the settlement.  The hearing will be held by Chief Judge Virginia A. Phillips at o'clock in the [morning/afternoon], at:

First Street Courthouse
Courtroom 8A, 8th Floor

350 West 1st Street
Los Angeles, CA 90012

You do NOT need to attend the final fairness hearing. However, you have the right to attend if you want.  You can also speak in favor of or against the settlement at the final fairness hearing but only if you timely and properly request to do so.

**WHERE CAN I OBTAIN FURTHER INFORMATION?**

This Notice provides only a summary of the Settlement Agreement. If you would like to see a full copy of the Settlement Agreement, you may contact:

[insert Settlement Administrator]

If you have questions about the settlement, or want a copy of the Settlement Agreement, you may also contact Settlement Counsel at:

Getman, Sweeney & Dunn, PLLC
260 Fair Street
Kingston, New York 12401
1-845-255-9370
mayres@getmansweeney.com

or visit their website at: http://getmansweeney.com/current-cases/central-refrigerated-forced-labor-minimum-wage

Date: _____

**PLEASE DO NOT CONTACT THE CLERK OF THE COURT, THE JUDGE,
CENTRAL OR CENTRAL'S ATTORNEYS WITH QUESTIONS.
THEY CANNOT ANSWER QUESTIONS.**

# EXHIBIT B-2

# FUND B

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

GABRIEL CILLUFFO, KEVIN SHIRE, and BRYAN RATTERREE individually and behalf of all other similarly situated persons,

        Plaintiffs,

    vs.

CENTRAL REFRIGERATED SERVICE, INC., CENTRAL LEASING, INC., JON ISAACSON, and JERRY MOYES,

        Defendants.

Case No. ED CV 12-00886 VAP (OPx)
Honorable Virginia A. Phillips, Chief Judge

**NOTICE OF SETTLEMENT**

**TO: All persons who leased a truck from Central Leasing, Inc. and contracted to drive for Central Refrigerated Service, Inc. at any point on or after June 1, 2009**

The purpose of this Notice is to inform you of the existence of a settlement of the above captioned Lawsuit, the terms of that settlement that may affect you, and to instruct you on the procedure for taking part in the settlement of the Lawsuit if you wish to receive money from the settlement. If the addressee of this Notice is deceased, then the person's spouse, children or next of kin should contact the Settlement Administrator. The Settlement Administrator's contact information is set forth at the end of this Notice.

**WHAT IS THIS LAWSUIT ABOUT?**

Three truck drivers, Gabriel Cilluffo, Kevin Shire, and Bryan Ratteree (hereafter "Named Plaintiffs") filed this Lawsuit in mid-2012 on behalf of themselves and other drivers who leased trucks from Central Leasing, Inc. and who signed contractor agreements to drive for Central Refrigerated Service, Inc. The Named Plaintiffs alleged that Central Refrigerated, Service, Inc., Central Leasing, Inc., Jon Isaacson, and Jerry Moyes (hereafter collectively referred to as "Central") improperly classified them as independent contractors, failed to pay them at least the federal minimum wage and violated their rights under the federal forced labor statute. The Court ordered the Named Plaintiffs and the other individuals who had opted into or joined the Lawsuit by that time to take their claims to binding arbitration before the American Arbitration Association ("AAA"). The Named Plaintiffs filed their federal minimum wage claim as a collective arbitration with the AAA (the "Collective Action") and notice was sent to drivers who signed leases and contractor agreements with Central at any time on or after June 1, 2009

informing them of their right to opt into the Collective Action. Eventually more than 1,345 drivers opted into the Collective Action. The Named Plaintiffs filed their other claims, including claims for federal forced labor, fraud and negligent misrepresentation, contract unconscionability, unjust enrichment, state minimum wage, and unlawful deductions, as part of individual arbitrations with the AAA. More than 325 other drivers asserted identical claims against Central and initiated their own individual arbitrations with the AAA (these 325-plus cases, which includes the three individual arbitrations filed by the Named Plaintiffs, are referred to collectively herein as the "Individual Arbitrations").

Central denies that it violated any law, maintains that drivers who signed contractor agreements were properly classified as independent contractors, and claims that such drivers were paid properly under the FLSA's minimum wage provisions and all other applicable laws. Arbitrator Patrick J. Irvine, however, ruled that Central misclassified the drivers as contractors and found the Plaintiffs in the Collective Action to be employees as a matter of law. Central disputes this conclusion and reserves its rights to challenge it and any other aspects of the Court and Arbitrator Irvine's rulings on appeal if this settlement is not approved.

After nearly six years of litigation, the Named Plaintiffs and Central have reached a settlement that is designed to settle the claims of the Named Plaintiffs and all of the individuals who opted into the Collective Action and/or who filed Individual Arbitrations alleging claims against Central arising out of their contractor agreements and leases (approximately 1,356 drivers). The settlement also offers to settle the claims of approximately ▮▮▮▮ additional drivers who signed leases and contractor agreements with Central but who did not opt into the Collective Action and did not file an Individual Arbitration. If you signed a lease with Central Leasing, Inc. and a contractor agreement with Central Refrigerated Service, Inc. at any point on or after June 1, 2009, you are eligible to participate in this settlement if it is finally approved by the Court and any appeals have been exhausted.

**WHAT ARE THE TERMS OF THE SETTLEMENT?**

The following is only a summary of the terms of the proposed settlement. The specific and complete terms are available for review. You can request a copy of the complete Settlement Agreement from the Settlement Administrator or from Settlement Counsel. Their contact information is set forth at the end of this Notice.

The total amount of the settlement (defined as the Gross Settlement Amount in the Settlement Agreement) is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This money will be divided into two funds, Fund A and Fund B, and will be used to pay the drivers for their alleged claims against Central and attorneys' fees, all costs and service awards as explained below.

**Fund A** shall consist of ███████████████████████, less the amount the Court awards for attorneys' fees, costs (including settlement administration costs and Settlement Counsel's costs), and service awards, and shall be used to pay the claims of the Named Plaintiffs and the approximately 1,353 other drivers who either opted into the Collective Action and/or who filed Individual Arbitrations with the AAA. Each driver who is a member of Fund A will receive a minimum award of ██████. All drivers who filed Individual Arbitrations will receive an additional ██████. The remaining Fund A monies will be divided among the approximately 1,356 drivers based on a formula that will be applied **uniformly** to every Fund A driver that does not opt out of the settlement. The formula is derived from Plaintiffs' allegations in the Collective Action and Individual Arbitrations and is based on Settlement Counsel's analysis of the relative strengths and weaknesses of the claims that are settled herein. The formula also takes into account a number of other factors derived from Plaintiffs' damage allegations in the Collective Action and Individual Arbitrations, including their alleged estimated hours worked per week, the number of weeks worked as a lease or contractor driver, the number of miles driven, the alleged net pay received, the number of loads delivered and the alleged estimated FICA/FUTA paid as a "contractor." The exact formula created by Settlement Counsel is available from the Settlement Administrator or from Settlement Counsel. By agreeing to settle this Action, Central is in no way conceding or agreeing that the Plaintiffs' allegations in this Lawsuit, the Collective Action, or the Individual Arbitrations are correct or that their formula for estimating hours worked and/or calculating their alleged damages is accurate or admissible. Any monies in Fund A that are not claimed by drivers eligible to receive Fund A monies within one year will be given to [xx insert cy pres recipient approved by Court].

**Fund B** shall consist of ███████████████████████, less the amount the Court awards for attorneys' fees, costs (including settlement administration costs and Settlement Counsel's costs), and service awards, and shall be used to settle the claims of no more than ██████ drivers who leased a truck from Central Leasing, Inc. and contracted with Central Refrigerated Service, Inc. at any point on or after June 1, 2009, and who did not opt into the Collective Action or were not allowed to opt into the Collective Action due to a late filing, and who did not file an Individual Arbitration. Fund B monies will be allocated proportionately among the Fund B drivers entitled to participate in Fund B based on the number of months each had a contract and lease with Central Refrigerated Service, Inc. and Central Leasing, Inc. (or their assignees) on or after June 1, 2009. The amounts to be paid to drivers participating in Fund B are less than those paid to the drivers participating in Fund A because the drivers participating in Fund B never joined the Lawsuit or the Collective Action and did not file their own Individual Arbitrations, and any claims they could assert against Central might be subject to additional defenses that Central cannot raise against the drivers participating in Fund A. Based on the foregoing facts and in order to eliminate the risks, uncertainties and delay of any potential future litigation by Fund B drivers, Fund B drivers are free to participate or not participate in the settlement as they desire. Only drivers eligible to participate in Fund B who affirmatively opt in to the settlement will receive their share of any Fund B monies.

The shares of Fund B belonging to eligible drivers who do not opt in will revert to Central.

**Deductions from the Gross Settlement Amount:** Before Fund A and Fund B monies are divided among the drivers, amounts approved by the Court will be deducted from those two funds including (1) up to ▮ of each Fund to pay for the attorneys' fees of Settlement Counsel for their work in litigating the case for more than five years without compensation to date, and obtaining the settlement; (2) each Fund's proportionate share of monies to reimburse Settlement Counsel for the out of pocket costs and expenses they have incurred litigating the case and obtaining the settlement; (3) the costs of a Settlement Administrator to administer the qualified settlement fund, including, but not limited to, the cost of sending this Notice and the cost of sending the money to participating drivers if the settlement is approved; (4) service awards to be paid to the Named Plaintiffs in an amount up to ▮ for each of the three Named Plaintiffs, and up to ▮ for each driver who acted as a "discovery representative" or sat for deposition in the Collective Action, and ▮ for other drivers who sat for a deposition in the Individual Arbitrations. These awards are designed to compensate these individuals for their time and effort in making this settlement possible. The service awards to these individuals are in addition to their share of the settlement funds. Whatever amounts the Court approves for these items will be deducted proportionately from Fund A and Fund B before calculating each participating driver's individual award.

1.  **Other Terms:** The Court must approve the settlement as fair and reasonable before it can go into effect. If approved, all Fund A drivers who do not opt out of the settlement and all Fund B drivers who opt in to the settlement will be deemed to have released any and all claims they may have against Central, Swift Transportation Company, Swift Transportation Co., LLC, and all other Released Parties as set forth in the Settlement Agreement and summarized on the back of the Claim Form (attached). In the event the settlement becomes completely final and non-appealable and all monies owed by the Company Respondents (as that term is defined in the Settlement Agreement) in connection with this settlement are paid, the Lawsuit, including the complaint pending before the Court, the Collective Action pending before the AAA, and all Individual Arbitrations pending before the AAA shall be dismissed with prejudice. If the settlement is approved, monies owed to drivers will be mailed within 10 days after the Court's approval becomes final and all appellate rights are exhausted. The Settlement Agreement allows the parties certain limited rights to call off or void the settlement if certain events occur. In the event the settlement is not approved by the Court or a party exercises a right to call off or void the settlement, the parties will be returned to their previous positions and the cases will proceed as if no settlement had been reached.

If the settlement is approved and becomes final and non-appealable and a driver requests by a letter to HireRight that records of a Central Leasing, Inc. lease default be corrected, the Company Respondents agree to provide a timely letter to HireRight with a copy to the driver that defaults under a Central Leasing, Inc. lease have been rescinded by mutual agreement. Central will not pursue collections efforts with respect to Equipment Leasing Agreements involving Central Leasing, Inc. or in connection with Central Refrigerated Service, Inc.'s Contractor Agreement against drivers who participate in the settlement.

## WHAT IS MY AWARD ESTIMATED TO BE?

Based on the information provided by Central and their assignees, you are one of the drivers eligible to participate in Fund B. After deductions for the amounts described above, your share of the Fund B monies is estimated to be:

# $X,XXX.00

This amount is subject to change based on the amounts the Court approves for attorneys' fees, costs (including settlement administration costs and Settlement Counsel's costs), and service awards. ███████████████ of this estimated amount will be paid to you as wages and will have employment taxes and withholding taxes deducted. The remaining ███████████████ of your estimated award, and 100% of any service award if applicable, will be paid to you without any taxes being deducted or withheld. You should consult a tax professional as to your responsibility for payment of taxes on all amounts received from the settlement.

## WHAT ARE MY OPTIONS?

You can respond to this Notice in one of three ways: (1) If want to receive your share of Fund B, you must timely and properly submit a Claim Form (which is attached); (2) If you do not want to receive your share of Fund B, you can do nothing, and you will not be included in the settlement; and (3) If you want to receive your share of Fund B but have objections to the settlement, you must timely and properly submit both a Claim Form and written objections. Each of these choices is explained below.

1. **To Receive Your Settlement Share:** If you want to participate in the settlement and receive your share of Fund B, you must timely and properly fill out and mail the enclosed Consent to Sue and Claim Form ("Claim Form") to the Settlement Administrator at:_____. The Claim Form must be mailed no later than the ___ day of _____, 2017. Any Claim Form post-marked after the ___ day of _____, 2017 will be considered invalid and you will not be part of the settlement. If you timely and properly file a Claim Form and the Settlement Effective Date (as that term is defined in the

Settlement Agreement) is realized, you will receive a check for your share of Fund B and, as explained on the Claim Form, you will be deemed to have released and given up all of the Released Claims you may have against Central, Swift Transportation Company, Swift Transportation Co., LLC, and the other Released Parties. **If you want to receive your money, it is extremely important that you keep the Settlement Administrator informed of any changes in your address on the change of address form attached hereto or through other means so the Settlement Administrator can mail your check to you.** In addition, because taxes must be withheld from the wage portion of your award, it is in your interest to fill out and send the Settlement Administrator a W-4 form (attached hereto) indicating how many withholding exemptions you claim. If you decide to participate in the settlement please fill this out and mail it to:

> [insert Settlement Administrator contact info]

2. **To Exclude Yourself From the Settlement:** As a Fund B driver, if you do not want your settlement share, you do not have to do anything. You will automatically be excluded if you do not file a Claim Form. If you do not participate, you will not be bound by the settlement and you will remain free to pursue whatever claims you may have against Central, Swift Transportation Company, Swift Transportation Co., LLC, and the other Released Parties.

3. **To File Objections to the Settlement**: If you choose to submit a Claim Form and it is valid and timely, but think that any of the terms of the settlement are unfair, in addition to following the instructions to participate in the settlement in number 1 above, you may mail a letter to the Settlement Administrator at the address listed below explaining the terms that you think are unfair and why. Your letter must include your name, address, telephone number and the last four digits of your social security number. To be considered by the Court, your objection must be postmarked no later than _____. If you wish to address the Court personally during the final fairness hearing (explained below) to state your objection, you must indicate that you would like to speak at the final fairness hearing in your letter and then file your objection with the Court by _____. Only those Fund B drivers who timely and properly opt in to the settlement have a right to file an objection. If the Court rejects your objection, you will still be bound by the terms of the settlement.

## NO RETALIATION

Whether you decide to participate in this settlement by timely and validly submitting a Claim Form, not participate in this settlement by doing nothing, or

participate by opting in and filing an objection, you are free to make your choice without fear of retaliation. Central is prohibited by law from retaliating against you in any way.

**WHEN WILL THE COURT MAKE A FINAL DECISION ABOUT THE SETTLEMENT?**

The Court will hold a hearing on the _____ day of _____, 2017 to consider whether the settlement is fair, reasonable and adequate for all of the affected drivers and to decide the Named Plaintiffs' application for service awards, Settlement Counsel's attorneys' fees and costs and expenses incurred in prosecuting this case including in the various arbitrations. The Court will consider any objections that drivers timely and properly file and make a decision whether to approve the settlement. The hearing will be held by Chief Judge Virginia A. Phillips at _____ o'clock in the [morning/afternoon], at:

First Street Courthouse
Courtroom 8A, 8th Floor
350 West 1st Street
Los Angeles, CA 90012

You do NOT need to attend the final fairness hearing. However, you have the right to attend if you want. You can also speak in favor of or against the settlement at the final fairness hearing but only if you timely and properly request to do so.

**WHERE CAN I OBTAIN FURTHER INFORMATION?**

This Notice provides only a summary of the Settlement Agreement. If you would like to see a copy of the Settlement Agreement, you may contact:

[insert Settlement Administrator]

If you have questions about the settlement, or want a copy of the Settlement Agreement, you may also contact Settlement Counsel at:

Getman, Sweeney & Dunn, PLLC
260 Fair Street
Kington, New York 12401
1-845-255-9370
mayres@getmansweeney.com

or visit their website at: http://getmansweeney.com/current-cases/central-refrigerated-forced-labor-minimum-wage

Date:

PLEASE DO NOT CONTACT THE CLERK OF THE COURT, THE JUDGE, CENTRAL OR CENTRAL'S ATTORNEYS WITH QUESTIONS. THEY CANNOT ANSWER QUESTIONS.

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

**GABRIEL CILLUFFO, et al.,**
                  **Plaintiffs,**

**v.**

**CENTRAL REFRIGERATED SERVICE, INC. et al.,**
                  **Defendants.**

**5:12-cv-00886-VAP-OP**

## CONSENT TO SUE AND CLAIM FORM

      I leased a truck from Central Leasing, Inc. and was treated by Central Refrigerated Service, Inc. as an owner-operator on or after June 1, 2009 and I hereby consent to sue Defendants/Respondents in this Fair Labor Standards Act case and to participate in the settlement proposed in this case as a FUND B settlement member. I understand that I have rights and responsibilities described in the Notice I received concerning this case. I authorize Getman, Sweeney & Dunn, PLLC and its successors and assigns, to represent me in this case but only for purposes of the settlement. I understand that if the settlement is approved, fees and costs expended by Settlement Counsel on my behalf, settlement administration costs, and service awards to those drivers who expended time, including participating in discovery, and bore legal risk to obtain this settlement, will be deducted pro rata from my settlement or judgment first.

      I understand that by signing this Consent to Sue and Claim Form, and effective at the Settlement Effective Date, I hereby release Respondents and all other Released Parties from all Released Claims as fully described in the Settlement Agreement and as summarized on the back of this form.

Dated: _____

Signature: _____

Name (printed): _____

Name exactly as it appears on settlement sheets (if different):

_____

Last Four Digits of Social Security Number: _____

Address: _____

_____

_____

Cell Phone: _____

Land Line Phone: _____

Email: _____

**Send this completed form to [insert Settlement Administrator's contact info].**

**This Consent to Sue and Claim Form is not valid and effective until you have received a receipt from the Settlement Administrator indicating that it has been received. If you have not received a receipt within 3 weeks from your transmission of the form you must contact the Settlement Administrator by phone at [xx].**

<u>RELEASE</u>

I understand that by signing this Consent to Sue and Claim Form, <u>I will be releasing</u> all of the Released Claims as defined in the Settlement Agreement as follows:

Upon the Settlement Effective Date, all Participating Settlement Members, including their heirs, assigns, and estates, shall be deemed to fully forever, irrevocably and unconditionally release, and discharge the Respondents and all other Released Parties from any and all claims, debts, liabilities, demands, obligations, guarantees, penalties, costs, expenses, attorneys' fees, damages, liquidated damages, action or causes of action of whatever kind or nature, whether known or unknown, contingent or accrued, that are based on, arise of out of, or relate in any way to services provided as a "lease operator" also known to Respondents as an "owner operator" for Central Refrigerated Service, Inc. and/or leasing a vehicle from Central Leasing, Inc. (collectively, the "Section 2.8 Released Claims"), including, but not limited to, any claims regarding why any such individual decided to execute a Contractor Agreement with Central Refrigerated Service, Inc. and/or an Equipment Leasing Agreement with Central Leasing, Inc. The Section 2.8 Released Claims include, without limitation, any and all claims, known or unknown, contingent or accrued, that were actually raised or which could have been raised in the Lawsuit, including in the Individual Arbitrations or the Collective Action, based on the facts alleged in those proceedings against Respondents and/or any of the other Released Parties. The Section 2.8 Released Claims relate to the period from June 1, 2002 up through and including the date of final settlement approval by the Court. In the event the settlement becomes completely final and non-appealable and all monies owed by the Company Respondents in connection with the Settlement Agreement are paid, the Lawsuit, including the Complaint pending before District Court Judge Virginia Phillips, the Collective Action pending before the AAA, and all Individual Arbitrations pending before the AAA shall be dismissed with prejudice.

Nothing herein shall release claims against Swift Transportation arising from employment or contractor status with a lease involving Interstate Equipment Leasing, Inc. ("IEL"), or claims against Knight Transportation, other than their role, if any, as assignees of Contractor Agreements with Central Refrigerated Service, Inc. and leases with Central Leasing, Inc. The release will not cover any claims against Swift Transportation or any Swift entity, or officers including Jerry Moyes and Chad Killebrew arising from any contractor agreement originally entered into by the driver directly with Swift Transportation or a lease originally entered into by the individual directly with IEL or its successors or assigns or any contractor agreements or leases with Knight Transportation and its leasing arm or any entity other than the Respondents in this case and shall not include any claims alleged in *Van Dusen et al. v. Swift Transportation Co., Inc., et al.*, Case No. 2:10-cv-00899-JWS (D. Ariz.) ("*Van Dusen*"); provided, however, that in the event the plaintiffs in *Van Dusen* amend the operative complaint in that action on or after May 5, 2017, it is understood and agreed by the Parties that any claims or causes of action that arise out of, relate to, or are based on a Contractor Agreement originally entered into by the driver directly with Central Refrigerated Service, Inc.

(including, but not limited to, any such Contractor Agreement that was assigned to Swift Transportation effective February 1, 2014) or an Equipment Leasing Agreement originally entered into by the individual directly with Central Leasing, Inc. (including, but not limited to, any such Equipment Leasing Agreement that was assigned to IEL effective February 1, 2014) are part of the Released Claims being released as part of the Settlement Agreement.

      Participating Settlement Members shall, and hereby do, fully and finally release and forever discharge Respondents and all other Released Parties (as defined herein) of and from any and all claims, demands, damages, actions and/or causes of action of whatever kind or nature, including claims for attorneys' fees or costs, whether known or unknown, existing or claimed to exist, in any way set forth in or arising out of any: (i) dispute or claim between or among any Settlement Members and/or Settlement Counsel, including over any claim to any monetary part of the settlement and/or to Settlement Counsel's fees, costs or expenses; and/or (ii) any dispute between Settlement Members, Settlement Counsel, and/or any governmental authority with respect to the Settlement Agreement.  The Settlement Agreement shall constitute, and may be pleaded by Respondents and the other Released Parties as, a complete and total defense to any such dispute or claim.

# EXHIBIT D













; Jr.





# EXHIBIT E

First Name (LME)    Last Name (LME)



First Name (LME)     Last Name (LME)



First Name (LME)　　Last Name (LME)



First Name (LME)    Last Name (LME)



First Name (LME)    Last Name (LME)



First Name (LME)    Last Name (LME)



First Name (LME)    Last Name (LME)



First Name (LME)    Last Name (LME)



First Name (LME)    Last Name (LME)



First Name (LME)   Last Name (LME)



First Name (LME)    Last Name (LME)



First Name (LME)          Last Name (LME)



First Name (LME)       Last Name (LME)



First Name (LME)          Last Name (LME)



First Name (LME)          Last Name (LME)



First Name (LME)                    Last Name (LME)



First Name (LME)    Last Name (LME)



First Name (LME)          Last Name (LME)



First Name (LME)       Last Name (LME)



First Name (LME)        Last Name (LME)





First Name (LME)        Last Name (LME)



First Name (LME)        Last Name (LME)



First Name (LME)          Last Name (LME)



First Name (LME)          Last Name (LME)



First Name (LME)    Last Name (LME)



First Name (LME)          Last Name (LME)



First Name (LME)          Last Name (LME)



First Name (LME)          Last Name (LME)



First Name (LME)        Last Name (LME)



First Name (LME)      Last Name (LME)



# EXHIBIT F

# EXHIBIT F - FUND A ALLOCATION

## A. Summary

Claimants will recover damages from Fund A based on the total number of hours worked multiplied by a damage recovery per hour which is variable based on their average hourly earnings.

Each Claimant will receive ███████████████. All Claimants who filed individual arbitration claims will receive ███████████.

## B. Weekly Hours

Weekly work hours are calculated by ████████████████████



## C. Weekly Wages

Claimant's Weekly wages are █████████████████



## D. Average Weekly Wage Rate

Each Claimant's (9) average weekly wage rate is calculated as the average of all their weekly wage rates.

(8)   Weekly Wage Rate: For each week, (7) weekly wages are divided by (4) weekly work hours.

(9)   Average Weekly Wage Rate: For each Claimant, the sum of all (8) weekly wages per hour divided by the total number of weeks driving as a lease operator.

## E. Damages Recovery Per Work Hour At Different Average Weekly Wage Rates

Damages for each Claimant are based on (10) total work hours multiplied by the (12) damage table recovery rate that corresponds to the Claimant's (8) average weekly wage rate.

(10)  Total Work Hours: The sum of all (4) weekly work hours from the period beginning 3 years prior to Claimants' consent sue dates.

(11)  Damage Recovery Per Hour: This value is determined by matching Claimants' (8) average weekly wage rates to the applicable value on the attached table.[1]

## F. Total Recovery Per Claimant

The final award is determined by utilizing the (11) damage recovery per hour table to calculate (14) an initial subtotal of values for each Claimant. These values are then scaled to the net value of the Fund A pool (Fund A, less costs, fees, and service payments). For each claimant, the initial pro rata damages are ███████████████████████████████████ ████████████████████████████ The (17) final pro rata damage share is then distributed proportionally to Claimants based on (12) allocation pool less all non-prorated awards..

(12)  Allocation Pool: The amount of funds to be allocated to Claimants after costs, fees, and service payments have been subtracted from Fund A.

(13)  Damage Allocation Hours: The sum of all weekly work hours ███████████████ from the period beginning 3 years prior to Claimant's consent to sue date.

---

[1]  This table was created to match to counsel's privileged assessment of the Fair Settlement Value of claims in relation to the average hourly wages paid by Respondents.

(14) Initial Pro Rata Damage Subtotal: The result of multiplying (13) damage allocation hours by the (11) damage recovery rate per hour for each Claimant. These values are then prorated to the value of the (12) allocation pool.

(15) Minimum Payments: All Claimants will receive ████████████████ This value is counted against ████████████ (14) initial pro rata damages. Claimants whose (14) initial pro rata damage share is below this amount will recieve ████████████████

(16) Individual Arbitration Payments: Claimaints who have asserted individual claims in arbitration will be credited ████████████

(17) Final Pro Rata Damage Share: The sum of all (14) minimum payments and (15) individual arbitration payments is subtracted from the (12) allocation pool. The remaining funds are distributed proprtionally to all Claimants with (14) initial pro rata damages greater then the (15) minimum damage award ████████

(18) Final Claimant Allocation: The sum of each Claimant's (15) minimum damages, (16) individual arbitration payment, and (17) final pro rata damage share.

## Exhibit F Equations And Look-up Chart



**(8) Weekly Wage Rate:**

$$\frac{Weekly\ Pay}{Weekly\ Work\ Hours}$$

**(11) Damage Recovery Rate Per Hour:**



# SUPPORTING INFORMATION

## Recovery Based On Hourly Wage (Non-Prorated)



# EXHIBIT G

























































































